FILED IN MY OFFICE
DISTRICT COURT CLERK
8/14/2014 7:13:13 PM
GREGORY T. IRELAND
Chris Peck

STATE OF NEW MEXICO
BERNALILLO COUNTY
SECOND JUDICIAL DISTRICT COURT

ALFONSO HERNANDEZ,

                    Plaintiff,

vs.                                                            No.    D-202-CV-2014-05396

CITY OF ALBUQUERQUE,
        a Municipal Entity Organized Under
        the Laws of the State of New Mexico
        and its subsidiaries the Albuquerque
        the Albuquerque
        Police Department,

ANDY FITZGERALD,
        in his individual capacity as an security officer
        employed by the Albuquerque Transit Dept.,
        Security Div.,

AKEEM POWDRELL,
        in his individual capacity as an security officer
        employed by the Albuquerque Transit Dept.,
        Security Div.,

DANIEL GALVAN,
        in his individual capacity as an officer
        employed by the Albuquerque Police Dept.,

AMY MARKWICK,
        in her individual capacity as an officer
        employed by the Albuquerque Police Dept.,

                    Defendants.

## COMPLAINT FOR VIOLATIONS OF THE TORT CLAIMS ACT AND DEPRIVATION OF CIVIL RIGHTS

Plaintiff Alfonso Hernandez, through counsel, AEQUITAS LAW, LLC, Albert L.

Hutchinson, Jr. and Anna C. Martinez, for his cause of action against the above-named Defendants,

states as follows:

**PARTIES, VENUE AND JURISDICTION**

1.      Plaintiff is a resident of Albuquerque, Bernalillo County, New Mexico.

2.      Upon information and belief, Defendant Andy Fitzgerald is a resident of Albuquerque, Bernalillo County, New Mexico. At all relevant times herein, Defendant Andy Fitzgerald was a law enforcement officer employed by the Albuquerque Transit Department, Security Division, a governmental agency operated by Defendant City of Albuquerque. At all times material to this complaint, Defendant Andy Fitzgerald was acting within the scope and course of his employment and under color of state law.

3.      Upon information and belief, Defendant Akeem Powdrell is a resident of Albuquerque, Bernalillo County, New Mexico. At all relevant times herein, Defendant Akeem Powdrell was a law enforcement officer employed by the Albuquerque Transit Department, Security Division, a governmental agency operated by Defendant City of Albuquerque. At all times material to this complaint, Defendant Akeem Powdrell was acting within the scope and course of his employment and under color of state law.

4.      Upon information and belief, Defendant Daniel Galvan is a resident of Albuquerque, Bernalillo County, New Mexico. At all relevant times herein, Defendant Daniel Galvan was a law enforcement officer employed by the Albuquerque Police Department, a governmental agency operated by Defendant City of Albuquerque. At all times material to this complaint, Defendant Daniel Galvan was acting within the scope and course of his employment and under color of state law.

5.      Upon information and belief, Defendant Amy Markwick is a resident of Albuquerque, Bernalillo County, New Mexico. At all relevant times herein, Defendant Amy Markwick was a law enforcement officer employed by the Albuquerque Police Department, a

EXHIBIT A

governmental agency operated by Defendant City of Albuquerque. At all times material to this complaint, Defendant Amy Markwick was acting within the scope and course of her employment and under color of state law.

6.      Defendant City of Albuquerque is a governmental (municipal) entity created pursuant to NMSA 1978, § 3-2-1, *et seq.* The City of Albuquerque is a home-rule municipality, located in Bernalillo County, New Mexico, as such it may sue or be sued in its name. Defendant City of Albuquerque is liable to Plaintiff for its own bad acts as well as for the acts of its employees and agents under the doctrine of *respondeat superior* and/or agency.

7.      Immunity from suit is waived for the torts enumerated in this Complaint by § 41-4-12 NMSA.

8.      On November 26, 2012, a timely written notice of this claim was provided to the City of Albuquerque pursuant to § 41-1-16 NMSA.

9.      Defendant City of Albuquerque is sued pursuant to § 41-1-1 NMSA, *et seq.* for its own wrongful conduct, as set forth herein, and pursuant to the doctrine of *respondeat superior* for the acts perpetrated by its employees that violated the New Mexico Tort Claims Act.

10.      Pursuant to § 41-1-19(C), no punitive or exemplary damages are sought against any Defendant under the Tort Claims Act.

11.      Plaintiff's claims for deprivation of civil rights arise under 42 U.S.C. § 1983.

12.      Defendant City of Albuquerque is sued under 42 U.S.C. § 1983 for damages under a theory of municipal liability for failure to adequately train and/or supervise its employees and for its own customs, policies, and/or practices.

13.      All of the events giving rise to this Complaint occurred in Albuquerque, Bernalillo County, New Mexico.

3

EXHIBIT A

14.     This Court has jurisdiction over the parties.

15.     This Court has subject matter jurisdiction.

16.     Venue is proper in this Court.

## FACTUAL BACKGROUND

17.     On August 30, 2012, Alfonso Hernandez was going about his business, when he saw a man—who he later learned was Manuel Bustamante—being detained by two Albuquerque Transit Officers at a bus stop near the transportation center at First Street and Central.

