IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALFONSO HERNANDEZ,

       Plaintiff,

vs.                                              No. CIV-14-964 KBM-SCY

CITY OF ALBUQUERQUE,
a Municipal Entity Organized Under
the Laws of the State of New Mexico
and its subsidiaries the Albuquerque
Police Department,

ANDY FITZGERALD,
in his individual capacity as a security officer
employed by the Albuquerque Transit Dept.,
Security Div.,

AKEEM POWDRELL,
in his individual capacity as a security officer
employed by the Albuquerque Transit Dept.,
Security Div.,

DANIEL GALVAN,
in his individual capacity as an officer
employed by the Albuquerque Police Dept.,

AMY MARKWICK,
in her individual capacity as an officer
employed by the Albuquerque Police Dept.,

       Defendants.

## MOTION FOR SUMMARY JUDGMENT ON BEHALF OF
## DEFENDANT AKEEM POWDRELL AND
## MEMORANDUM IN SUPPORT THEREOF

Pursuant to NMRA 1-056, Defendant Akeem Powdrell hereby submits his motion for summary judgment seeking dismissal of him as a defendant and this memorandum in support thereof. This motion should be granted because there is no applicable waiver of Defendant

Powdrell's immunity from torts under the New Mexico New Mexico Tort Claims Act, NMSA 1978, § 41-4-1, et seq. ("TCA") and because Defendant Powdrell is entitled to qualified immunity.

## I.   STATEMENT OF UNDISPUTED MATERIAL FACTS

For purposes of this motion only, Defendant Powdrell does not dispute the following facts:

A.   At all times relevant to the incidents described in the Complaint, Defendant Powdrell was an employee of the City of Albuquerque's Transit Department and acting within the course and scope of his duties as a security officer.  Complaint, ¶ 3.

B.   Defendant Powdrell was employed as a security officer with the Transit Department.  Exhibit 1, Affidavit of Akeem Powdrell, attached hereto and incorporated herein by reference ("Powdrell Affidavit").

C.   As a Transit security officer ("TSO"), Defendant Powdrell had the responsibilities described in the attached job description, including:  providing security for City facilities, regulating the flow of City employees and the public, responding to calls for service and reports of crimes in progress, calling for police and emergency personnel, assisting law enforcement, conducting preliminary investigations and documenting those investigations, conducting fire and safety inspections and providing general assistance to the public.  Powdrell Affidavit at ¶ 3 and Exhibit 1-A attached thereto, and Exhibit 2, Affidavit of Bruce Rizzieri, attached hereto and incorporated herein by reference ("Rizzieri Affidavit") and Exhibit 2-A attached thereto.

D.   Neither Defendant Powdrell nor any other TSOs carried a gun. Defendant had mace, a baton and handcuffs.  Powdrell Affidavit at ¶ 4 and Rizzieri Affidavit at ¶ 5.

E.      As a TSO, Defendant Powdrell had no power to arrest.  Powdrell Affidavit at ¶ 5 and Rizzieri Affidavit at ¶ 6.

F.      As a TSO, Defendant Powdrell's primary task was to provide security at the Transit facilities.  As part of this task, Defendant Powdrell was required to patrol Transit properties.  Powdrell Affidavit at ¶ 6 and Rizzieri Affidavit at ¶ 7.

G.      Defendant Powdrell was required to call for medical and police backup when needed because he had no power to arrest or to provide medical attention.  Powdrell Affidavit at ¶ 7 and Rizzieri Affidavit at ¶ 8.

H.      TSOs do not become involved with pre-indictment and post-judgment phases of the criminal process.  TSOs do not deal with criminal suspects, arrestees or convicted criminals in custody.  TSOs are not primarily involved with matters directly or physically connected with the handling and care of suspects, arrestees, or convicted criminals.  Powdrell Affidavit at ¶ 8 and Rizzieri Affidavit at ¶¶ 10, 11 and 12.

