IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALFONSO HERNANDEZ,

      Plaintiff,

vs.                                                   NO. CIV-14-964 KG/SCY

CITY OF ALBUQUERQUE, et al.

      Defendants.

## DEFENDANT CITY OF ALBUQUERQUE, GALVAN AND MARKWICK'S MOTION FOR SUMMARY JUDGMENT

**COME NOW**, Defendants City of Albuquerque, Daniel Galvan and Amy Markwick, by and through their attorney, Trisha A. Walker, Assistant City Attorney, and hereby state the following in support of their Motion for Summary Judgment based on qualified immunity:

### INTRODUCTION

Transit officers Fitzgerald and Powdrell were working on August 30, 2012 when they noticed that there was an individual that was drinking alcohol at a bus stop. When the transit officers approached the man, who was later identified as Manual Bustamante, he had an open bottle of liquor. Mr. Bustamante was detained, un-handcuffed, until Albuquerque Police Department officers could be called to issue a criminal trespass notice.  Officer Daniel Galvan received the call regarding the disturbance and the issuance of a criminal trespass notice. However, when Officer Galvan arrived on the scene there were *two* individuals being detained at the bus stop, one in handcuffs.  Until Officer Galvan could assess the situation and determine what action to take, if any, the two individuals remained detained.  During the investigation, Officer Galvan spoke to the transit officers and a City bus driver who had stopped at the bus stop and witnessed an altercation between the transit officers and one of the detained men. When

Officer Galvan attempted to speak to the Plaintiff, the handcuffed man, about the situation the Plaintiff did not say that anything had transpired with transit security.  The Plaintiff did not indicate why he was being detained nor did he state any complaints that he had against the transit officers, or the fact that he had a video of any inappropriate actions by the transit officers.

Ultimately it was determined that the Plaintiff could be released from the handcuffs and that he would be issued a criminal trespass notice.

Plaintiff filed a lawsuit alleging 10 separate Counts against Defendants.  They are as follows:  1) Negligent Hiring, Training, Supervision Resulting in Violations of the NMTCA (City of Albuquerque involving Defendant Fitzgerald and Defendant Powdrell); 2) Negligent Hiring, Training, Supervision Resulting in Violations of the NMTCA (City of Albuquerque involving Defendant Galvan and Defendant Markwick); 3) Assault (Against Defendant Fitzgerald, Defendant Powdrell and City of Albuquerque); 4) Battery (Against Defendant Fitzgerald, Defendant Powdrell and City of Albuquerque; 5) False Arrest and/or False Imprisonment (Against Defendant Fitzgerald, Defendant Powdrell and City of Albuquerque); 6) False Arrest and/or False Imprisonment (Against Defendant Galvan, Defendant Markwick and City of Albuquerque); 7) Excessive Force (Against Defendants Fitzgerald and Powdrell); 8) False Arrest/False Imprisonment Under §1983 (Against Defendants Fitzgerald and Powdrell); 9) False Arrest/False Imprisonment Under §1983 (Against Defendants Galvan and Markwick); 10) *Monell* Claim Under §1983 (Against the City of Albuquerque).  For the reasons set forth below, Counts 1-6 and 9-10 should be dismissed with prejudice[1] and Defendants Galvan, Markwick and the City of Albuquerque should be dismissed from this suit.

## STANDARD OF REVIEW

---

[1] Count 7 of Excessive Force (Against Defendants Fitzgerald and Powdrell) and Count 8 of False Arrest/False Imprisonment Under §1983 (Against Defendants Fitzgerald and Powdrell) are not addressed in this Motion.

Normally, the summary judgment standard requires a Court to review the evidence in the light most favorable to the non-moving party. *See Bisbee v. Bey*, 39 F.3d 1096, 1100 (10th Cir. 1994). However, summary judgment premised upon qualified immunity grounds is viewed somewhat differently. *Hannula v. City of Lakewood*, 907 F.2d 129, 130 (10th Cir. 1990). When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test. *See Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). In order for a plaintiff's claim to survive summary judgment, the record must contain facts that rebut the presumption of an entitlement to qualified immunity. *See Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001) (emphasis added). For purposes of overcoming a defendant-officer's presumption of immunity, a plaintiff has the heavy burden of showing both that (1) the defendant-officer in question violated one of his constitutional rights, and (2) the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that "every reasonable official would have understood that what he [was] doing" violated the law. *Ashcroft v. al-Kidd*, ____ U.S.____, 131 S.Ct. 2074, 2080, 2083 (2011). Failure on either qualified immunity element is fatal to the plaintiff's cause. Lower courts have discretion regarding what order to decide the two prongs of qualified-immunity analysis. *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808 (2009).

