IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALFONSO HERNANDEZ,

    Plaintiff,

vs.                                                                              Civ. No. 14-964 KG/SCY

CITY OF ALBUQUERQUE, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING, IN PART, DEFENDANT [SIC] CITY OF ALBUQUERQUE, GALVAN AND MARKWICK'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant [sic] City of Albuquerque (City), Galvan and Markwick's Motion for Summary Judgment, filed October 21, 2015. (Doc. 73). Defendants filed a Notice of Completion of Briefing on November 10, 2015, noting that Plaintiff did not file a response or request an extension of time to respond. (Doc. 83).[1] Having considered the Motion for Summary Judgment, the Dismissal and the record,[2] the Court denies, in part, and grants, in part, the Motion for Summary Judgment. Defendants Daniel Galvan and Amy Markwick and all claims against them have been dismissed. Therefore, this motion is denied as

---

[1] On November 17, 2015, Plaintiff filed a Notice of Dismissal (Dismissal), dismissing all claims against Defendants Galvan and Markwick, with prejudice. (Doc. 92). In the Dismissal, Plaintiff indicated that on November 10, 2015, presumably after the Notice of Completion of Briefing was filed, the City's counsel granted his request for an extension of time to respond to the Motion for Summary Judgment. (Doc. 92) at 3. Rather than responding, Plaintiff explained in the Dismissal that he deliberately chose to dismiss Defendants Galvan and Markwick instead. *Id.*

[2] On March 16, 2016, 127 days after Defendants filed the Notice of Completion of Briefing, Plaintiff filed a Motion to Strike Argument Advanced by Inappropriate Party or, in the Alternative, to Direct the Appropriate Defendants to Join the Motion and for Related Relief (Motion to Strike). (Doc. 103). The Court denied Plaintiff's Motion to Strike for reasons set forth a corresponding opinion.

moot as it pertains to those claims. The motion is granted in favor of Defendants as to the remaining claims.

I. Background

This litigation arises out of an altercation between Plaintiff and Albuquerque Transit Department transit security officers (TSOs) Defendants Andy Fitzgerald and Akeem Powdrell on August 30, 2012. (Doc. 1-2). Plaintiff claims he approached the TSOs as they were detaining a homeless man (later identified as Manuel Bustamante). *Id.* at ¶ 26. Plaintiff was recording his contact with the TSOs both with an audio-recording device in his pocket and the video-recording function of his cell phone. *Id.* at ¶¶ 27, 29. Plaintiff alleges that Defendant Fitzgerald attempted to grab Plaintiff's cell phone while "attacking" him and ultimately tackled Plaintiff. *Id.* at ¶¶ 43-44, 46. Plaintiff states that both TSOs then handcuffed him, ordered him to the ground, and yelled at him to roll over while they twisted his left arm behind his back. *Id.* at ¶¶ 50, 56-57, 63.

Plaintiff originally filed this case on August 14, 2014, in the Second Judicial District Court, County of Bernalillo, New Mexico. (Doc. 1-2). Defendants removed the case to this Court on October 24, 2014. (Doc. 1). Plaintiff's Complaint for Violations of the Tort Claims Act and Deprivation of Civil Rights (Complaint) alleges ten counts. (Doc. 1-2). In Count I, Plaintiff asserts claims against the City for negligent hiring, training, and supervision resulting in violations of the New Mexico Tort Claims Act (NMTCA), NMSA 1978, § 41-4-1 et seq. (Repl. Pamp. 1996) for the acts involving Defendants Fitzgerald and Powdrell. *Id.* at 13-14. Plaintiff raises the same claims against the City for the acts involving Defendants Galvan and Markwick in Count II. *Id.* at 14-16. In Counts III, IV and V, Plaintiff makes additional claims against the City and Defendants Fitzgerald and Powdrell under the NMTCA for assault, battery,

and false arrest/false imprisonment. *Id.* at 16-18. In Count VI, Plaintiff raises additional claims against the City and Defendants Galvan and Markwick for false arrest/false imprisonment under the NMTCA. *Id.* at 18-19. In Counts VII and VIII, Plaintiff alleges 42 U.S.C. § 1983 Fourth Amendment claims against Defendants Fitzgerald and Powdrell for excessive force and false arrest/imprisonment. *Id.* at 20-23. In Count X, Plaintiff asserts *Monell* claims of municipal liability against the City. *Id.* at 24-26.