18.     Plaintiff Hernandez is a person of strong religious conviction who feels called to extend help to people whom he refers to as "metrocampers," which include homeless people and people suffering hardships in the Albuquerque area.

19.     As the City is aware, based upon his arrest for so doing and the lawsuit that followed, Alfonso Hernandez shares food with metrocampers in downtown Albuquerque almost every Sunday.

20.     On the Sundays that Plaintiff Hernandez does not share food, other people help him to make sure that food is made available in downtown Albuquerque.

21.     This case is not about Plaintiff Hernandez's food-sharing outreach, but in the course of that outreach, Plaintiff Hernandez came to know that security officers employed by the City of Albuquerque's Transit Department were routinely assaulting, battering, and otherwise mistreating metrocampers.

22.     As a result of learning about this mistreatment, Plaintiff Hernandez has made it a point to stop and video-record and ask questions when he sees a metrocamper who may be being harassed, arrested, or harmed by anyone—including security officers employed the City of Albuquerque's Transit Department.

4

EXHIBIT A

23.     Plaintiff's actions are motivated out of his genuine religious convictions—he believes that it is incumbent upon him as a Christian to help people in need.

24.     On August 30th, Plaintiff Hernandez was on his way to a date with his then-fiancée, who is now his wife. He was driving eastbound on Central Avenue, when he saw two Transit Department security officers standing over someone he did not know, later identified as Manuel Bustamante, at the bus stop at the northeast corner of First and Central.

25.     In keeping with his convictions, despite already having plans, Plaintiff Hernandez parked his vehicle and approached the scene.

26.     Plaintiff Hernandez's intent was to find out why the security officers, who were later identified as Defendants Andy Fitzgerald and Akeem Powdrell, were detaining Mr. Bustamante.

27.     Before he approached the officers, Plaintiff Hernandez activated an audio-recording device which he kept in his pocket.

28.     In New Mexico, only one party to a conversation needs to consent to record conversations.

29.     Plaintiff Hernandez also activated the video-recording function on his cell phone.

30.     As he approached the scene, Plaintiff asked the security officers "when's the next bus?" or words to similar effect so that would not try to stop him from walking toward the scene.

31.     Once at the scene, Plaintiff Hernandez asked Mr. Bustamante "why are you here? Are you being detained?"

32.     When Mr. Bustamante indicated that he was being detained, Plaintiff Hernandez asked him "for what?"

5

EXHIBIT A

33.     Mr. Bustamante responded "I don't know, but you'll have to talk to the officers" or words to similar effect.

34.     Plaintiff Hernandez commented to Mr. Bustamante, in reference to Defendant Andy Fitzgerald, that Defendant Andy Fitzgerald was "not a police officer" and that Defendant Andy Fitzgerald was, instead, a "security guard."

35.     From Plaintiff Hernandez's perspective, Defendant Andy Fitzgerald seemed to take offense to this statement.

36.     Defendant Andy Fitzgerald interjected and stated: "I'm not a security guard, sir" or words to similar effect.

37.     In fact, Defendant Andy Fitzgerald was a security guard—he was employed by the City of Albuquerque, in the Transit Department, as a security officer.

38.     Defendant Andy Fitzgerald was not a police officer in the City of Albuquerque.

39.     When Defendant Andy Fitzgerald told Plaintiff Hernandez that Defendant was not a security guard, Plaintiff Hernandez asked him, "you're not? What are you then?"

40.     Defendant Andy Fitzgerald immediately became enraged.

41.     Defendant Andy Fitzgerald demanded to know why Plaintiff Hernandez was filming him, stating: "why are you filming me? Who are you?"

42.     At this time, Plaintiff was seated at the bus stop, holding his cell phone up with his right hand, recording Defendant Andy Fitzgerald.

43.     In a sudden, violent, and continuous movement, Defendant Andy Fitzgerald then reached out to grab Plaintiff Hernandez's cell phone, stepped forward toward Plaintiff and placed his body physically onto Plaintiff.

44.     Plaintiff characterizes these actions as an attack.

6

EXHIBIT A

45.   While he was attacking Plaintiff Hernandez, Defendant Andy Fitzgerald continued to shout: "who are you?" at Plaintiff.

46.   Defendant Andy Fitzgerald tackled Plaintiff Hernandez and injured him, while screaming at Plaintiff to "GET ON THE GROUND!"

47.   Defendant Andy Fitzgerald's attack was utterly unlawful.

48.   Plaintiff asked Defendant Andy Fitzgerald: "what are you doing?"

49.   Defendant Andy Fitzgerald, repeatedly yelled for Plaintiff to "get on the ground!" "get on the fucking ground!" and "roll over!"

50.   Defendant Akeem Powdrell rushed in to assist Defendant Andy Fitzgerald in unlawfully assaulting, battering and falsely imprisoning Plaintiff.

51.   Plaintiff yelled back that he was a citizen and told Defendant Andy Fitzgerald that Defendant had "no right to harass" Plaintiff.

52.   At one point during the attack, Defendant Akeem Powdrell positioned a can of chemical spray no more than three inches from Plaintiff Hernandez' eyes.

53.   Plaintiff Hernandez yelled that the security officers were "breaking the law!"

54.   Plaintiff Hernandez told the security officers that they had no right to destroy his camera or the evidence of their attack upon him.