I.      On August 30, 2012, Defendant Powdrell was on duty at the Alvarado Transportation Center (ATC) when, at approximately 7:00 p.m., he observed a man making obscene gestures and drinking.  Defendant Powdrell talked to the man and told the man not to be so disruptive.  Powdrell Affidavit at ¶ 9.

J.      Defendant Powdrell saw the homeless man leave the ATC and walk to the bus stop at First and Central.  Defendant Powdrell saw the man pull out of fifth of vodka at the bus stop.  Defendants Powdrell and Fitzgerald told the man that he would be issued a citation to prohibit him from coming to the ATC.  Defendant Powdrell departed the bus stop to obtain a citation form.  Officer Fitzgerald remained with the man at the bus stop.  Powdrell Affidavit at ¶ 10.

K.     Defendant Powdrell summoned police, using Transit Dispatch, and returned to the bus stop where he saw Defendant Fitzgerald engaged in a confrontation with Plaintiff.  Powdrell Affidavit at ¶ 11.

L.     As he approached the bus stop, Plaintiff began taping the scene with his phone. Plaintiff began talking to Defendant Fitzgerald when Defendant Fitzgerald tried to grab Plaintiff's phone which was recording the encounter.  At this point, Defendant Powdrell came back to the bus stop.  Hernandez Deposition at p. 113, lns. 18-25, p. 114, lns. 6-8.  Excerpts from Hernandez Deposition are attached hereto and incorporated herein by reference as Exhibit 3.

M.     Defendant Powdrell arrived back at the bus stop after calling police from Transit Dispatch.  He saw Officer Fitzgerald fighting with the Plaintiff.  After Defendant Powdrell broke up the fight between Officer Fitzgerald and Plaintiff, he put Plaintiff in handcuffs for the safety of customers in the ATC and for Plaintiff, as well.  Defendant Powdrell was not aware of why Officer Fitzgerald was fighting with the Plaintiff or attempting to put him in handcuffs.  Powdrell Affidavit at ¶ 11.

N.     According to Plaintiff, Defendant Powdrell was partly responsible for "roughing" Plaintiff up.  Defendant Powdrell held up a mace canister but never used mace on Plaintiff. According to Plaintiff, both Defendants Powdrell and Fitzgerald handcuffed the Plaintiff. Hernandez Deposition, p. 117, lns. 10-23, pp. 121-122, lns. 18-2; Powdrell Affidavit at ¶ 12.

O.     According to Plaintiff, Defendant Powdrell also gently took Plaintiff's wallet out of Plaintiff's pocket.  Hernandez Deposition, p. 145, lns. 19-23.

P.     Plaintiff could not see which security officer – Fitzgerald or Powdrell – handcuffed him.  No one at the scene raised his voice.  Hernandez Deposition, p. 146, lns. 13-15, p. 148, lns. 24-25.  Powdrell Affidavit at ¶ 14.

Q.      Plaintiff alleges Defendant Fitzgerald also attacked Plaintiff and either Fitzgerald or Powdrell twisted Plaintiff's arm.  Defendant Powdrell does not remember twisting Plaintiff's arm.  Plaintiff cannot be sure who ordered him to the ground.  Plaintiff cannot say whether Defendant Powdrell twisted Plaintiff's arm.  Hernandez Deposition, p. 150, lns. 6-8, 17-25, and p. 151, lns. 1-18, p. 191, lns. 15-16, p. 192, lns. 2-19; Powdrell Affidavit at ¶ 15.

R.      According to the tape recording, the videotaped portion of the incident lasted between one and one-half minutes and two minutes; the entire recording is approximately four and one-half minutes long.  Hernandez Deposition, p. 159, lns. 19-20; *see also*, videotape attached as Exhibit 4 and incorporated herein by reference.

S.      Plaintiff did not immediately seek medical attention after the incident.  Hernandez Deposition, p. 177, lns 4 – 11.