As to the constitutional inquiry, the question is whether the facts alleged, which are taken in the light most favorable to the non-moving party, show that the officer's conduct violated a constitutional right. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). The clearly established inquiry is more specific than whether the officer's conduct violated a constitutional right; the question is whether it would be clear to a reasonable officer that his or her conduct was unlawful under the circumstances he or she confronted. *Saucier v. Katz*, 533

U.S. 194, 202 (2001). "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999)(*citing Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Moreover, "in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains." *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). "A necessary concomitant to the determination of whether the constitutional right is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *see also Bella v. Chamberlain*, 24 F.3d 1251 (10th Cir. 1994). For a right to be "clearly established," the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) because the salient question is whether the state of the law at the time gives officials fair warning that their conduct is unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Hence, the general rule of qualified immunity is intended to provide government officials with the ability to reasonably anticipate when their conduct may give rise to liability for damages. When conducting this clearly established inquiry, it is inappropriate for a court to define a clearly established law at a high level of generality. *See Brosseau v. Haugen*, 543 U.S. 194, 198-199, 125 S.Ct. 596 (2004) (per curiam); *Wilson v. Layne* 526 U.S. 603, 615 119 S.Ct. 1692 (1999). *Anderson*, 483 U.S. at 639-640. The Tenth Circuit has held that for the law to be "clearly established," there must be a Supreme Court or Tenth Circuit decision on point or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. *Garramone v. Romo*, 94 F.3d 1446, 1451 (10th Cir. 1996). Moreover, the "clearly

established inquiry" must be undertaken in light of the specific context of the case, not as a broad

general proposition. *Saucier,* 533 U.S. at 201.

## UNDISPUTED MATERIAL FACTS

The following facts are, for the purposes of this Motion only, deemed to be undisputed.

1. On August 30, 2012 at approximately 7:29 p.m. while on duty, Officer Galvan was dispatched to the area of 1ˢᵗ and Central Ave. NW in reference to a disturbance call. *See* Affidavit of Daniel Galvan, Exhibit A at ¶3.

2. The call indicated that officers were needed to issue a citation to a male subject who was causing a disturbance and was drinking in public. *See* Exhibit A at ¶4.

3. The information that Officer Galvan had regarding the description of the man was that he was a white male adult in his 40's approximately 5'9" and 170 lbs and wearing a black shirt with blue jeans. It was unknown if the subject had any weapons. See Exhibit A at ¶ 5 and Exhibit B, CAD report for Call #P122431167.

4. When Officer Galvan arrived, he witnessed transit security at a bus stop with two men. One male was in handcuffs on the bus bench and another male was seated un-handcuffed next to him on the bench. *See* Exhibit A at ¶6 and Exhibit C, Officer Galvan's lapel video at 2:39:57.

5. Officer Galvan began his investigation by speaking with the transit security officers to determine the reason for the call and determine which individual the call was about. *See* Exhibit A at ¶8 and Exhibit C at 2:40:00.

6. Then Officer Galvan began to interview the bus driver witness who indicated that he witnessed an altercation between one of the men and the transit officers. His statement was that one of the men got aggressive with the transit security guard and that the other security guard had to run over to assist getting the man into handcuffs. *See* Exhibit A at ¶9 and Exhibit C at 2:40:35.

7. He then went to speak with the two men on the bench. First, Officer Galvan spoke with the un-handcuffed male and attempted to determine his identity. *See* Exhibit C at 2:41:10. As the officer began to speak with the Plaintiff to determine what had occurred, an unknown man walked up who was clearly intoxicated and began interfering with his investigation. *See* Exhibit A at ¶10 and Exhibit C at 2:41:40.