On November 17, 2015, Plaintiff voluntarily dismissed Defendants Galvan and Markwick and the claims against them in their entirety (Counts II, VI, and IX). (Doc. 92) at 1-2. Plaintiff also dismissed the *Monell* claim against the City involving Defendants Galvan and Markwick (Count X). *Id.* at 2. Plaintiff did not dismiss the *Monell* claim against the City based on the alleged actions of remaining Defendants Fitzgerald and Powdrell. *Id.* The City moves in this Motion for Summary Judgment to dismiss that *Monell* claim as well as the NMTCA claims brought against it based on the alleged actions of Defendants Fitzgerald and Powdrell.

II.  Standard of Review

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the non-movant. *Deepwater Invs. Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir. 1991). The movant bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A fact is "material" if, under the governing law, it could have an effect on the

3

outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted). The non-movant may not avoid summary judgment by resting upon the mere allegations or denials of its pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

III. Discussion

    *1. Plaintiff's Monell Claim (Count X) Based On Defendants Fitzgerald and Powdrell's Actions*

In *Monell*, the United States Supreme Court held that the government as an entity can be held responsible under Section 1983 "when execution of a government's policy or custom … inflicts the injury…." *Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 694 (1978). "A plaintiff suing a [municipality] under section 1983 for the acts of one of its [employees] must demonstrate two elements: (1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998) (citation omitted).

First, the City argues that Plaintiff cannot prevail on a Section 1983 *Monell* claim because he has not proven, as a matter of law, that a municipal employee committed a constitutional violation. (Doc. 73) at 17. "It is well established … that a municipality cannot be held liable under section 1983 for the acts of an employee if … the municipal employee committed no constitutional violation." *Myers*, 151 F.3d at 1316; *see, e.g.*, *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Webber v. Mefford*, 43 F.3d 1340, 1344-45 (10th Cir. 1994); *Watson v. City of Kansas City*, 857 F.2d 690, 697 (10th Cir. 1988). The City then

4

states that even if Plaintiff could establish that Defendants Fitzgerald and Powdrell committed a constitutional infraction, the *Monell* claim would still fail where Plaintiff cannot show that a municipal policy or custom was "the moving force" behind the alleged constitutional violation. *Id.* at 18. To succeed under *Monell*, Plaintiff must demonstrate both the existence of an improper policy and a causal link to the constitutional deprivation. *Id.* The City claims Plaintiff has proven neither.

In his Complaint, Plaintiff asserts that the City "is liable…for its own bad acts as well as for the acts of its employees and agents under the doctrine of *respondeat superior* and/or agency." (Doc. 1-2) at ¶ 6. Plaintiff claims the City failed to "adequately train and/or supervise its employees" or to maintain proper "policies, and/or practices." *Id.* at ¶ 12. Plaintiff alleges that the City's "policy and practice of inadequate training" and "culture of ignoring wrongful, unreasonable and/or excessive use of force by its [TSOs]…was a moving force in causing" Plaintiff's asserted claims and damages. *Id.* at ¶ 187.

According to Plaintiff, the City maintains

an official policy of a) permitting its [TSOs] to use excessive and unlawful force against citizens and b) permitting its [TSOs] to illegally arrest and detain people unlawfully or, in the alternative, maintains a *de facto* policy of ignoring such actions by Defendants Andy Fitzgerald and Akeem Powdrell and other City of Albuquerque [TSOs].

*Id.* at ¶ 183. Plaintiff further claims that the City's knowledge of the TSOs' actions can be "inferred by the obviousness of the facts" and that the TSOs' actions were not secret. *Id.* at ¶¶ 184-85. Plaintiff states that it would be impossible for Defendants Fitzgerald and Powdrell to have acted without the City's knowledge and permission. *Id.* at ¶ 186. Plaintiff argues that the City "was aware of a widespread practice" of unconstitutional acts by TSOs and that the City had a "policy and practice of failing to adequately monitor, supervise, discipline and otherwise

5

control" the TSOs. *Id.* at ¶¶ 188-89. Because the City was "aware of the substantial risk" of allowing the TSOs' unconstitutional actions and "chose not to take the appropriate steps to protect citizens," Plaintiff claims that the City was "deliberately indifferent as to the obvious consequences" of the TSOs' actions. *Id.* at ¶¶ 190-94.