55.   Defendant Andy Fitzgerald pried the cell phone out of Plaintiff Hernandez's hands.

56.   Defendants Andy Fitzgerald and Akeem Powdrell continued to hurt Plaintiff Hernandez while ordering him to "roll over."

57.   Defendants Andy Fitzgerald and/or Akeem Powdrell twisted Plaintiff's left arm painfully and forced it behind his back.

7

EXHIBIT A

58.    Plaintiff Hernandez feared that Defendants Andy Fitzgerald and/or Akeem Powdrell might break his arms and so he complied with their unlawful demand that he submit to their handcuffs, stating: "here goes my other hand."

59.    Plaintiff Hernandez then asked, "why are you doing this to me?"

60.    Defendant Andy Fitzgerald did not answer, but instead continued to ask, "who are you, man?"

61.    The attack displayed contempt for the citizens of Albuquerque.

62.    Plaintiff did not, and was not lawfully required to, identify himself to Defendant Andy Fitzgerald.

63.    After Plaintiff Hernandez was attacked and handcuffed, Defendant Andy Fitzgerald can be heard to lament that Plaintiff "was filming me, man. I don't know who he is."

64.    Plaintiff, correctly, told Defendant Andy Fitzgerald that it was lawful to record him.

65.    Defendant Andy Fitzgerald then turns to Mr. Bustamante and tells him "I'll unleash on you right now! Do not fucking move!"

66.    Plaintiff thought that Defendant Andy Fitzgerald was going to attack Mr. Bustamante as well.

67.    Plaintiff told Defendant Andy Fitzgerald that he had better not "beat him [Mr. Bustamante] up."

68.    Plaintiff Hernandez yells to Defendant Andy Fitzgerald not to attack Mr. Bustamante.

69.    Defendant Andy Fitzgerald responded by attacking Plaintiff Hernandez a second time.

8

EXHIBIT A

70.     During the second attack, Defendant Andy Fitzgerald lunges at Plaintiff Hernandez and wraps his fingers around Plaintiff's windpipe.

71.     Plaintiff Hernandez can heard demanding that Defendant Andy Fitzgerald get his "hands off my throat."

72.     While Defendant Andy Fitzgerald has his hand around Plaintiff Hernandez's throat, Plaintiff can be heard to tell him that he's "breaking the law" and that he's "going to jail."

73.     The second attack was so vicious that Defendant Andy Fitzgerald's partner, Defendant Akeem Powdrell, can be heard saying "Andy, Andy, Andy, Andy,"—at least eleven times, trying to get Defendant Andy Fitzgerald to stop hurting Plaintiff Hernandez.

74.     Defendant Akeem Powdrell further tells Defendant Andy Fitzgerald to "cool it, man, he's not worth it, man," or words to similar effect.

75.     Upon information and belief, reasonable police officers and reasonable security officers are trained and agree that grabbing someone's neck and/or larynx is a dangerous act and can be deadly.

76.     Upon information and belief, reasonable police officers and reasonable security officers are trained and agree that grabbing someone's neck and/or larynx while is not a proper technique to secure control over a person or to put that person in handcuffs.

77.     Defendants Andy Fitzgerald and Akeem Powdrell proceed to detain Plaintiff Hernandez without any lawful authority for that detention.

78.     Plaintiff Hernandez was handcuffed.

79.     There was no lawful basis for handcuffing Plaintiff Hernandez.

80.     Upon information and belief, at all times material to this Complaint, although Defendants Andy Fitzgerald and Akeem Powdrell met the legal definition of law enforcement

9

EXHIBIT A

officer for the purposes of the New Mexico Tort Claims Act, neither was sworn and neither of these Defendants were afforded any specific legal authority to arrest anyone.

81.    Mr. Bustamante then calls 911 and asks for an Defendant City of Albuquerque officer to be sent to the scene.

82.    Defendant Akeem Powdrell told Mr. Bustamante, while he was on the phone speaking to the 911 operator, to "hang up the phone, hang up the phone, hang up the phone"—an unlawful order that Defendant Akeem Powdrell repeated at least eight times.

83.    Plaintiff Hernandez was not free to leave during and following Defendant Andy Fitzgerald's attack on him.

84.    Defendants Andy Fitzgerald and Akeem Powdrell unlawfully detained Plaintiff during and after the attack.

85.    Upon information and belief, Defendants Daniel Galvan and Amy Markwick were dispatched to the scene as a result of Mr. Bustamante's 911 call.

86.    When Defendants Daniel Galvan and Amy Markwick arrived at the scene that did not immediately intervene to end the unlawful detention of Plaintiff Hernandez.

87.    Upon information and belief, Plaintiff Hernandez's neck was red where Defendant Andy Fitzgerald had tried to strangle Plaintiff and Plaintiff's injuries were otherwise obvious to Defendants Daniel Galvan and Amy Markwick.

88.    The obvious injuries were such that a reasonable police officer would have investigated the source of those injuries.

89.    Upon information and belief, neither Defendant Daniel Galvan or Amy Markwick ever asked anyone at the scene why there were red marks on Plaintiff's throat.