T.      Plaintiff did not complain to Defendant Powdrell about the handcuffs being too tight.  Powdrell Affidavit at ¶ 18.

## II.      ARGUMENT OF LAW

### A.      Standards for summary judgment.

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'"  Seegmiller v. LaVerkin City, 528 F.3d 762, 766 (10th Cir. 2008) (*quoting* Fed.R.Civ.P. 56(c)).  The non-moving party may not "rely solely on its pleadings," to defeat summary judgment, Mincin v. Vail Holdings, Inc., 308 F.3d 1105, 1108 (10th Cir. 2002), but rather must "present facts such that a reasonable jury could find in [its] favor," Carpenter v. Boeing Co., 456 F.3d 1183, 1192 (10th Cir. 2006).  In applying this standard, the court must "examine the factual record and reasonable inferences therefrom in

the light most favorable to the party opposing summary judgment." <u>Sigmon v. CommunityCare</u> <u>HMO, Inc.</u>, 234 F.3d 1121, 1124-25 (10th Cir. 2007) (*quotations omitted*).  The party moving for summary judgment bears the burden of establishing that there is no genuine issue of material fact for trial.  *See* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material matter.  *See* <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d. 887, 891 (10th Cir. 1991). <u>Celotex</u>, 477 U.S. at 324.  The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." <u>Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.</u>, 912 F.2d 1238, 1241 (10th Cir. 1990).  "However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'" <u>Otteson v. United States</u>, 622 F.2d 516, 519 (10th Cir. 1980) (*citation omitted*). Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." <u>Colony Nat'l Ins. Co. v. Omer</u>, No. 07–2123, 2008 WL 2309005, at *11 (D.Kan. June 2, 2008) (*citing* Fed.R.Civ.P. 56(e)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" <u>Colony Nat'l Ins. Co. v. Omer</u>, 2008 WL 2309005, at *1 (*quoting* <u>Conaway v. Smith</u>, 853 F.2d 789, 794 (10th Cir.1988)).  If the non-movant cannot make such a showing, summary judgment is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986).

This motion should be granted dismissing Defendant Powdrell from this action.  First, Defendant Powdrell's actions were reasonable in the situation described in the Complaint and by

Plaintiff during his deposition and Plaintiff's constitutional rights were not violated, and second,

there is no applicable waiver of tort liability for a TSO.

    **B.**    **Defendant Powdrell is entitled to qualified immunity for his actions regarding Plaintiff.**

        **1.**    **Standards for qualified immunity.**

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

Pearson v. Callahan, 129 S.Ct. at 815 (*quoting* Harlow v. Fitzgerald, 457 U.S. 800, 818, 102

S.Ct. 2727, 73 L.Ed.2d 396 (1982)).  The Tenth Circuit has stated:

> When a defendant asserts qualified immunity at summary judgment, the responsibility shifts to the Plaintiff to meet a "heavy two-part burden," [Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001) ] (*internal quotation marks omitted*), demonstrating, [ (i) ] that the defendant's actions violated a constitutional or statutory right and, [ (ii) ] that the right at issue was clearly established at the time of the defendant's allegedly unlawful conduct. In assessing whether the right was clearly established, we ask whether the right was sufficiently clear that a reasonable government officer in the defendant's shoes would understand that what he or she did violated that right. If the Plaintiff fails to satisfy either part of the two-part inquiry, we must grant the defendant qualified immunity.

Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007).

> In Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled in part by* Pearson v. Callahan, the Supreme Court of the United States held that the court must decide whether there was a constitutional violation first, before it decides whether the law is clearly established. *See id.* at 200–01, 121 S.Ct. 2151. Courts are no longer strictly required to analyze the issues in that order. *See* Pearson v. Callahan, 129 S.Ct. at 818.

Sisneros v. Fisher, 685 F.Supp.2d 1188, 1202 (D.N.M. 2010) (Browning, J.).