8. Officer Galvan heard the Plaintiff tell the man to give his identification to officers and to "get back on the bus." However, the man, who was obviously intoxicated, continued to interfere so Officer Galvan separated him from the Plaintiff and told him to sit down. *See*

Exhibit A at ¶11 and 12 and Exhibit C at 2:41:49 and 2:42:05.

9.  Because of the number of people involved, Officer Galvan called for another unit to assist him and attempted to separate the witnesses. *See* Exhibit A at ¶13 and Exhibit C at 2:42:12.

10. Officer Markwick arrived in response to the request for assistance. *See* Exhibit C at 2:45:57.

11. From the information Officer Galvan had gathered, he initially thought that the Plaintiff was the subject of the disturbance call and that the person that was interfering in the disturbance call was the un-handcuffed man.  *See* Exhibit A at ¶14-16 and Exhibit C at 2:45:51.

12. Officer Galvan thought, incorrectly, that the call for the person drinking at the bus stop was the Plaintiff and Officer Galvan told the Plaintiff that he was going to get a criminal trespass notice. *See* Exhibit A at ¶20 and Exhibit C at 2:46:06.

13. Officer Galvan did not un-handcuff the Plaintiff prior to his investigation being complete because he did not know the events that occurred prior to his arrival and was attempting to investigate them. The Plaintiff did not ever tell the officers that he was assaulted by the transit security. *See* Exhibit A at ¶18-20 and Exhibit C.

14. Officer Galvan did not witness any physical interaction between the Plaintiff and the transit security.  *See* Exhibit C.

15. Based upon Officer Galvan's investigation, it was determined that the Plaintiff was not under arrest for any crime. His handcuffs were removed and Officer Galvan issued him a criminal trespass notice. *See* Exhibit A at ¶20 and Exhibit C at 2:50:44.

16. Officer Galvan only touched the Plaintiff to remove him from handcuffs and issue him a criminal trespass notice. *See* Exhibit C at 2:50:44.

17. Officer Markwick did not touch the Plaintiff at any time.  *See* Exhibit C.

18. After Officer Galvan arrived on scene, the Plaintiff remained in handcuffs for approximately eleven minutes.  *See* Exhibit C 2:39:32 until 2:50:58.

19. Plaintiff's complaints against Officer Markwick include that she failed to give him her business card, even though she told him that her name would be in the complaint. *See* Exhibit D, Deposition of Plaintiff taken on February 23, 2015 at page 168:1-22.

20. Plaintiff complains that Officer Markwick failed to record the incident, even though Officer Galvan has a full recording of the encounter with the Plaintiff.  *See* Exhibit C and Exhibit D at 166:15-18.

6

21.   Plaintiff's complaints against Officer Galvan are that he did not treat him with any dignity or respect and that he did not do a full investigation because he escorted his witness away.  *See* Exhibit D, 164:23-165:1 and 165:24-166:8.

## **ARGUMENT**

### A. **There is No Waiver of Immunity for the Alleged Intentional Acts of Defendant Powdrell or Fitzgerald therefore Counts I, III, IV and V Fail as a Matter of Law.**

Plaintiff alleges Negligent Hiring, Training, Supervision Resulting in Violations of the NMTCA (City of Albuquerque involving Defendant Powdrell and Fitzgerald); Assault (Against Defendant Fitzgerald, Defendant Powdrell and City of Albuquerque); Battery (Against Defendant Fitzgerald, Defendant Powdrell and City of Albuquerque; False Arrest and/or False Imprisonment (Against Defendant Fitzgerald, Defendant Powdrell and City of Albuquerque). All of these claims fail, as they are not intentional acts **committed by law enforcement officers** as required under the New Mexico Tort Claims Act. As the Court is aware, the legislative declaration in the Tort Claims Act states that "while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done."  NMSA 1978, § 41-4-2(A) (1976).  "The Tort Claims Act in no way imposes a strict liability for injuries upon governmental entities or public employees."  Section 41-4-2(B).  Potential tort liability of a governmental entity and its employees is limited by the specific provisions set out under the TCA.  *Pemberton v. Cordova*, 105 N.M. 476, 477, 734 P.2d 254, 255 (Ct. App. 1987). Section 41-4-4 specifically provides:

> A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by Sections 41-4-5 through 41-4-12, NMSA (1978).