It is well-settled that a municipality has no liability under Section 1983 on a *respondeat superior* theory. *Monell v. Dep't of Soc. Serv. Of City of N.Y.*, 436 U.S. 658, 691 (1978). Even if Defendants Fitzgerald and Powdrell did, in fact, commit a constitutional violation, the City cannot be held liable under Section 1983 solely because it employs tortfeasors. *Id.*; *see also Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403 (1997) (plaintiff seeking to impose liability on a municipality under Section 1983 must identify municipal "policy" or "custom" that caused injury); *Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (municipal policy or custom must be moving force behind employee's constitutional violation). To sue the City for the acts of the TSOs under Section 1983, Plaintiff must prove both that Defendants Fitzgerald and Powdrell committed a constitutional violation *and* that the City had a specific policy or custom that precipitated their specific behavior. *Myers*, 151 F.3d 1313 at 1316 (emphasis added). "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the moving force behind the injury alleged." *Comm'rs of Bryan Cty.*, 520 U.S. 397 at 404 (internal citation and quotation omitted) (emphasis in original).

A municipality may face constitutional liability for inadequate police training only in cases where the failure to train is the result of the municipality's "deliberate" or "conscious" choice. *Myers*, 151 F.3d 1313 at 1318 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)

(explaining for liability to attach to municipality, failure to train must amount to "deliberate indifference" to rights of persons with whom police come into contact)); *see also Houston v. Reich*, 932 F.2d 883, 888 (10th Cir. 1991) (finding municipality liable for "essentially a complete failure to train, or training is so reckless or grossly negligent that future misconduct is almost inevitable").

The Tenth Circuit utilizes a four-part test to determine whether a municipality is liable for inadequate training on use of force. *Myers*, 151 F.3d 1313 at 1318.

> [A] plaintiff must show (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city towards persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Id.* Even assuming *arguendo* that Plaintiff could prove the first element, that Defendants Fitzgerald and Powdrell committed a constitutional violation, Plaintiff has not produced sufficient evidence to satisfy any other part of the *Myers* test necessary to withstand a motion for summary judgment.

Viewing the factual record and drawing reasonable inferences most favorable to Plaintiff, there is nothing in the record to suggest that the use of force alleged in this case "arose under circumstances that constitute a usual and recurring situation" with which the TSOs dealt. Although Plaintiff alleges in his Complaint that TSOs were "routinely assaulting, battering, and otherwise mistreating metrocampers,"[3] there is nothing in the record, particularly the TSOs' job description, to support Plaintiff's assertion. (Doc. 1-2) at ¶ 21. A plaintiff's self-serving conclusory allegations, without specific supporting facts, lacks probative value. *Thomas v. Int'l*

---

[3] "Metrocamper" is a term used by Plaintiff to describe "homeless people and people suffering hardships."

7

*Bus. Machines*, 48 F.3d 478, 485 (10th Cir. 1995). Plaintiff admits to routinely interjecting himself into encounters between TSOs and "metrocampers" to record such interactions. (Doc. 1-2) at ¶ 22. However, there is no indication that the specific circumstances of this case and use of force on Plaintiff or other persons recording TSO actions were otherwise "usual and recurring." *Id.* Additionally, it would be unreasonable to permit Plaintiff to *create* "usual and recurring" events and then treat those events as sufficient to satisfy the second element of the Tenth Circuit's test.

Perhaps most significantly, Plaintiff has not identified *any* particular policy or custom, or described *any* specific conduct by the City that would give rise to municipal liability. *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403 (1997). Plaintiff offers no evidence to support his claim that the City failed to adequately train or supervise the TSOs. Plaintiff's allegations, absent any corroborating evidence, are insufficient to create a reasonable inference that the City's policy, or lack thereof, showed deliberate indifference toward the people with whom TSOs regularly came into contact.