10

90.     When another citizen tried to tell Defendant Daniel Galvan that he had witnessed the attack on Plaintiff Hernandez, Plaintiff Hernandez asked the witness to "just give [Defendant Daniel Galvan] your name, please, I'll find you later."

91.     Plaintiff Hernandez also asked Defendant Daniel Galvan to get the witness information.

92.     Defendant Daniel Galvan turned to Plaintiff Hernandez, pointed his gloved finger in Plaintiff's face, while Plaintiff Hernandez sat handcuffed on the bus bench, and screamed "SIT DOWN AND SHUT UP!" at Plaintiff.

93.     Defendant Daniel Galvan then placed his hand on the witness and forcibly led the witness away from the scene.

94.     Defendant Daniel Galvan talked to Mr. Bustamante before returning his attention to Plaintiff Hernandez.

95.     When Defendant Daniel Galvan returned his attention to Plaintiff Hernandez he told him: "You are not allowed to drink on a bus."

96.     Defendant Daniel Galvan also accused Plaintiff Hernandez of being intoxicated, saying: "I'm tired of you guys... everyone here is drunk" or words to similar effect.

97.     Defendant Daniel Galvan accused Plaintiff Hernandez of drinking a bottle of vodka on the bus.

98.     Plaintiff Hernandez had not been drinking and, as video evidence clearly shows, he had not been on a bus before Defendant Andy Fitzgerald's attack.

99.     Upon information and belief, either Defendant Andy Fitzgerald and/or Defendant Akeem Powdrell falsely claimed to Defendant Daniel Galvan that Plaintiff Hernandez had been drinking and had been on a bus before the attack.

11

EXHIBIT A

100.   When Plaintiff Hernandez asked Defendant Daniel Galvan whether Defendant saw him drinking a bottle of vodka, Defendant Galvan responded: "they did."

101.   When Plaintiff Hernandez asked Defendant Daniel Galvan who supposedly saw him drinking a bottle of vodka, Defendant Galvan said that Plaintiff was "going to get that information" or words to similar effect.

102.   In either event, Defendant Daniel Galvan failed to take reasonable steps to investigate the situation despite his duty as a sworn police officer employed by the City of Albuquerque to undertake such a reasonable investigation.

103.   Defendant Daniel Galvan falsely claimed that he could smell alcohol on Plaintiff Hernandez.

104.   Defendant Daniel Galvan continued to accuse Plaintiff of wrongdoing in what appears to have been an apparent attempt to persuade Plaintiff Hernandez to respond.

105.   Plaintiff did not respond.

106.   Defendant Daniel Galvan went on to tell Plaintiff Hernandez: "you're in handcuffs 'cause you could not behave" or words to similar effect.

107.   All the while Defendant Amy Markwick stood by.

108.   Defendant Amy Markwick did not intervene to prevent the continued unlawful detention of Plaintiff Hernandez.

109.   Defendants Daniel Galvan and Amy Markwick detained Plaintiff at the bus stop for approximately fourteen minutes.

110.   For refusing to sign a criminal trespass notice, Mr. Bustamante was arrested and taken to jail.

EXHIBIT A

111.    Finally, after being issued a criminal trespass notice, Plaintiff Hernandez was allowed to leave.

112.    After Plaintiff Hernandez left, Defendant Andy Fitzgerald complained to Defendant Daniel Galvan that Plaintiff was filming him.

113.    Defendant Daniel Galvan informed Defendant Andy Fitzgerald, correctly, that citizens were allowed to film Defendant Andy Fitzgerald.

## COUNT I: NEGLIGENT HIRING, TRAINING, SUPERVISION RESULTING IN VIOLATIONS OF NEW MEXICO TORT CLAIMS ACT
### (Against Defendant City of Albuquerque involving Andy Fitzgerald and Akeem Powdrell)

All previous paragraphs are incorporated by reference as though fully set forth herein.

114.    Defendant City of Albuquerque was responsible for hiring, training, supervising, disciplining and firing security officers employed by the Security Division of the Albuquerque Transit Department.

115.    Defendant City had a duty to create, implement and enforce policies and procedures which:

        a.  ensured that citizen safety should be security officers' first priority;

        b.  required officers to acknowledge the public's right to film them;

        c.  required officers not to batter, assault, falsely imprison or otherwise use unlawful force against citizens;

        d.  ensured that security officers received adequate training in proper techniques for dealing with members of the public who were filming them, asking them questions, or talking to other people in the presence of the security officers;

116.    Defendant City had a duty to train and supervise its transit security officers regarding these policies.

13

EXHIBIT A

117.   Defendant City had a duty to hire officers who did not have a history of violence or anger management problems.

118.   Defendant City had a duty to supervise and fire officers who exhibited a tendency toward violence or anger management problems.

119.   Defendant City negligently or recklessly did one or more of the following:

     a.   Chose not to create adequate written policies regarding transit security officers encounters with citizens on public property, including when those citizens were filming the security officers;

     b.   Chose not to enforce adequate written policies regarding transit security officers encounters with citizens on public property, including when those citizens were filming the security officers;

     c.   Chose to create policies and procedures that permitted officers too much discretion in the use of force, which actually encouraged and condoned the use of unlawful force;

     d.   Chose to hire security officers whose violent and hostile tendencies presented an unreasonable risk to citizens;

120.   As a direct and proximate result of Defendant City of Albuquerque's reckless or negligent acts or omissions, Alfonso Hernandez was beaten, choked, made to fear for his life, and falsely arrested and/or imprisoned against his will, resulting in his injury and damages, including, but not limited to, the lost enjoyment of life, garden-variety pain and suffering, lost household services and other damages to be proven at trial.