> Further, '[i]n determining whether the Plaintiff has met its burden of establishing a constitutional violation that was clearly established, the court construes the facts in the light most favorable to the Plaintiff as the non-moving party. . . a Plaintiff's version of the facts must find support in the record[;] more specifically, as with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts.'

Sisneros v. Fisher, 685 F.Supp.2d at 1202 (*citations omitted*).

>   2.    **Defendant Powdrell did not violate Plaintiff's constitutional rights and is entitled to qualified immunity.**

>         a.    **Defendant Powdrell did not use excessive force.**

The Complaint alleges that Defendant Powdrell used excessive force and failed to exercise due care.  Complaint, Count VII.

> "[A]Plaintiff is required to show that the force used was impermissible (a constitutional violation) and that objectively reasonable officers could not have thought the force constitutionally permissible (violates clearly established law)." Cortez v. McCauley, 478 F.3d 1108, 1128 (10th Cir.2007. An excessive force claim "must ... be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard." Graham v. Connor, 490 U.S. at 394, 109 S.Ct. 1865.  All claims of excessive force in the context of an arrest or detention should be analyzed under the Fourth Amendment's reasonableness standard.  *See* Graham v. Connor, 490 U.S. at 395, 109 S.Ct. 1865 ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard...."). The Supreme Court recognizes that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. at 397, 109 S.Ct. 1865. Consequently, "the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective." Saucier v. Katz, 533 U.S. at 205, 121 S.Ct. 2151. When an officer moves for qualified immunity on an excessive force claim, "a Plaintiff is required to show that the force used was impermissible (a constitutional violation) and that objectively reasonable officers could not have thought the force constitutionally permissible (violates clearly established law)." Cortez v. McCauley, 478 F.3d 1108, 1128 (10th Cir. 2007).

Tanner v. San Juan Cnty. Sheriff's Office, 864 F. Supp. 2d 1090, 1114 (D.N.M. 2012).

Judge Browning, in Tanner, went on to discuss the relevant factors for determining whether a police officer's actions were objectively reasonable, stating:

> Reasonableness is evaluated under a totality of the circumstances approach which requires that we consider the following factors: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

A court assesses 'objective reasonableness based on whether the totality of the circumstances justified the use of force, and [must] pay careful attention to the facts and circumstances of the particular case.' Additionally, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

*Id.,* at 864 F.Supp.2d 1115 (*Citations omitted*).

Applying the mandated analysis to the facts in this case, the undisputed facts are that Defendant Powdrell confronted the homeless man at the ATC and told the man to leave because the man was being disruptive. Statement of Material Facts ("UMF") at I. When the homeless man refused, Defendant Powdrell departed the scene to get a citation book to cite the homeless man for criminal trespass. UMF at J. Plaintiff did not immediately consult a doctor. UMF at S. Plaintiff did not complain that the handcuffs were too tight. UMF at T.

According to Plaintiff, Defendant Powdrell gently took Plaintiff's wallet to identify Plaintiff. UMF at O.

In Sisneros v. Fisher, 685 F. Supp. 2d 1188 (D.N.M. 2010) the Court stated:

"In handcuffing cases, the Tenth Circuit has required something more than redness or soreness to establish the actual-injury element of an excessive-use-of-force claim. The Court concludes that, in the Tenth Circuit, temporary redness or soreness is, as a matter of law, a de minimis injury for the purpose of an excessive-use-of-force claim." 685 F. Supp. 2d at 1208. "[T]o recover on an excessive force claim, a Plaintiff must show: (1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some underline actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional."

Fisher v. City of Las Cruces, 584 F.3d 888, 894 (10th Cir. 2009) (*emphasis added*) (*quoting* Cortez v. McCauley, 478 F.3d at 1129 n.25)).