(Emphasis added.) Therefore, for Plaintiff to establish any of the facts to support Plaintiff's Claims for Negligent Hiring, Training, Supervision, Assault, Battery or False Arrest and/or False Imprisonment the plaintiff must be able to prove that the immunity from tort liability has been waived for the acts alleged. *See Noriega v. Stahmann Farms, Inc.*, 113 N.M. 441, 443, 829 P.2d 156, 158 (Ct. App. 1992) (stating that the TCA shields governmental entities and employees from liability for torts committed in the performance of their duties unless immunity has been specifically waived by a section of the TCA). Further, statutory provisions purporting to waive governmental immunity are strictly construed. *See Rutherford v. Chaves County*, 2003-NMSC-010, ¶ 11, 133 N.M. 756, 69 P.3d 1199 (citing *Armijo v. Dept. of Health and Environment*, 108 N.M. 616, 617, 755 P.2d 1333, 1334 (Ct. App. 1989). As more fully briefed in Defendant Powdrell's Motion for Summary Judgement [Doc. 49], neither Defendant Powdrell nor Defendant Fitzgerald are law enforcement officers within the meaning contemplated in the New Mexico Tort Claims Act. Plaintiff cannot state a claim against Defendants City of Albuquerque, Powdrell or Fitzgerald under the Tort Claims Act for Counts I, III, IV or V because the allegations in the Complaint, when accepted as true and construed in the light most favorable to Plaintiff, are not sufficient to state a claim for which relief may be granted. *See Noriega v. Stahmann Farms, Inc.*, 113 N.M. 441, 443, 829 P.2d 156, 158 (Ct. App. 1992) (stating that the TCA shields governmental entities and employees from liability for torts committed in the performance of their duties unless immunity has been specifically waived by a section of the TCA).

Additionally, the requisite elements of negligent supervision under the New Mexico Tort Claims Act are: (1) a violation by a subordinate officer of rights secured by the constitution or laws of the United States or New Mexico and (2) negligent supervision by superior law

enforcement officers that proximately causes the violation. *McDermitt v. Corrections Corporation of America*, 112 N.M. 247, 248, 814 P.2d 115, 116 (Ct. App. 1991).   However, a plaintiff cannot recover for negligent training or supervision in the absence of either a tort listed in § 41-4-12 or a deprivation of a right secured by the federal or state constitution or laws.   *Id*. Because there is no basis for any underlying tort claim, as described above, Plaintiff's claim for negligent hiring, training, and supervision, of Defendant Powdrell or Fitzgerald cannot stand. Plaintiff sets forth no facts against Defendants Powdrell or Fitzgerald which would fall under an exception to the immunity granted by the New Mexico Tort Claims Act.

The Tort Claims Act is the exclusive remedy against a governmental entity or employee "for any tort for which immunity has been waived under the Tort Claims Act and *no other claim, civil action or proceedings for damages*, by reason of the same occurrence, may be brought against a governmental entity or against the public employee . . . whose act or omission gave rise to the suit or claim."  *See* NMSA 1978, § 41-4-17 (1982).   Therefore Counts I, III, IV, and V of Plaintiff's Complaint must be dismissed with prejudice against Defendant City of Albuquerque, Defendant Powdrell and Defendant Fitzgerald pursuant to the exclusivity and immunities provided for in the Tort Claims Act.