Likewise, there is nothing in the record to suggest any causal link between the alleged constitutional violation and Plaintiff's claims of inadequate training or improper policies and practices. Absent corroborating evidence, Plaintiff's unsupported arguments are insufficient. *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 834 (10th Cir. 1986) ("Conclusory allegations, general denials, or mere argument of an opposing party's case cannot be utilized to avoid summary judgment."). Here, summary judgment in favor of the City on the *Monell* claim as a matter of law is appropriate because there is no genuine issue of material fact.

> 2. *Plaintiff's NMTCA Respondeat Superior Claims Against the City Based On The Actions Of Defendants Fitzgerald and Powdrell (Counts I, III, IV and V)*

Likewise, Plaintiff's NMTCA claims against the City fail as a matter of law. Because

"[a]n entity or agency can only act through its employees," the City only faces liability under the NMTCA if Defendants Fitzgerald and Powdrell are liable. *See Abalos v. Bernalillo Cty. Dist. Attorney's Office et al.*, 1987-NMCA-026, ¶ 18, 734 P.2d 794.

> An action against a particular entity under the [NMTCA] requires two things:
>
> (1) a negligent public employee who meets one of the waiver exceptions under Sections 41-4-5 to -12; and (2) an entity that has immediate supervisory responsibilities over the employee. If a public employee meets an exception to immunity, then the particular entity that supervises the employee can be named as a defendant in an action under the [NMTCA].

*Silva v. State*, 1987-NMSC-107, ¶ 15, 745 P.2d 380 (internal citation and quotation omitted). Defendants Fitzgerald and Powdrell are immune from suit under the NMTCA because they do not fit any statutory waiver. A governmental entity's immunity is waived only to the extent that it is liable under principles of *respondeat superior*. NMSA 1978, § 41-4-12 (Repl. Pamp. 1996); *see Silva*, 1987-NMSC-107, ¶ 15. Therefore, where Defendants Fitzgerald and Powdrell are immune from liability, the City is also immune from liability. *Id.*

The NMTCA provides the exclusive remedy for a state tort action brought against a governmental entity or public employee. NMSA 1978, § 41-4-17 (Repl. Pamp. 1996). The NMTCA preserves governmental immunity for governmental entities and public employees acting within the scope of their duties, unless immunity has been specifically waived. *Id.* at § 41-4-4. The NMTCA does not provide a general waiver of immunity for intentional torts with regard to public employees. *Id.* at § 41-4-1 *et seq*.

To succeed in his claims against Defendants under the NMTCA, Plaintiff must prove that immunity from tort liability has been waived pursuant to one of the enumerated classes of activity in Sections 41-4-5 through 41-4-12 of the NMTCA. One such enumerated class of activity pertains to law enforcement officers. *Id.* at § 41-4-12. The City denies that Defendants

9

Fitzgerald and Powdrell fit the definition of law enforcement officers under the NMTCA and case law, and argue that Plaintiff's claims, therefore, fail. (Doc. 73) at 7-8.

Plaintiff declined to file a timely response to the City's Motion for Summary Judgment, but raised issues of waiver in his Motion to Strike (Doc. 103) filed several months later.[4] Specifically, Plaintiff claims that immunity has been waived in this case based on Section 41-4-12 of the NMTCA which waives immunity for "law enforcement officers while acting within the scope of their duties." *Id.* at § 41-4-12. Plaintiff argues that Defendants Fitzgerald and Powdrell fit the statutory definition of law enforcement officers. (Doc. 103) at 10. As support for his position, Plaintiff alleges that Defendants Fitzgerald and Powdrell spend "the majority of their time working to maintain public order" on behalf of the City, carry weapons (although not guns), and are empowered to make citizen's arrests. (Doc. 103) at 9-10. According to Plaintiff, "a badge-wearing, City-employed, officer who regularly retains citizens and is *specifically* employed to maintain order is clearly a law enforcement officers for the purposes of the [NMTCA]." *Id.* at 11.

The NMTCA defines a law enforcement officer as

> a full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor.

---

[4] The Court's exercise of its decision to evaluate summary judgment on the merits despite procedural error here is in keeping with the overarching purpose of the Federal Rules of Civil Procedure that procedure should not predetermine the outcome on the merits whenever possible. FED. R. CIV. P. 1 ("[These rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). This opinion only addresses Plaintiff's arguments related to the issue of waiver of NMTCA liability. Plaintiff's other arguments about the City's standing to seek summary judgment and the possibility that Defendants Fitzgerald and Powdrell could litigate waiver again are addressed in a separate opinion specifically related to Plaintiff's Motion to Strike (Doc. 103).