## COUNT II: NEGLIGENT HIRING, TRAINING, SUPERVISION RESULTING IN VIOLATIONS OF NEW MEXICO TORT CLAIMS ACT
### (Against Defendant City of Albuquerque involving Daniel Galvan and Amy Markwick)

All previous paragraphs are incorporated by reference as though fully set forth herein.

121.   Defendant City of Albuquerque was responsible for hiring, training, supervising, disciplining and firing its police officers.

14

EXHIBIT A

122.    Defendant City had a duty to create, implement and enforce policies and procedures which:

      a. ensured that a reasonable investigation would be done into the circumstances surrounding a citizen's detention by transit security officers;

      b. required officers to gather and obtain information from witnesses to an alleged crime, including but not limited to contact information, regardless of whether or not the officer believed the witness was intoxicated;

123.    Defendant City of Albuquerque had a duty to train and supervise its Defendant City of Albuquerque officers regarding these policies.

124.    Defendant City of Albuquerque had a duty to hire officers who did not have a history of violence or anger management problems.

125.    Defendant City of Albuquerque had a duty to supervise and fire officers who exhibited a tendency toward violence or anger management problems.

126.    Defendant City of Albuquerque negligently or recklessly did one or more of the following:

      a. Chose not to create or enforce adequate written policies ensuring that a reasonable investigation would be done into the circumstances surrounding a citizen's detention by transit security officers; and/or

      b. Chose not to create or enforce adequate written policies ensuring that officers responding to an alleged crime scene would gather information, including but not limited to contact information, from any witnesses to an alleged crime, regardless of whether or not the officer believed the witness was intoxicated.

127.    As a direct and proximate result of Defendant City of Albuquerque's reckless or negligent acts or omissions, Plaintiff Hernandez was detained and falsely arrested and/or imprisoned against his will by Defendants Daniel Galvan and Amy Markwick and falsely arrested and/or imprisoned against his will, resulting in his injury and damages, including, but not limited

EXHIBIT A

to, the lost enjoyment of life, garden-variety pain and suffering, lost household services and other damages to be proven at trial.

## COUNT III: ASSAULT UNDER NEW MEXICO TORT CLAIMS ACT
### (Against Defendants Andy Fitzgerald and Akeem Powdrell and City of Albuquerque )

Plaintiff incorporates each of the preceding paragraphs by reference as if fully stated herein.

128.   During the events described above, both Defendants Andy Fitzgerald and Akeem Powdrell placed Plaintiff Alfonso Hernandez in reasonable fear of an imminent battery or batteries.

129.   These acts constitute the tort of assault.

130.   The assault or assaults perpetrated against Plaintiff Alfonso Hernandez proximately caused him to suffer damages, including but not limited to: garden variety emotional pain and suffering of the type and sort that any reasonable person would be expected to endure under similar circumstances.

131.   Under the doctrine of *respondeat superior*, Defendant City of Albuquerque is responsible for the conduct of Defendants Andy Fitzgerald and Akeem Powdrell, who, without lawful justification, assaulted Plaintiff Alfonso Hernandez.

## COUNT IV: BATTERY UNDER NEW MEXICO TORT CLAIMS ACT
### (Against Defendants Andy Fitzgerald and Akeem Powdrell and City of Albuquerque )

Plaintiff incorporates each of the preceding paragraphs by reference as if fully stated herein.

132.   Defendants Andy Fitzgerald and Akeem Powdrell beat, choked, tackled, struck, attacked, and/or or otherwise touched Plaintiff Alfonso Hernandez in an offensive and unwanted manner.

133.   These acts constitute the tort of battery.

16

EXHIBIT A

134.    The battery or batteries perpetrated against Plaintiff Alfonso Hernandez proximately caused him to suffer damages, including but not limited to: physical pain and suffering and garden variety emotional pain and suffering and other damages to be proven at trial.

135.    Under the doctrine of *respondeat superior*, Defendant City of Albuquerque is responsible for the conduct of Defendants Andy Fitzgerald and Akeem Powdrell, who, without lawful justification, battered Plaintiff Alfonso Hernandez.

## COUNT V: FALSE ARREST AND/OR FALSE IMPRISONMENT
## UNDER NEW MEXICO TORT CLAIMS ACT
### (Against Defendants Andy Fitzgerald and Akeem Powdrell and City of Albuquerque)

Plaintiff incorporates each of the preceding paragraphs by reference as if fully stated herein.

136.    Defendants Andy Fitzgerald and Akeem Powdrell detained Plaintiff without a warrant or any lawful justification for said detention, in that they intentionally confined and/or restrained Plaintiff Alfonso Hernandez without Plaintiff Alfonso Hernandez's consent and with knowledge that they had no lawful authority to so detain Plaintiff Alfonso Hernandez.