It was reasonable for Defendant Powdrell to take Plaintiff to the ground and handcuff him because he came upon the scene to witness an altercation involving another TSO. The encounter

was brief, causing no visible injury and Plaintiff was unhandcuffed within minutes. For the Court to determine whether Plaintiff's handcuffing was justified would be judging the case with "20/20 hindsight," which is not the test for a violation of the Fourth Amendment.

> **b.      Defendant Powdrell did not falsely arrest or falsely imprison Plaintiff.**

The Complaint also alleges that Defendant Powdrell falsely arrested/imprisoned Plaintiff. Complaint, Count VIII.  The facts demonstrate that Defendant Powdrell came upon the scene while Defendant Fitzgerald was struggling with Plaintiff.  To prohibit Plaintiff from becoming more involved in the altercation, Defendant Powdrell handcuffed.  Plaintiff was not arrested by Defendant Powdrell.  Plaintiff was only in handcuffs a minimal amount of time.  Plaintiff did not complain about the placement of the handcuffs and Plaintiff was not injured.  No constitutional violation occurred.  Defendant Powdrell should be afforded qualified immunity for his actions. He acted reasonably.

> **c.      There is no applicable tort claims waiver for TSOs.**

The Complaint alleges various tort claims against Defendant Powdrell, including negligent hiring and training (Count I), assault (Count III), battery (Count IV), and false arrest/false imprisonment (Count V).  It is also alleged and admitted that at the time of the incident, Defendant Powdrell was an employee of the City of Albuquerque and acting within the course and scope of his employment as a TSO.

The New Mexico Legislature enacted the TCA, because it recognized "the inherent unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity."  TCA at § 41-4-2A.  The Legislature declared it "to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act."

<u>Id.</u>  The TCA is also "based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty."  <u>Id.</u> at 41-4-2C.  Courts have held that the TCA "is the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim."  <u>Id.</u> at § 41-4-17A.  A Plaintiff may not sue a governmental entity of New Mexico, or its employees or agents, unless the Plaintiff's cause of action fits within one of the exceptions to immunity granted in the TCA.  *See* <u>Begay v. State</u>, 104 N.M. 483, 486, 723 P.2d 252, 255 (Ct. App. 1985) ("Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act."), *rev'd on other grounds by* <u>Smialek v. Begay</u>, 104 N.M. 375, 721 P.2d 1306 (1986).  A Plaintiff also may not sue a governmental entity or its employees for a damage or damages claim arising out of violations of rights under the New Mexico Constitution unless the TCA contains a waiver of immunity.  *See* <u>Barreras v. N.M. Corr. Dep't</u>, 2003-NMCA-027, ¶ 24, 133 N.M. 313, 62 P.3d 770 ("In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act.").

The Complaint in this case alleges Defendant Powdrell was a "law enforcement officer employed by the Albuquerque Transit Department, Security Division… acting within the scope and course of his employment."  Complaint ¶ 3.  The Complaint also alleges that immunity from suit in tort is contained in TCA at § 41-4-12 which is applicable to only law enforcement officers.  Complaint ¶ 7.  It is Plaintiff's burden to identify one of the specific statutory sections

allegedly waiving immunity. *See* <u>Rubio v. Carlsbad Municipal School District</u>, 106 N.M. 446,

448, 744 P.2d 919, 921 (Ct.App.1987). The TCA, which re-established sovereign immunity and

specifically excepted certain governmental employees from that immunity, is in derogation of

the common law and is to be strictly construed to the extent that it modifies the common law.

<u>Methola v. County of Eddy</u>, 95 N.M. 329, 622 P.2d 234 (1980).