**B.  Plaintiff's Count IX: False Arrest/False Imprisonment Under §1983 (Against Defendants Galvan and Markwick) Fails as a Matter of Law and Defendant Officers are Entitled to Qualified Immunity**

As the Court is aware, an officer can permissibly stop and briefly detain a person for investigative purposes "if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc). The detention must be reasonably related in scope to the purpose of the stop and designed to confirm or dispel the reasonable suspicion in a timely manner. *United States v. Sharpe*, 470 U.S. 675, 686 (1985); *Terry v. Ohio*,

392 U.S. 1, 19-20. Additionally, "Officers may rely on information furnished by other law enforcement officials to establish reasonable suspicion, and to develop probable cause for an arrest." *Albright v. Rodriguez*, 51 F.3d 1531, 1536 (10th Cir. 1995).   In this case, Officer Galvan relied upon the information given to him by the bus driver and by transit security officers. *See* Undisputed Facts No. 4, 5 and 6.   Once suspicion is dispelled, a citizen must be allowed to proceed on his way. *United States v. Lyons*, 510 F.3d 1225, 1237 (10th Cir. 2007).   This is exactly what occurred in this instance. Officer Galvan released the Plaintiff from his handcuffs after approximately eleven minutes.  *See* Undisputed Fact No. 18.

The Tenth Circuit has repeatedly indicated that using handcuffs, displaying firearms, or requiring a person to lie prone does not necessarily transform an investigatory detention into an arrest. See, e.g., *United States v. Neff*, 300 F.3d 1217, 1220 (10th Cir. 2002); *United States v. Shareef*, 100 F.3d 1491, 1506 (10th Cir. 1996); *United States v. Perdue*, 8 F.3d 1455, 1462-63 (10th Cir. 1993). These measures, albeit intrusive, may be appropriate during an investigatory detention, particularly when officers have concerns about their safety. *Lundstrom*, 616 F.3d at 1122.  In the instant case, the APD officers arriving on scene had no information as to why the Plaintiff was in handcuffs, however, it was reasonable to assume that he was handcuffed because he was being investigated for committing a crime or was being unruly.  The detention in this case—no more than fourteen minutes by Plaintiff's own calculation in his Complaint—was temporary and lasted no longer than necessary to effectuate the purpose of the detention. *See, Plaintiff's Complaint [Doc.1-1 at ¶109] and e.g. United States v. Shareef*, 100 F.3d 1491, 1507 (10th Cir. 1996) (finding a 30 to 45 minute detention to be reasonable under the circumstances.). The investigation was efficiently conducted such that officers could separate the witnesses first, maintain the status quo until they could figure out the roles of both the Plaintiff and the other

man at the bus stop, and then confirm or dispel whether any crime had been committed. Once it was determined that a criminal trespass notice would be all that was necessary, the Plaintiff was allowed on his way. *See* Undisputed Facts No. 13, 14, 15 and 16.

Plaintiff may attempt to focus on the fact that Albuquerque Police Department officers Galvan and Markwick initially thought that the Plaintiff was the individual who was attempting to drink on the bus (and not the un-handcuffed individual, Mr. Bustamante). *See* Undisputed Facts No. 11 and 12. However, officers are allowed some latitude to make honest mistakes when tasked with investigating and making arrests. *Maryland v. Garrison*, 480 U.S. 79, 87 (1987). Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks and citation omitted).

As the Court is aware, individual liability under Section 1983 must be based on personal involvement in the alleged constitutional violation. *Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir. 1997).  "If the Court is to hold police officers personally liable for violating a citizen's constitutional rights, the Court needs the evidence to provide a sound basis for concluding that the officer is the one who violated the Constitution." *Sisneros v. City of Albuquerque,* No. Civ. 02-1035 JB/KBM, slip op. at 14 (D.N.M. filed November 7, 2003) [Doc. No. 35] (dismissing excessive force claim against certain officers and stating that the plaintiff "cannot prove, what if anything, any of the officers did to him.")(citations omitted).

Plaintiff has not alleged, nor can he prove that Defendant Galvan or Markwick touched him in any way, seized him or handcuffed him. *See* Undisputed Facts No. 4, 16, 17 and 18.  The Tenth Circuit has addressed the issue of personal participation in *Jenkins v. Wood,* 81 F.3d 988 (10th Cir. 1996).  In *Jenkins,* the Plaintiffs brought a civil rights action against state bureau of

investigation agents and city in relation to search of home.  Plaintiffs were only able to identify a

KBI agent that allegedly used excessive force against him as a slender, white man of medium

height, and in his mid-forties, but otherwise could not identify the agent. *Id.* The Tenth Circuit

affirmed the dismissal of the excessive force claims against the named agent, Sabel, concluding:

> the evidence is not sufficient to implicate Agent Sabel as a personal participant in
> the alleged violations. First, Mr. and Mrs. Jenkins have brought forward no
> evidence indicating Agent Sabel participated in the use of excessive force against
> them personally. Agent Sabel entered the residence after the entry team. Upon
> first going downstairs, he directed the officers to uncuff Mr. Jenkins and allow
> him to sit down. By this time, Mrs. Jenkins was already off the floor and seated
> on the couch. Though Mr. and Mrs. Jenkins have detailed some disturbing
> behavior to support their claims of excessive force, their allegations relate to the
> time period when they were held face-down on the floor at gunpoint. Agent Sabel
> was partly responsible for curing this situation, and there is no logical or
> evidentiary support for the proposition that Agent Sabel participated in what
> happened before he came downstairs and directed the officers to uncuff Mr.
> Jenkins. As with Agent Wood, neither Mr. nor Mrs. Jenkins identified Agent
> Sabel as one of the officers who subjected them personally to excessive force.

*Id.* at 995.

Plaintiff cannot rebut that Defendants Galvan and Markwick were not on scene when the

Plaintiff was handcuffed. *See* Undisputed Fact No. 4.  Officers Galvan and Markwick did not

witness any physical interaction between Defendant Powdrell or Fitzgerald and the Plaintiff. *See*

Undisputed Fact No. 14.    Additionally, the Plaintiff can offer no evidence that Officers Galvan

or Markwick witnessed any force used against the Plaintiff.  Because Officers Galvan and

Markwick did not personally participate in any alleged constitutional violation nor did they

witness any alleged use of excessive force that would require intervention, all claims against

them must fail.  To be sure, Plaintiff all but admitted that his inclusion of Defendant Markwick

in this case is superfluous and unnecessary.  Below is the testimony of the Plaintiff surrounding

the actions or inactions of Defendant Markwick:

168

12

1    Q.   What specific complaints do you have about
2   Officer Markwick's dealings with you?
3    A.   She failed to give me her business card,
4   for one.
5    Q.   Did you ask her for her business card?
6    A.   As I recall, I -- I remember asking her for
7   some kind of identification.
8    Q.   What did she tell you?
9    A.   I don't remember.  No, she refused to give
10   it at the moment, as I remember, being that her name
11   would be on the complaint.  I think that's what she
12   said.
13    Q.   What other specific complaints --
14    A.   I'm having a --
15    Q.   -- do you have about Officer Markwick?
16    A.   I don't recall right now.
17    Q.   So she failed to give you a business card
18   but told you her name would be in the complaint, and
19   she failed to record the incident?
20    A.   To the best of my memory right now, yes.
21    Q.   Anything else?
22    A.   No.

Failing to immediately provide a business card does not equate to a constitutional

violation.

Plaintiff's testimony regarding Officer Galvan is no more convincing of a constitutional

violation.

164

20    Q.   What specific complaints do you have about
21   the way Officer Galvan dealt with you?
22    **A.   I'm sorry.   What specific what?**
23    Q.   Complaints do you have about the way
24   Officer Galvan dealt with you.
25    **A.   Well, he did not treat me with dignity or**

165
1   **respect.   He did not do a full investigation.**

24    Q.   What else do you have complaints about
25   regarding the way Officer Galvan treated you?

13

166
1      **A.  Besides scaring or escorting my witness**
2  **away and any possible other witnesses --**
3      Q.  What other witnesses did you see him escort
4  away?
5      **A.  That's the only one I saw escorted away.**
6  **But for him doing that and then yelling at me --**
7  **okay.  So that's the only witness I saw him escort**
8  **away.**
9      Q.  What other complaints do you have about the
10  way Officer Galvan handled you?
11      **A.  The verbal assault, the way he talked to**
12  **me.**
13      Q.  By telling you to shut up and sit down?
14      **A.  Yes.**

When the Albuquerque Police Department ("APD") officers arrived on scene, Plaintiff was handcuffed.  The APD officers had no knowledge of why the Plaintiff was handcuffed or what had transpired between those at the bus stop and Defendant Fitzgerald or Defendant Powdrell.  It is ludicrous to expect that the APD officers, upon arriving on scene, would immediately un-handcuff the Plaintiff without some more information.  In fact, what makes reasonable sense is that they would begin their investigation into the incident, as they did.  While Plaintiff is upset that he was handcuffed, the continued detention in this case by Officer Galvan was more than reasonable.