*Id.* at § 41-4-3(D). The statutory waiver of immunity for "law enforcement officers" requires that the defendant be a law enforcement officer as the statute defines the phrase. *Lymon v. Aramark Corp.*, 728 F.Supp.2d 1222, 1255 (D.N.M. 2010) (finding plaintiff's claims outside scope of any applicable waiver). "'[A]kin' to a law enforcement officer is, as a matter of law, insufficient to waive sovereign immunity under § 41–4–12 NMSA 1978." *Johnson ex rel. Estate of Cano v. Holmes*, 377 F.Supp.2d 1069, 1083 (D.N.M. 2004) (rejecting plaintiff's argument that CYFD employees akin to law enforcement officers under the NMTCA).

New Mexico courts strictly construe this definition. *See e.g.; Leyba v. City of Santa Fe*, 198 F.Supp.3d 1254, 1259 (D.N.M. 2016) (holding emergency service dispatcher not law enforcement officer under NMTCA); *Tate v. Fish*, 347 F.Supp.2d 1049, 1060 (D.N.M. 2004) (holding animal control officer not law enforcement officer under NMTCA); *Montes v. Gallegos*, 812 F.Supp. 1165, 1172 (D.N.M. 1992) (holding mayor not law enforcement officer under NMTCA, notwithstanding statutory authority and obligation to exercise law enforcement functions); *Dunn v. McFeeley*, 1999-NMCA-084, ¶ 24, 984 P.2d 760 (holding OMI Medical Investigator and crime laboratory technician not law enforcement officers under NMTCA); *Coyazo v. State*, 1995-NMCA-056, 897 P.2d 234 (holding District Attorney and staff not law enforcement officers under NMTCA); *Callaway v. N.M. Dep't of Corrections*, 1994-NMCA-049, ¶ 12, 875 P.2d 393 (holding correctional officers at penitentiary not law enforcement officers under NMTCA, notwithstanding statutory power to make arrests); *Dunn v. State ex rel. Taxation and Revenue Dep't*, 1993-NMCA-059, ¶ 11, 859 P.2d 469 (holding Director of Motor Vehicle Division not law enforcement officer under NMTCA, notwithstanding statutory power to make arrests); *Vigil v. Martinez*, 1992-NMCA-033, ¶ 20, 832 P.2d 405 (holding probation and parole officers not law enforcement officers under NMTCA); *Anchondo v. Corrections Dep't*,

1983-NMSC-051, ¶ 13, 666 P.2d 1255 (holding Secretary of Corrections and Warden of state penitentiary not law enforcement officers NMTCA).

"The statutory requirement that the defendants be law enforcement officers does not focus on the defendants' specific acts at the time of their alleged negligence. Instead it simply requires that the defendants' principal duties, those duties to which they devote a majority of their time, be of a law enforcement nature." *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, ¶ 12, 916 P.2d 1313 (citing *Anchondo*, 1983-NMSC-051, ¶ 10); *see also Rayos v. State ex rel. N.M. Dep't of Corr. et al.*, 2014-NMCA-103, ¶ 8, 336 P.3d 428. New Mexico cases consistently illustrate that, "to fall within the 'maintaining public order' category, a public employee's principal duties must be duties traditionally performed by law enforcement officers that directly impact public order." *Leyba v. City of Santa Fe*, 198 F.Supp.3d 1254, 1259-60 (D.N.M. 2016) ("In interpreting the [NMTCA], [New Mexico's] appellate courts have repeatedly found that a connection to law enforcement activity, even being a member of the law enforcement team, is insufficient by itself to make one a law enforcement officer: the person's duties must directly impact public order."). The courts agree that in cases where a defendant's "primary job duties do not encompass the arrest and detention of accused persons, [New Mexico] courts have generally exempted the positions from inclusion in the law enforcement officer exception" of the NMTCA. *Limacher v. Spivey*, 2008-NMCA-163, ¶ 23, 198 P.3d 370 (granting summary judgment to water resource specialist on this issue and reiterating "that for an employee to fall within the exception for maintaining public order, that person's duties must be traditional law enforcement duties that directly impact public order").