137.    Plaintiff Alfonso Hernandez was not free to leave and/or the actions of Defendants Andy Fitzgerald and Akeem Powdrell were such that Plaintiff Alfonso Hernandez reasonably believed that he was not free to leave. Plaintiff Alfonso Hernandez was therefore falsely arrested by Defendants Andy Fitzgerald and Akeem Powdrell.

138.    The actions taken by Defendants Andy Fitzgerald and Akeem Powdrell against Plaintiff constitute the tort of false arrest and/or false imprisonment.

139.    As a result of being falsely arrested and/or falsely imprisoned, Plaintiff Alfonso Hernandez proximately caused him to suffer damages, including but not limited to: physical pain

17

EXHIBIT A

and suffering and garden variety emotional pain and suffering and other damages to be proven at trial.

140.    Under the doctrine of *respondeat superior*, Defendant City of Albuquerque is responsible for the conduct of Defendants Andy Fitzgerald and Akeem Powdrell, who, without lawful justification falsely arrested and/or falsely imprisoned Plaintiff Alfonso Hernandez.

**COUNT VI: FALSE ARREST AND/OR FALSE IMPRISONMENT
UNDER NEW MEXICO TORT CLAIMS ACT
(Against Defendants Daniel Galvan and Amy Marwick and City of Albuquerque)**

Plaintiff incorporates each of the preceding paragraphs by reference as if fully stated herein.

141.    Once they arrived at the scene, Defendants Daniel Galvan and/or Amy Markwick had a duty to investigate the reason that Plaintiff had been handcuffed by Defendants Andy Fitzgerald and/or Akeem Powdrell.

142.    Defendants Daniel Galvan and/or Amy Markwick did not conduct a reasonable investigation into the situation.

143.    Defendant Daniel Galvan went so far as to place his hand upon a witness's shoulder and walk the witness away from the scene.

144.    That witness, whose identity remains unknown, told Defendants Daniel Galvan and/or Amy Markwick that Plaintiff Alfonso had not attacked Defendants Andy Fitzgerald and/or Akeem Powdrell, but had in fact been the victim of the attack.

145.    The video and audio recordings of the attack support the witness's claims.

146.    Defendants Daniel Galvan and/or Amy Markwick did not perform the statutory duties required of them as law enforcement officers working for the City of Albuquerque Police Department, which is a subdivision of the City of Albuquerque.

EXHIBIT A

147.   Defendants Daniel Galvan and/or Amy Markwick continued to detain Plaintiff Alfonso Hernandez while Defendant Daniel Galvan shouted at Plaintiff Alfonso Hernandez, accused Plaintiff Alfonso Hernandez of criminal acts that Plaintiff had not taken and/or otherwise terrorized Plaintiff Alfonso Hernandez.

148.   Defendants Daniel Galvan and/or Amy Markwick continued to hold Plaintiff Alfonso Hernandez in custody after their arrival.

149.   Plaintiff's continued detention without a warrant or any lawful justification for said detention After Defendants Daniel Galvan and/or Amy Markwick arrived on the scene was unlawful.

150.   Plaintiff Alfonso Hernandez was not free to leave and/or the actions of Defendants Daniel Galvan and Amy Markwick, which included but was not limited Defendant Galvan yelling and screaming at Plaintiff while angrily gesturing toward Plaintiff, were such that Plaintiff Alfonso Hernandez reasonably believed that he was not free to leave.

151.   The actions taken by and/or the inactions of Defendants Daniel Galvan and Amy Markwick against Plaintiff constitute the tort of false arrest and/or false imprisonment.

152.   As a result of being falsely arrested and/or falsely imprisoned, Plaintiff Alfonso Hernandez proximately caused him to suffer damages, including but not limited to: physical pain and suffering and garden variety emotional pain and suffering and other damages to be proven at trial.

153.   Under the doctrine of *respondeat superior*, Defendant City of Albuquerque is responsible for the conduct of Defendants Daniel Galvan and Amy Markwick, who, without lawful justification falsely arrested and/or falsely imprisoned Plaintiff Alfonso Hernandez.

19

EXHIBIT A

## COUNT VII: DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983 – EXCESSIVE, UNREASONABLE, AND/OR UNLAWFUL USE OF FORCE
### (Against Defendants Andy Fitzgerald and Akeem Powdrell)

Plaintiff incorporates each of the preceding paragraphs by reference as if fully stated herein.

154. Defendants Andy Fitzgerald and Akeem Powdrell were state actors who were, at all times material to this Complaint, acting within the course and scope of their employment with the City of Albuquerque's Transit Security.

155. At all times pertinent hereto, Defendants Andy Fitzgerald and Akeem Powdrell were acting under the color of law.

156. Plaintiff had a clearly established right under the Fourth Amendment of the Constitution to be free from the excessive use of force by law enforcement officers, even unsworn Transit Security Officers.

157. Defendants Andy Fitzgerald and Akeem Powdrell decided to attack and beat Plaintiff, who was unarmed and did not pose a threat of serious physical harm to them or anyone else.

158. The decision by Defendants Andy Fitzgerald and Akeem Powdrell to attack and beat Plaintiff was unreasonable.

159. Prior to engaging in their unlawful actions, including the use of unnecessary force against a citizen who posed no threat to the officers themselves or the public, Defendants Andy Fitzgerald and Akeem Powdrell had a duty to critically evaluate the facts on which they would rely to support their planned actions and to determine if such actions were objectively reasonable and in good faith under the totality of the circumstances.