     In <u>Coyazo v. State</u>, Judge Browning addressed what is meant by the term "law

enforcement" officer:

> "The New Mexico cases examining the notion of traditional duties of law
> enforcement officers involve persons and entities closely involved with the pre-
> indictment and post-judgment phases of the broad range of activities which in
> every day parlance could be included within the rubric of 'law enforcement.' For
> example, <u>Methola v. County of Eddy</u>, 95 N.M. 329, 622 P.2d 234 (1980),
> involved a county sheriff, his deputies, and the jailers at a county jail. <u>Anchondo</u>
> <u>v. Corrections Department</u>, 100 N.M. 108, 666 P.2d 1255 (1983), involved the
> Secretary of Corrections and a state penitentiary warden. The sheriff, his
> deputies, and the jailers in <u>Methola</u> were found to be law enforcement officers
> based on their day-to-day activities dealing with criminal suspects, arrestees, and
> convicted criminals in custody. The Secretary of Corrections and the prison
> warden were found not to be law enforcement officers in <u>Anchondo</u> because their
> day-to-day activities involve primarily administrative matters not directly or
> physically connected with the handling and care of suspects, arrestees, or
> convicted criminals. *See also* <u>Callaway v. N.M. Dep't of Corrections</u>, 117 N.M.
> 637, 641, 875 P.2d 393, 397 (Ct.App.), *cert. denied*, 118 N.M. 90, 879 P.2d 91
> (1994). In <u>Abalos</u>, this Court found that the director of a county detention center
> was a law enforcement officer under the Tort Claims Act because his day-to-day
> activities were more analogous to the activities of the sheriff, deputies, and jailer
> in <u>Methola</u> than to the warden in <u>Anchondo</u>. See <u>Abalos</u>, 105 N.M. at 560, 734
> P.2d at 800.

<u>Coyazo v. State</u>, 120 N.M. 47, 897 P.2d 234 (N.M. App. 1995).

     Defendant Powdrell was a TSO, not a law enforcement officer. TSOs do not carry guns.

TSOs have no power to arrest citizens. The job description, attached as Exhibit 1-A to the

Powdrell Affidavit and 2-A to the Rizzieri Affidavit, states that a security officer provides

security for City property by conducting periodic patrols, and preliminary investigations and

responding to calls for service.  TSOs are required to call police officers and emergency medical personnel if the situation warrants that.  A TSO does not become involved with "pre-indictment and post-judgment phases of the broad range of activities which in every day parlance could be included within the rubric of 'law enforcement.'"  Coyazo, 120 N.M. 47 at 237.  TSOs do not deal with criminal suspects, arrestees or convicted criminals in custody. TSOs are not primarily involved with matters directly or physically connected with the handling and care of suspects, arrestees, or convicted criminals.

Because TSOs are not law enforcement officers, there is no applicable waiver of tort liability in the TCA; there is only a waiver for certain torts committed by law enforcement officers, not TSOs, who are entitled to sovereign immunity.  Because Defendant Powdrell was not a law enforcement officer, Counts I, III, IV, and V should be dismissed.  All of these counts are brought under the New Mexico Tort Claims Act which provides no waiver of immunity for a security officer.

### III.    CONCLUSION

For the reasons discussed above, Defendant Powdrell requests an Order dismissing Plaintiff's Complaint against him in its entirety with prejudice, assessing his costs to the Plaintiff, and for such other and further relief as the Court deems just and proper.  Defendant Powdrell is entitled to qualified immunity and there is no waiver of liability under the TSA for TSOs.

WIGGINS, WILLIAMS & WIGGINS
A Professional Corporation

Electronically Filed

By_____/s/ Patricia G. Williams_____
   Patricia G. Williams
Attorneys for Akeem Powdrell
1803 Rio Grande Blvd., N.W. (87104)
P.O. Box 1308
Albuquerque, New Mexico 87103-1308
(505) 764-8400

We hereby certify that a copy of the foregoing
was served upon opposing counsel of record
through the Court's efile and serve system
on this 19th day of June, 2015.

WIGGINS, WILLIAMS & WIGGINS, P.C.

  Electronically Filed

By_____/s/ Patricia G. Williams_____
   Patricia G. Williams

G:\PW\0001CLIENTS\1861-City of Alb\029-Hernandez, Alfonso\Pleadings\2015.06.11 Memo in sup of AP's MSJ.doc