Even if this Court disregards the fact that Officers Galvan and Markwick were in a completely separate location at the time that Plaintiff was detained and handcuffed by Defendants Powdrell and Fitzgerald, both officers had reasonable suspicion to continue the detain of the Plaintiff when they arrived on scene.   As the Court articulated in *Oliver v. Woods*, 209 F. 3d 1179, 1186 (10th Cir. 2000), an investigative detention is "a seizure within the meaning of the Fourth Amendment but, unlike an arrest, it need not be supported by probable cause." *Id.* An officer "can stop and briefly detain a person for investigative purposes if the officer has a

reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *Id.* For an officer to have reasonable suspicion to seize an individual, the officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* Officers Galvan and Markwick had enough reasonable suspicion to detain the Plaintiff for investigative purposes, as he was 1) a male; 2) in the location identified by the caller; 3) in handcuffs; 4) was approximately the same size as the subject identified in the call; 5) was approximately the same age of the subject identified in the call; and 6) was wearing the same jean pants as described in the call See Undisputed Fact No.3. The officers certainly had enough information to determine that criminal activity may be afoot. Moreover, when an investigative detention is the subject of a §1983 action, the defendant officer is entitled to immunity if a reasonable officer could have believed that reasonable suspicion existed to detain the plaintiff; officers need only have had "arguable reasonable suspicion," not actual reasonable suspicion to qualify for immunity. *Cortez v. McCauley*, 478 F.3d at 1120 & n.15, 1123; *Cortez v. McCauley*, 438 F.3d at 990-92; *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1206, 1207 (10th Cir. 2008). The standard for arguable reasonable suspicion is "whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that [reasonable suspicion] existed in the light of well-established law." *Gold v. City of Miami*, 121 F.3d 1442, 1145 (11th Cir. 1997).

Moreover, Plaintiff cannot show that a reasonable officer would have known that they were unable to detain or arrest the Plaintiff based upon the circumstances of this case. In order to preclude application of the qualified immunity defense, the Plaintiff must be able to establish that the law was clearly established at the time of the alleged violation. *Dixon*, 922 F.2d at 1460. The salient question is whether the state of the law at the time of an incident provided "fair

warning" to the defendant that his alleged conduct was unconstitutional." *Hope v. Pelzer,* 536 U.S. 730, 742, (2002).   The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). As the Supreme Court has directed, qualified immunity should protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).   As indicated by the facts above, as they were presented to the officers, they had reasonable suspicion to detain the Plaintiff and Plaintiff's claims of False Arrest/False Imprisonment fail as a matter of law.

**C.   There is No Evidence to Support Plaintiff's Count VI: False Arrest and/or False Imprisonment (Against Defendant Galvan, Defendant Markwick and City of Albuquerque)**

Violations of the New Mexico Tort Claims Act ("NMTCA") committed by law enforcement officers must be intentional in nature.   The NMTCA sets forth the types of claims that can be brought against law enforcement officers when they are acting intentionally.   As stated above, Officers Galvan and Markwick had no personal involvement in the initial seizure or detention of the Plaintiff, and their continued detention of his was reasonable, therefore they cannot be held liable for false arrest and/or false imprisonment. Defendants incorporate by reference all arguments set forth above.   There is no evidence that either law enforcement officer arrested or imprisoned the Plaintiff. As detailed above, an investigative detention was appropriate and reasonable in these circumstances.

**D.   Count II: Negligent Hiring, Training, Supervision Resulting in Violations of the NMTCA (City of Albuquerque involving Defendant Galvan and Defendant Markwick)**

As set forth above, Plaintiff's claims against Defendants Galvan and Markwick pursuant to the New Mexico Tort Claims Act are without merit.  As indicated above, Officers Galvan and Markwick acted reasonably in the course of their investigative detention, and cannot be held liable for a false arrest and/or false imprisonment claim as they had probable cause to detain the Plaintiff.  As such, because there is no underlying tort, Plaintiff cannot maintain a negligent hiring, training or supervision claim.