Plaintiff repeatedly points out that Defendants Fitzgerald and Powdrell wore uniforms and carried badges. (Doc. 103) at 9-11. However, these facts are irrelevant as Plaintiff concedes

12

that "[t]here is no requirement in the [NMTCA's] definition [of law enforcement] that the public employee be a 'sworn' officer, or even that a law enforcement officer wear a uniform, or a carry a badge." *Id.* at 10. Plaintiff also claims that Defendants Fitzgerald and Powdrell fit the NMTCA's definition of law enforcement because they were "specifically employed to maintain order." *Id.* at 11. However, Plaintiff does not offer any evidence or facts to support this allegation. After a careful review of the record, and for the reasons explained below, this Court concludes that Defendants Fitzgerald and Powdrell are not law enforcement officers within the meaning of the NMTCA.

The Court considers the job description for TSOs to determine whether Defendants Fitzgerald and Powdrell's primary duties are traditional law enforcement duties sufficient to satisfy the NMTCA's definition. *See Rayos*, 2014-NMCA-103, ¶ 8 (stating courts may consider departmental job descriptions, affidavits, statutes or regulations – among other items – in determining duties of public employees). The inquiry is whether the principal duties of TSOs are of a law enforcement nature, i.e. holding people accused of a criminal offense in custody, maintaining public order or making arrests for crimes. § 41-4-3(D). Defendants Fitzgerald's and Powdrell's specific actions at the time of incident are not the focus, but rather the duties to which they devoted the majority of their time. *Weinstein*, 1996-NMSC-021, ¶ 12.

The City's job summary for TSOs states that they "[p]rovide twenty four hour security services for assigned City facilities and property, including vehicles and equipment; protect facilities from unlawful intrusion and criminal acts and ensure public safety." (Doc. 49-2) at 4. TSOs do not carry guns, they have no authority to arrest or provide medical attention, and they are not licensed by the State of New Mexico as security officers. (Doc. 49-2) at ¶¶ 5-9. They are not involved with the pre-indictment and post-judgment phases of the criminal process and they

do not handle the custody of criminal subjects, arrestees or convicted criminals. *Id.* at ¶¶ 10-11. These undisputed facts support the City's contention that TSOs are not law enforcement officers as defined by the NMTCA.

Plaintiff, however, urges the Court to consider *Cobos v. Dona Ana Cty. Housing Auth.*, a case involving the building waiver exception under the NMTCA where the New Mexico Supreme Court focused on the scope of duties, not the property ownership, to determine if the waiver applied. *Id.* at 9, citing 1998-NMSC-049, ¶ 6, 970 P.2d 1143 (applying NMTCA's building waiver based on public employees' duties rather than legal status of real property's title). This case is immaterial because courts already consider defendants' principle duties to determine whether they meet the definition of law enforcement under the NMTCA waiver and the large body of related case law.

Plaintiff next cites *Methola v. Eddy Cty.*, 1980-NMSC-145, 622 P.2d 234, for the proposition that TSOs should be considered law enforcement officers because the court in that case determined that jailers met the law enforcement officer definition for waiver under the NMTCA. (Doc. 103) at 11. *Methola* does not apply here; *Methola* involved sheriffs, deputies and county jailers, and the court in that case concluded that their principal duties included *both* maintaining public order *and* holding accused persons in custody. *Methola*, 1980-NMSC-145, ¶ 17 (emphasis added). By contrast, Defendants Fitzgerald's and Powdrell's principal duties do not include holding accused persons. (Doc. 49-2) at 4.

Likewise, Plaintiff refers to *Abalos v. Bernalillo Cty. Dist. Atty's Office*, 1987-NMCA-026, ¶29, 734 P.2d 794, where the court held that a Detention Center director's duties were "principally to hold in custody persons accused of a criminal office" and, therefore, fell within the law enforcement definition of the NMTCA. (Doc. 103) at 11. Again, Defendants Fitzgerald

14

and Powdrell's principal duties do not include holding persons accused of a crime. (Doc. 49-2) at 4.