20

EXHIBIT A

160.   Defendants Andy Fitzgerald and Akeem Powdrell failed to exercise their duty to critically evaluate the facts on which they would rely to support their planned actions and to determine if such actions were objectively reasonable and in good faith under the totality of the circumstances and their actions were not objectively reasonable.

161.   During their interaction with Plaintiff, Defendants Andy Fitzgerald and Akeem Powdrell had no reason to believe that Plaintiff posed a threat of serious physical harm to Defendants Andy Fitzgerald and Akeem Powdrell or anyone else.

162.   If any time any type of force was necessary, the need for force was created by Defendants Andy Fitzgerald and Akeem Powdrell's own unreasonable conduct.

163.   The actions of Defendants Andy Fitzgerald and Akeem Powdrell were not justified under clearly established law under the Fourth Amendment to the Constitution and constituted excessive and unreasonable force.

164.   The actions of Defendants Andy Fitzgerald and Akeem Powdrell and resulted in the deprivation of Plaintiff's civil rights.

165.   As a direct and proximate result of Defendants Andy Fitzgerald and Akeem Powdrell's actions, Plaintiff suffered pain and suffering and other damages to be proven at trial.

166.   Defendants Andy Fitzgerald and Akeem Powdrell acted intentionally, maliciously and/or with reckless indifference when they attacked and beat Plaintiff and an award of punitive damages is necessary to punish this conduct and prevent this kind of mistreatment of Albuquerque citizens in the future.

EXHIBIT A

## COUNT VIII: DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
## – FALSE ARREST / FALSE IMPRISONMENT –
### (Against Defendants Andy Fitzgerald and Akeem Powdrell)

Plaintiff incorporates each of the preceding paragraphs by reference as if fully stated herein.

167.    The actions taken by Defendants Andy Fitzgerald and Akeem Powdrell during their prolonged, unjustified, and unreasonable arrest and detention of Plaintiff were such that, as a reasonable person, Plaintiff did not believe that he was free to leave.

168.    In addition, the actions taken by Defendants Andy Fitzgerald and Akeem Powdrell were willful, wonton, malicious, intentional, grossly indifferent and perpetrated with reckless indifference to the rights of Plaintiff.

169.    Defendants Andy Fitzgerald and Akeem Powdrell were deliberately indifferent to the rights of Plaintiff and other citizens of Albuquerque.

170.    The actions of Defendants Andy Fitzgerald and Akeem Powdrell constituted false, unlawful, and/or unreasonable arrest and false, unlawful, and/or unreasonable detention of Plaintiff, in violation of his Fourth Amendment and/or Fourteenth Amendment rights.

171.    The actions of Defendants Andy Fitzgerald and Akeem Powdrell were not justified under clearly established law under the Fourth and/or Fourteenth Amendments to the United States Constitution and resulted in the deprivation of Plaintiff's civil rights.

172.    As a direct and proximate result of Defendants Andy Fitzgerald and Akeem Powdrell's actions, Plaintiff suffered pain and suffering and other damages to be proven at trial.

173.    Defendants Andy Fitzgerald and Akeem Powdrell acted intentionally, maliciously and/or with reckless indifference when they falsely, unlawfully, and/or unreasonably arrested Plaintiff and/or when they falsely, unlawfully, and/or unreasonably detained Plaintiff.

22

EXHIBIT A

174.   An award of punitive damages is necessary to punish this conduct and prevent this kind of mistreatment of Albuquerque citizens in the future.

### COUNT IX: DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### – FALSE ARREST / FALSE IMPRISONMENT –
### (Against Defendants Daniel Galvan and Amy Marwick)

Plaintiff incorporates each of the preceding paragraphs by reference as if fully stated herein.

175.   The actions taken by Defendants Daniel Galvan and Amy Marwick following their arrival and during their continued, prolonged, unjustified, and unreasonable arrest and detention of Plaintiff were such that, as a reasonable person, Plaintiff did not believe that he was free to leave.

176.   In addition, the actions taken by Defendants Daniel Galvan and Amy Marwick were willful, wonton, malicious, intentional, grossly indifferent and perpetrated with reckless indifference to the rights of Plaintiff.

177.   Defendants Daniel Galvan and Amy Marwick were deliberately indifferent to the rights of Plaintiff and other citizens of Albuquerque.

178.   The actions of Defendants Daniel Galvan and Amy Marwick constituted false, unlawful, and/or unreasonable arrest and/or false, unlawful, and/or unreasonable detention of Plaintiff, in violation of his Fourth Amendment and/or Fourteenth Amendment rights.

179.   The actions of Defendants Daniel Galvan and Amy Marwick were not justified under clearly established law under the Fourth and/or Fourteenth Amendments to the United States Constitution and resulted in the deprivation of Plaintiff's civil rights.

180.   As a direct and proximate result of Defendants Daniel Galvan and Amy Marwick's actions, Plaintiff suffered pain and suffering and other damages to be proven at trial.

EXHIBIT A

181.   Defendants Daniel Galvan and Amy Marwick acted intentionally, maliciously and/or with reckless indifference when they falsely, unlawfully, and/or unreasonably arrested Plaintiff and/or when they falsely, unlawfully, and/or unreasonably detained Plaintiff.