Based on the above, Defendant Galvan and Defendant Markwick should be dismissed from this suit, as there are no claims against them that can stand.

### E.  Count X: *Monell* Claim Against the City of Albuquerque Fails

A municipality may not be held liable under Section 1983 solely because it is an employer.  *See Monell v. Department of Social Services*, 436 U.S. 658, 691-92 (1978).  Instead, "[a] plaintiff suing a municipality under Section 1983 must show: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation."   *Myers v. Oklahoma County Bd. Of County Commissioners,* 151 F.3d 1313, 1316 (10th Cir. 1998) (*citing Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)).   It is well established that under Section 1983, the City cannot be held liable unless there is an underlying constitutional violation committed by one of its officers. *See Hinton v. City of Elwood, Kan.,* 997 F.2d 774, 782 (10th Cir. 1993); *see also Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995).   As such, Defendant City incorporates by reference all arguments, points, and authorities above which reveal that the individually named Defendants are not liable based upon qualified immunity.  As such, it is well established that the City is not liable under *Monell* standards.  Notwithstanding, even if the Court were to assume that Plaintiff was able to establish that one or more of the individually named City employees

committed an alleged constitutional infraction, the City would still prevail under a Section 1983 *Monell* claim as Plaintiff cannot show as a matter of law that a municipal policy or custom was the moving force behind any alleged constitutional infraction.

In order to warrant liability under Section 1983 against a municipality, any alleged policy must be a "policy, statement, ordinance, regulation, or decision officially adopted and promulgated" by the municipality's officers. *See Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996). A policy giving rise to liability cannot be established merely by identifying a policymaker's conduct that is properly attributable to the municipality, rather a plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the alleged injury. *Board of County Com'rs of Bryan County, Okl v. Brown*, 520 U.S. 397, 404-05 (1997).

Plaintiff cannot cite to and/or produce any specific policy, written or otherwise, that evidences his supervisory and training claims alleged in his Complaint. Therefore, it is clear that Plaintiff's municipal liability claims should be dismissed in their entirety as he has no evidence that the City failed to train or supervise its officers or evidence that shows that any municipal policy, written or otherwise, is causally linked to any constitutional deprivation in this case. *See Harris*, 489 U.S. 378; *Lankford*, 73 F.3d at 286.

**WHEREFORE**, based on the aforementioned arguments, points and authorities, Defendants City of Albuquerque, Daniel Galvan and Amy Markwick request that this Court grant Defendants' Motion for Summary Judgment in its entirety dismissing Counts 1-6 and Counts 9-10 with prejudice and thereby dismissing Defendants City of Albuquerque, Daniel Galvan and Amy Markwick from this lawsuit, and for such other and further relief as this Court may deem just and necessary.

Respectfully submitted,
CITY OF ALBUQUERQUE
Jessica M. Hernandez, City Attorney


/s/ Trisha A. Walker
Assistant City Attorney
P. O. Box 2248
Albuquerque, New Mexico 87l03
(505) 768-4500
*Attorney for Defendants City of*
*Albuquerque, Daniel Galvan and Amy Markwick*


I hereby certify that a true and correct copy of this
pleading was served on all counsel of record via
CM/ECF system on October 21, 2015:

Anna C. Martinez
Aequitas Law, LLC
P.O. Box 25304
Albuquerque, NM 87125
(505) 750-8005
anna@aequitas.pro
*Attorney for Plaintiff*

Jonlyn M. Martinez
PO Box 1805
Albuquerque, New Mexico  87103-1805
(505) 247-9488
jonlyn@jmartinezlaw.net
*Attorney for Defendant Andy Fitzgerald*

Patricia G. Williams, Esq.
Wiggins, Williams & Wiggins, P.C
P.O. Box 1308
Albuquerque NM 87103
(505) 768-8400
*Attorney for Defendant Akeem Powdrell*


/s/ Trisha A. Walker, Assistant City Attorney

19