Even if the Court determined that Defendants Fitzgerald and Powdrell were holding a suspect in custody at the time of Plaintiff's alleged constitutional violation, which it declines to do, the test does not focus on the defendants' specific acts at the time of their alleged tortious actions. *Weinstein*, 1996-NMSC-021, ¶ 12. Rather, the critical inquiry involves the defendants' principal duties to which they devote a majority of their time. *Id.*

As with Plaintiff's argument regarding jailers, New Mexico courts here held that probation and parole officers do not qualify as law enforcement officers, rejecting arguments that that they have overlapping training, share policies and procedures that deal extensively with arrest powers, self-identify as peace officers and are authorized to carry firearms in the field. *Rayos*, 2014-NMCA-103, ¶ 20; *Vigil v. Martinez*, 1992-NMCA-033, 832 P.2d 405 (probation and parole officers not "law enforcement officers" for the purposes of the NMTCA); *id.* at ¶ 21.

Plaintiff also states that the argument that school security officers might be considered law enforcement officers under the NMTCA was sufficient to survive summary judgment and so should his similar argument regarding TSOs. (Doc. 103) at 12 (citing *Butler ex rel. Butler v. Rio Rancho Pub. Sch. Bd. of Educ.*, 245 F.Supp.2d 1188 (D.N.M. 2002), *rev'd on other grounds*, 341 F.3d 1197 (10th Cir. 2003)). However, the *Butler* court stated it could not make a determination whether the defendants were law enforcement officers based on the factual allegations before the court. *Butler*, 245 F.Supp.2d at 1202. By contrast, there are sufficient facts here to establish that Defendants Fitzgerald and Powdrell do not meet the definition of law enforcement officers as a matter of law.

Finally, Plaintiff alleges that if an animal control officer could be a law enforcement

officer under the NMTCA, TSOs should also fit the definition. (Doc. 103) at 12 (citing *Baptiste v. City of Las Cruces*, 1993-NMCA-017, 848 P.2d 1105). Again, the *Baptiste* court could not make a determination whether the defendant met the law enforcement waiver under the NMTCA based on a lack of facts in the record. *Baptiste*, 1993-NMCA-017, ¶ 10. That is not true in the present case. Moreover, animal control officers have been held to not fit within the meaning of law enforcement officer under the NMTCA where he did not maintain public order for the majority of his time. *Tate*, 347 F.Supp.2d at 1060.

Aside from Plaintiff's unsupported factual assertions, there is nothing in the record to establish that Defendants Fitzgerald and Powdrell's "principal duties" match those of a law enforcement officer as defined by the NMTCA and extensive case law. In light of existing authority on this issue, it is apparent that New Mexico courts have intentionally maintained a narrow and precise definition of law enforcement officer under the NMTCA. After examining the factual record and making all reasonable inferences in favor of Plaintiff, a reasonable jury could not find that Defendants Fitzgerald and Powdrell fit the law enforcement exception.

IV. Conclusion

In light of the forgoing, Defendants City of Albuquerque, Galvan and Markwick's Motion for Summary Judgment is granted, in part, and denied, in part. As it relates to the claims against dismissed parties Defendants Galvan and Markwick, Counts II, VI and IX have been dismissed in their entirety. The Motion for Summary Judgment is moot as to those claims, therefore, and is denied. As it relates to the claims against the City under the NMTCA in Counts I, III, IV and V, and the *Monell* claim in Count X, the motion is granted in favor of the City.

IT IS ORDERED that

1. Defendants City of Albuquerque, Galvan and Markwick's Motion for Summary

Judgment (Doc. 73) is moot and, therefore, denied as to Counts II, VI and IX. These claims, as well as Defendants Galvan and Markwick, have been dismissed in their entirety;

2. The Motion for Summary Judgment is granted in favor of the City as to Counts I and X;

3. The Motion for Summary Judgment is also granted in favor of the City as to Counts III, IV and V;

4. Summary judgment will be entered in favor of the City on Counts I, III, IV, V and X of the Complaint;

5. Counts I and X are dismissed in their entirety;

6. Counts III, IV and V are dismissed as to Defendant City of Albuquerque; and

7. Defendant City of Albuquerque is dismissed entirely from this matter and its name will be stricken from the caption of this case.

_____
UNITED STATES DISTRICT JUDGE