182.   An award of punitive damages is necessary to punish this conduct and prevent this kind of mistreatment of Albuquerque citizens in the future.

### COUNT X: *MONELL* CLAIM UNDER 42 U.S.C. § 1983
### RESULTING IN THE DEPRIVATION OF CIVIL RIGHTS
### (Against Defendant City of Albuquerque)

Plaintiff incorporates each of the preceding paragraphs by reference as if fully stated herein.

183.   Defendant City of Albuquerque either maintains an official policy of a) permitting its Transit Security officers to use excessive and unlawful force against citizens and b) permitting its Transit Security officers to illegally arrest and detain people unlawfully or, in the alternative, maintains a *de facto* policy of ignoring such actions by Defendants Andy Fitzgerald and Akeem Powdrell and other City of Albuquerque Transit Security officers.

184.   Defendant City of Albuquerque's knowledge of Defendants Andy Fitzgerald , Akeem Powdrell, Daniel Galvan, and Amy Markwick's illegal actions, as described herein, can be inferred by the obviousness of the facts.

185.   Put simply, the actions complained of by Defendants Andy Fitzgerald , Akeem Powdrell, Daniel Galvan, and Amy Markwick were not secret.

186.   It is not possible for Defendants Andy Fitzgerald , Akeem Powdrell, Daniel Galvan, and Amy Markwick and others to have acted without the knowledge and permission of the City.

187.   Defendant City of Albuquerque's policy and practice of inadequate training and culture of ignoring wrongful, unreasonable, and/or excessive use of force by its Transit Security

EXHIBIT A

Officers as well as ignoring false arrest and/or unlawful detention by Transit Security Officers and Albuquerque Police Officers was a moving force in causing the Plaintiff to suffer violations of the rights and privileges afforded to him by both the United States Constitution and the Constitution of the State of New Mexico.

188.    Before the events giving rise to this Complaint, Defendant City of Albuquerque was aware of a widespread practice of the use of wrongful, unreasonable, and/or excessive use of force by its Transit Security Officers as well as falsely arresting and unlawfully detaining citizens by its Transit Security Officers and its Police Officers.

189.    Despite this awareness, Defendant City of Albuquerque had a policy and practice of failing to adequately monitor, supervise, discipline and otherwise control its Transit Security Officers and Albuquerque Police Officers.

190.    Defendant City of Albuquerque was aware of the substantial risk that allowing the custom of its Transit Security Officers using excessive, unreasonable, and/or unlawful force against citizens would pose to the public but chose not to take the appropriate steps to protect citizens.

191.    Defendant City of Albuquerque was aware of the substantial risk that allowing the custom of its Transit Security Officers and its Police Officers to illegally arrest and/or detain citizens to continue would pose to the public but chose not to take the appropriate steps to protect citizens.

192.    Defendant City of Albuquerque's policymakers were deliberately indifferent as to the obvious consequence of Transit Security Officers' widespread practice of needlessly using excessive, unreasonable, and/or unlawful force and the deprivation of civil rights that would arise therefrom, including the deprivation of Plaintiff's rights.

EXHIBIT A

193.    Defendant City of Albuquerque's policymakers were deliberately indifferent as to the obvious consequence of Transit Security Officers' and Police Officers' widespread practice of unlawfully detaining citizens and the deprivation of civil rights that would arise therefrom, including the deprivation of Plaintiff's rights.

194.    Defendant City of Albuquerque's deliberate indifference to the widespread practice among its employees and agents of needlessly using excessive, unreasonable, and/or unlawful force directly and illegally detaining and/or falsely arresting citizens and proximately caused the constitutional deprivation resulting in Plaintiff's injuries and damages, including his pain and suffering and other damages to be proven at trial.

195.    Defendant City of Albuquerque acted intentionally, maliciously or with reckless indifference in promoting the policy and practice of use of excessive, unreasonable, and/or unlawful force and/or illegally arresting and/or unlawfully detaining citizens, thus punitive damages should be awarded to punish this conduct and prevent this type of misconduct against citizens in the future.

### JURY DEMAND

Plaintiff hereby notifies the Court of his demand for trial by jury. As required by New Mexico Rules of Civil Procedure, Plaintiff will submit his demand for jury trial by separate pleading.

EXHIBIT A

## REQUESTED RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

A.   Award compensatory damages for Plaintiff's claims arising from violations of the New Mexico Tort Claims Act against all Defendants in an amount to be determined by the jury at trial;

B.   Award compensatory and punitive damages for Plaintiff's claims arising from the deprivation of his civil rights in an amount to be determined by the jury at trial;

C.   Award pre- and post-judgment interest on all monetary damages in an amount to be fixed by the Court;

D.   Award Plaintiff his costs in bringing this action; and

E.   Award other and further relief as the Court deems proper under the circumstances.

Respectfully submitted,
**AEQUITAS LAW, LLC**

"**Electronically Filed**"

By:   /s/ Anna C. Martinez
Attorney for Plaintiff
P.O. Box 25304
Albuquerque, NM 87125
(505) 750-8005
anna@aequitas.pro

EXHIBIT A