IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALFONSO HERNANDEZ,

       Plaintiff,

vs.                                               Civ. No. 14-964 KG/SCY

CITY OF ALBUQUERQUE, et al.,

       Defendants.

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT AKEEM
POWDRELL'S MOTION FOR SUMMARY JUDGMENT

       This matter is before the Court on Defendant Powdrell's Motion for Summary Judgment
and Memorandum in Support Thereof, filed June 19, 2015.  (Doc. 49).  Plaintiff Alfonso
Hernandez filed his response on July 6, 2015, and Defendant Akeem Powdrell filed a reply on
July 20, 2015.  (Docs. 52 and 54).  After considering the submissions and arguments of the
parties, the record, and the applicable law, the Court grants Defendant Powdrell's Motion for
Summary Judgment.

  I.   Procedural History

       This litigation is the result of an altercation on August 30, 2012, involving Plaintiff and
Albuquerque Transit Department transit security officers (TSOs) Andy Fitzgerald and Akeem
Powdrell.  (Doc. 1-2).  Defendant Fitzgerald was detaining a homeless man (later identified as
Manuel Bustamante) while Defendant Powdrell left to summon the police.  (Doc. 49) at UMF J-
K.  Plaintiff, who was in the immediate area, began recording the detention with an audio-
recording device in his pocket and the video-recording function of his cell phone as he
approached Defendant Fitzgerald and Mr. Bustamante.  (Doc. 1-2) at ¶¶ 26-27, 29.  Plaintiff
claims that Defendant Fitzgerald became enraged because Plaintiff was filming him and

attacked Plaintiff. *Id.* at ¶¶ 40-41, 43-44, 63. Defendant Powdrell returned to the scene, finding Defendant Fitzgerald and Plaintiff "fighting." (Doc. 49) at UMF M. Plaintiff claims that both Defendants Fitzgerald and Powdrell assaulted, battered, and falsely arrested him when they twisted Plaintiff's arm behind his back and handcuffed him. (Doc. 1-2) at ¶¶ 50, 57-58.

On August 14, 2014, Plaintiff filed his Complaint for Violations of the Tort Claims Act and Deprivation of Civil Rights (Complaint) in the Second Judicial District Court, County of Bernalillo, New Mexico, alleging ten counts. (Doc. 1-2). In Count I, Plaintiff asserts claims against Defendant City of Albuquerque (City) and Defendants Fitzgerald and Powdrell for negligent hiring, training, and supervision resulting in violations of the New Mexico Tort Claims Act (NMTCA), NMSA 1978, § 41-4-1 *et seq.* (Repl. Pamp. 1996). *Id.* at 13-14. Plaintiff raises the same claims against the City and Defendants Albuquerque Police Officers Galvan and Markwick in Count II. *Id.* at 14-16. In Counts III, IV, and V, Plaintiff makes additional claims against the City and Defendants Fitzgerald and Powdrell under the NMTCA for assault, battery, and false arrest/false imprisonment, respectively. *Id.* at 16-18. In Count VI, Plaintiff raises additional claims against the City and Defendants Galvan and Markwick for false arrest/false imprisonment under the NMTCA. *Id.* at 18-19. In Count VII, Plaintiff alleges 42 U.S.C. § 1983 Fourth Amendment claims against Defendants Fitzgerald and Powdrell for excessive force. *Id.* at 20-21. In Count VIII, Plaintiff alleges 42 U.S.C. § 1983 Fourth and/or Fourteenth Amendment claims against Defendants Fitzgerald and Powdrell for false arrest/imprisonment. *Id.* at 22-23. Plaintiff raises the same Section 1983 claims against the City and Defendants Albuquerque Police Officers Galvan and Markwick in Count IX. *Id.* at 23-24. In Count X, Plaintiff asserts Section 1983 *Monell* claims of municipal liability against the

City.  *Id.* at 24-26.  Defendants removed Plaintiff's case to this Court on October 24, 2014.
(Doc. 1).

The City filed a Motion for Summary Judgment on October 21, 2015, seeking to dismiss
the NMTCA claims brought against the City in Counts I, II, III, IV, V, and VI, and the *Monell*
claims in Count X.  (Doc. 73).  Plaintiff did not file any response to the City's Motion for
Summary Judgment, but on November 17, 2015, he filed a notice voluntarily dismissing
Defendants Galvan and Markwick and the claims against them in their entirety (Counts II, VI,
and IX).  (Doc. 92) at 1-2.  Plaintiff also dismissed the *Monell* claim against the City involving
Defendants Galvan and Markwick (Count X).  *Id.* at 2.  The Court then granted the City's
Motion for Summary Judgment in favor of the City, dismissing Counts I, III, IV, V and X
against the City.  As a result of Plaintiff's notice of dismissal and the City's Motion for
Summary Judgment, Defendants Galvan and Markwick and the City are no longer parties to this
litigation.

II.    Standard of Review

Summary judgment is appropriate if there is no genuine dispute as to a material fact and
the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "When applying
this standard, [the Court] view[s] the evidence and draw[s] reasonable inferences therefrom in
the light most favorable to the nonmoving party."  *Scull v. New Mexico*, 236 F.3d 588, 595 (10th
Cir. 2000) (internal quotation marks omitted).  The movant bears the initial burden of showing
the absence of a genuine issue of material fact, then the burden shifts to the non-movant to
provide evidence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325
(1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  A fact is
"material" if, under the governing law, it could have an effect on the outcome of the lawsuit, and

"genuine" if a reasonable jury could return a verdict for the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999); *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted).  A party cannot avoid summary judgment simply by resting upon the mere allegations or denials of his pleadings.  *Bacchus Indus., Inc.*, 939 F.2d at 891.

III.  Material Facts and Reasonable Inferences Viewed in the Light Most Favorable to Plaintiff[1]

Defendant Powdrell is a public employee who, at all relevant times, was acting within the course and scope of his duties as a TSO.  (Doc. 49) at UMF A; (Doc. 52) at ¶ 1.  Defendant Powdrell did not carry a gun but the City issued him mace, a baton, and handcuffs.  (Doc. 49) at UMF D; (Doc. 52) at ¶ 4.  The parties disagree about whether Defendant Powdrell was "empowered to perform traditional law enforcement functions."  (Doc. 49) at UMF C; (Doc. 52) at ¶ 3.  However, they agree that any authority TSOs had to make arrests was that of an ordinary citizen to make a "citizen's arrest."  (Doc. 54) at 10; (Doc. 52) at ¶¶ 3, 5-7.

Defendant Powdrell was working on the evening of August 30, 2012, when he observed a man making obscene gestures and drinking.  (Doc. 49) at UMF I; (Doc. 52) at ¶ 8.  Defendant Powdrell approached the man to direct him to stop being disruptive then departed the scene to use Transit Dispatch to summon the police to issue a citation.  (Doc. 49) at UMF I-K; (Doc. 52) at ¶¶ 8-10.  When Defendant Powdrell returned to the scene, he discovered Defendant Fitzgerald "engaged in a confrontation with Plaintiff" and "fighting."  (Doc. 49) at UMF K; (Doc. 52) at ¶ 10.  Defendant Powdrell assisted Defendant Fitzgerald in handcuffing Plaintiff, and during the

---

[1] Unless otherwise noted, the summary of material facts is undisputed and reflects only the facts the Court viewed as material to the claims raised in the Complaint.  The Court has not included or discussed facts that are not pertinent to the claims before the Court (e.g., facts related to Plaintiff's allegation that Defendant Powdrell seized and searched his wallet).

process, one or both of the TSOs twisted Plaintiff's arm. (Doc. 49) at UMF M-N, Q; (Doc. 52) at ¶ 12 and 4-6. Defendant Powdrell claims Plaintiff was handcuffed for his safety and the safety of others, but Plaintiff disputes this claim. (Doc. 49) at UMF M; (Doc. 52) at ¶ 12. During the encounter, Defendant Powdrell also held a can of mace in front of Plaintiff's face but did not use it. (Doc. 49) at UMF N; (Doc. 52) at ¶ 13. Plaintiff does not contest that Defendant Powdrell was unaware of why Defendant Fitzgerald was attempting to handcuff Plaintiff. (Doc. 49) at UMF M; (Doc. 52) at ¶ 12.

IV.    Discussion

        *1.  Plaintiff's Exhibit A*

        Plaintiff argues that Defendants Fitzgerald and Powdrell were "law enforcement officers…acting within the scope of their duties" under both the NMTCA and for the purposes of his Section 1983 claims. (Doc. 52) at 8-11. Plaintiff alleges that, despite Defendant Powdrell's declaration that TSOs do not have the power to arrest, the record shows that the TSOs received training materials about how and when they could arrest someone and that they were issued steel handcuffs and mace to assist with restraining people. (Doc. 52) at 21-22. In support of his allegation that TSOs were "trained" how and when they could make arrests, Plaintiff provided an Interoffice Memorandum, Exhibit A, to his response to Defendant Powdrell's Motion for Summary Judgment. (Doc. 52-1) at 1-7. Nonetheless, the record is clear, and the parties agree, that *if* Defendant Powdrell had any "authority" to make an arrest, it was only that of an ordinary citizen. (Doc. 49-2); (Doc. 52) at ¶¶ 3, 5-7; (Doc. 52-1); (Doc. 54) at 10. In light of the record and this concession, Exhibit A is not relevant to the issue of the TSOs' authority to act as law

enforcement officers.[2]  Even viewed in the light most favorable to Plaintiff, mere authority to

make a "citizen's arrest" does not make one a law enforcement officer under the NMTCA and,

thus, does not support Plaintiff's contention that Defendant Powdrell is liable under the

NMTCA.

### 2.  *NMTCA Claims Against Defendant Powdrell (Counts III, IV, and V)*

The Court previously analyzed Plaintiff's NMTCA claims in response to the City's

Motion for Summary Judgment (Doc. 73).  Because "[a]n entity or agency can only act through

its employees," the City only faced liability under the NMTCA if Defendants Fitzgerald and

Powdrell were found individually liable.  *See Abalos v. Bernalillo Cty. Dist. Attorney's Office et

al.*, 1987-NMCA-026, ¶ 18, 734 P.2d 794.  In other words, a governmental entity's immunity is

waived only to the extent that it is liable under principles of *respondeat superior*.  NMSA 1978,

§ 41-4-12 (Repl. Pamp. 1996); *see Silva v. State of New Mexico*, 1987-NMSC-107, ¶ 15, 745

P.2d 380.  Therefore, to determine the City's liability under the NMTCA, the Court had to first

determine if Defendants Fitzgerald and Powdrell were individually liable.  The Court granted the

City's Motion for Summary Judgment on Plaintiff's NMTCA claims, concluding that the City

could not be held liable because Defendants Fitzgerald and Powdrell did not fit any statutory

waiver of immunity, including the statutory waiver for law enforcement officers.  *See* (Doc. 120)

at 11.  Thus, the Court held that Defendants Fitzgerald and Powdrell were immune from suit

under the NMTCA, as was the City.  *Id.*  For the same reasons, the Court determines that

Defendant Powdrell is now individually entitled to summary judgment as a matter of law with

respect to the NMTCA claims and *sua sponte* makes the same determination as to Defendant

---

[2] Exhibit A was also unsworn and uncertified.  (Doc. 52-1) at 1-7.  Accordingly, Defendant
Powdrell filed a Motion to Strike Plaintiff's Exhibit A.  (Doc. 55).  The Court denied the Motion
to Strike.  (Doc. 122).  As described herein, Exhibit A is irrelevant to the Court's analysis.

Fitzgerald.[3]  *Id.*

### 3. Section 1983 Claims Against Defendant Powdrell (Counts VII and VIII)

Defendant Powdrell argues that he is entitled to qualified immunity for the Section 1983 claims.  (Doc. 49).  Plaintiff, on the other hand, argues that Defendant Powdrell "cannot be both a law enforcement officer [under the doctrine of qualified immunity] and not a law enforcement officer [under the NMTCA] at the same time."  (Doc. 52) at 8.  Plaintiff misapprehends the distinction between a law enforcement officer under the statutory definition of the NMTCA and a governmental employee acting under the color of state law entitled to the defense of qualified immunity for Section 1983 claims.  While Defendant Powdrell does not fit the NMTCA's narrow definition of a law enforcement officer, he is still a governmental employee acting under the color of state law entitled to the defense of qualified immunity.  The Court agrees with Plaintiff: Defendant Powdrell is "entitled to rely upon qualified immunity decisions [concerning] actions taken by law enforcement personnel."  (Doc. 52) at 12.

### a. Qualified Immunity Standard

---

[3] Defendant Fitzgerald has not moved for summary judgment for the NMTCA claims asserted against him individually.  However, the Court's NMTCA analysis is applicable to both TSOs.  Accordingly, the Court raises the NMTCA issue *sua sponte* on Defendant Fitgerald's behalf.  "After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant;…or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."  FED. R. CIV. P. 56(f).  Indeed, a district court may grant summary judgment *sua sponte* "if the losing party was on notice that [he] had to come forward with all of [his] evidence," and the Tenth Circuit "will still affirm a grant of summary judgment if the losing party suffered no prejudice from the lack of notice."  *Johnson v. Weld Cty.*, 594 F.3d 1202, 1214 (10th Cir. 2010) (internal quotation marks and bracket omitted) (affirming district court's grant of summary judgment where plaintiff "relie[d] on exactly the same evidence and arguments she made before the district court, and identifie[d] no way in which she was prejudiced by the district court's chosen procedural course").  Here, the issue of whether TSO's fit the law enforcement waiver under the NMTCA is purely legal, the record has been fully developed, and no material facts remain in dispute.  Moreover, Plaintiff had the opportunity to offer his evidence in his responses to both the City and Defendant Powdrell's Motions for Summary Judgment and he suffers no prejudice by the Court's decision.

"Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability[.]" *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004) (citation omitted). Qualified immunity shields government officials from liability when they reasonably perform their duties. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004). Qualified immunity is intended to provide "protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

When a defendant raises qualified immunity as a defense, "a plaintiff must properly allege a deprivation of a constitutional right and must further show that the constitutional right was clearly established at the time of the violation." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). Unlike other defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "This is a heavy burden." *Carabajal v. City of Cheyenne, Wyoming*, 847 F.3d 1203, 1208 (10th Cir. 2017).

The Court is required to grant qualified immunity at the summary judgment stage "unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Estate of Booker*, 745 F.3d at 411. The Court has discretion to decide which of the two prongs of the qualified immunity test to address first. *Id.* at 412. When determining whether a plaintiff has met his burden, the court construes the facts in the light most favorable to the plaintiff as the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

A "right" is clearly established only if there is "a Supreme Court or Tenth Circuit

decision on point, or the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000) (internal quotation marks omitted). The Tenth Circuit Court of Appeals has recently elucidated the standard:

> "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." "The dispositive question is whether the violative nature of the particular conduct is clearly established." In the Fourth Amendment context, "the result depends very much on the facts of each case," and the precedents must "squarely govern" the present case.

*Garcia v. Escalante*, 2017 WL 443610, at *4 (10th Cir.) (quoting *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (citations omitted)); *see also Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015) ("The law is also clearly established if the conduct is so obviously improper that any reasonable officer would know it was illegal.").

To defeat Defendant Powdrell's assertion of qualified immunity, Plaintiff must demonstrate that Defendant Powdrell's actions violated a constitutional right that was clearly established at the time of the alleged misconduct, in this case, Plaintiff's Fourth Amendment right to be free from excessive force and Fourth and Fourteenth Amendment rights to be free from unreasonable seizure, i.e., unlawful arrest. *Pearson*, 555 U.S. at 232. Plaintiff does not claim that the use of handcuffs alone constituted excessive force, but rather that a combination of events, including his alleged attack and beating, resulted in excessive force. (Doc. 52) at 12. Plaintiff further alleges that his "arrest" was unsupported by probable cause. *Id.* at 8. Plaintiff claims that Defendant Powdrell "assisted in the unlawful arrest…without so much as asking his colleague 'what happened?'" *Id.* at 12. Plaintiff argues that since Defendant Powdrell did not

have a legal right to arrest him, *any* use of force was improper, but even if the arrest was lawful, the force used was objectively unreasonable. *Id.* at 18 (emphasis added).

### b. *Fourth Amendment Excessive Force Violation*

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Claims that state actors used excessive force in the course of a seizure are analyzed under the Fourth Amendment's reasonableness standard. *Id.* A court must judge the reasonableness of a particular use of force from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight… includ[ing] an examination of the information possessed by the [officers]." *Weigel v. Broad*, 544 F.3d 1143, 1152 (10th Cir. 2008) (citations and internal quotation marks omitted). The United States Supreme Court has maintained that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. When evaluating a claim of excessive force, courts must keep in mind that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers… violates the Fourth Amendment." *Id.* at 396; *see also Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (noting "even if an officer reasonably, but mistakenly, believed that a suspect was likely to fight back…officer would be justified in using more force than in fact was needed").

The United States Supreme Court considers the following factors when evaluating reasonableness in an excessive force claim: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is

actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. In this case, the Court considers the events from Defendant Powdrell's perspective, and particularly, the information available to him at the time of the incident. *Weigel*, 544 F.3d at 1152. To evaluate the reasonableness of Defendant Powdrell's use of force, based on the *Graham* factors, the Court first considers the severity of the crime at issue. *Graham*, 490 U.S. at 396.

Plaintiff contends that he did not commit any crime. Nevertheless, when Defendant Powdrell returned to the scene, he saw Defendant Fitzgerald "engaged in a confrontation with Plaintiff." (Doc. 49) at UMF K; (Doc. 52) at ¶ 10. Defendant Powdrell described the two men as "fighting." (Doc. 49) at UMF M; (Doc. 52) at ¶ 12. Plaintiff does not dispute that Defendant Powdrell was unaware of why Defendant Fitzgerald was attempting to handcuff Plaintiff. (Doc. 49) at UMF M; (Doc. 52) at ¶ 12. Defendant Powdrell assisted Defendant Fitzgerald in handcuffing Plaintiff, and Plaintiff alleges that during the process, the TSOs twisted his arm. (Doc. 49) at UMF M-N, Q; (Doc. 52) at ¶ 12 and 4-6. Defendant Powdrell claims Plaintiff was handcuffed for his safety and the safety of others, but Plaintiff disputes this claim. (Doc. 49) at UMF M; (Doc. 52) at ¶ 12. During the encounter, Defendant Powdrell also held a can of mace in front of Plaintiff's face but did not use it. (Doc. 49) at UMF N; (Doc. 52) at ¶ 13. Plaintiff alleges Defendant Powdrell's actions, handcuffing him, twisting his arm, and holding a can of mace up to his face, constituted excessive force. (Doc. 49) at UMF M-N, Q; (Doc. 52) at ¶ 12-13 and 4-6. Plaintiff further argues that Defendant Powdrell was required to "conduct[ ] an investigation into whether Plaintiff had committed any crime" before assisting Defendant Fitzgerald in any detention or arrest. (Doc. 52) at 13.

Viewing the evidence in the light most favorable to Plaintiff, and accepting for the purposes of this analysis that Plaintiff committed no crime before being "attacked" by Defendant

Fitzgerald, Defendant Powdrell's decision to intervene in the scuffle was reasonable, even without knowing anything about how the altercation began. It is, in fact, unreasonable to expect Defendant Powdrell to refrain from assisting a fellow TSO engaged in a physical altercation with an unknown person. Indeed, this would be exactly the kind of "split-second judgment[ ]—in circumstances that are tense, uncertain, and rapidly evolving" that courts are cautioned against second-guessing with "the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396-97; *Weigel*, 544 F.3d at 1152.

Furthermore, the undisputed record, including audio and video recordings, reveals that when Defendant Powdrell intervened, Plaintiff was shouting loudly and arguing. Moreover, when Defendant Powdrell attempted to break up the altercation between Defendant Fitzgerald and Plaintiff, Plaintiff was uncooperative and physically resisting the TSOs. Thus, without knowing more and when presented with the situation, it was also reasonable for Defendant Powdrell to determine that Plaintiff posed a threat to the safety of the TSOs and those in the area, and that Plaintiff was actively resisting Defendant Fitzgerald. (Doc. 49) at UMF M; (Doc. 52) at ¶ 12. Defendant Powdrell was entitled to use what reasonable force was necessary to regain order at the scene, which he did.

Any culpability Defendant Fitzgerald would have under such circumstances is also not imputed to Defendant Powdrell. Both the Tenth Circuit and the United States Supreme Court have emphasized that an officer can only be held liable for his or her own improper conduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (stating because vicarious liability does not apply to Section 1983 claims, plaintiff must plead that each government official defendant, through official's own individual actions, violated Constitution); *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (explaining, in context of supervisory liability, individual liability under

Section 1983 must be based on personal involvement in constitutional violation); *Tanner v. San Juan Cty. Sheriff's Office*, 864 F.Supp.2d 1090, 1121 (D.N.M. 2012) (following principles discussed by Sixth and Eleventh Circuits regarding officer's failure to intervene where it "seems unfair to hold a secondary officer liable for a primary officer's conduct in a circumstance where the secondary officer had no information available to him or her suggesting that the primary officer acted improperly"). "[A] police officer who acts in reliance on what proves to be the flawed conclusions of a fellow police officer may nonetheless be entitled to qualified immunity as long as the officer's reliance was objectively reasonable." *Stearns v. Clarkson*, 615 F.3d 1278, 1286 (10th Cir. 2010) (internal citation and quotation omitted).

Here, even if a reasonable jury could find that Defendant Fitzgerald wrongfully tried to detain Plaintiff, based on the information available to Defendant Powdrell at the time, he acted responsibly and objectively reasonable when he broke up the fight and assisted Defendant Fitzgerald in handcuffing Plaintiff. Based on the weighing of the *Graham* factors, the Court cannot conclude Defendant Powdrell's use of force was "clearly unjustified." *Morris v. Noe*, 672 F.3d 1185, 1197-98 (10th Cir. 2012). Absent any constitutional violation, Defendant Powdrell is entitled to qualified immunity for Plaintiff's excessive force claim. *Estate of Booker*, 745 F.3d at 411. Summary judgment will, therefore, be granted as to that claim.

### c. Fourth Amendment False Arrest and/or False Imprisonment Violation

The Fourth Amendment prohibits unreasonable seizures. *See Koch v. City of Del City*, 660 F.3d 1228, 1238-39 (10th Cir. 2011). "Generally, a warrantless arrest is constitutionally valid when an officer has probable cause to believe that the arrestee committed a crime." *Stearns*, 615 F.3d at 1282 (internal citation omitted) ("[L]aw enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.").

"If an officer has probable cause to believe that an individual has committed even a very minor offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "The existence of probable cause is gauged based on the facts known to [the officer] when he made the arrest." *Simpson v. Kansas*, 593 Fed. Appx. 790, 793-94 (10th Cir. 2014). To evaluate whether a defendant violated clearly established law in the context of a qualified immunity defense on an unlawful arrest claim, the court asks "whether there was 'arguable probable cause'" for the challenged conduct. *Kaufman*, 697 F.3d 1300. Arguable probable cause is another way of saying that the officer's conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause to arrest or detain the plaintiff exists. *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007).

As previously described, when Defendant Powdrell returned to the scene, he saw Defendant Fitzgerald and Plaintiff "fighting." (Doc. 49) at UMF M; (Doc. 52) at ¶ 12. Although unaware of the reasons Defendant Fitzgerald was attempting to handcuff Plaintiff, Defendant Powdrell assisted Defendant Fitzgerald. (Doc. 49) at UMF M; (Doc. 52) at ¶ 12. Based on the ongoing physical and verbal altercation, Defendant Powdrell could have determined that Plaintiff posed a threat to Defendant Fitzgerald or others or that Plaintiff was resisting Defendant Fitzgerald's presumably lawful attempt to detain him. Under these circumstances, regardless of the legality of Defendant Fitzgerald's actions, Defendant Powdrell could have reasonably, even if mistakenly, believed probable cause existed for Plaintiff's arrest.

Because Plaintiff is unable to demonstrate any violation of a Fourth Amendment constitutional right caused by Defendant Powdrell's seizure of Plaintiff, he cannot overcome Defendant Powdrell's assertion of qualified immunity for the Fourth Amendment false arrest and/or false imprisonment claim. *Estate of Booker*, 745 F.3d at 411; *see also Medina v. Cram*,

252 F.3d 1124, 1128 (10th Cir. 2001) (overcoming assertion of qualified immunity requires plaintiff to demonstrate *both* violation of constitutional right and that right was clearly established). "If the plaintiff fails to satisfy *either part* of the two-part inquiry, the court *must* grant the defendant qualified immunity." *Medina*, 252 F.3d at 1128 (emphasis added). Defendant Powdrell is, therefore, entitled to summary judgment on the Fourth Amendment false arrest and/or false imprisonment claim.

### d. Clearly Established Law: Fourth Amendment Claims

Even assuming *arguendo* that Defendant Powdrell violated Plaintiff's Fourth Amendment rights to be free from excessive force or unreasonable seizure, Plaintiff must satisfy the "clearly established law" prong of the qualified immunity analysis. It is the Plaintiff's burden under that prong to direct the Court to any United States Supreme Court or Tenth Circuit decision that "squarely governs" the prohibited conduct at issue. *Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015). Here, that would require Plaintiff to identify a case where a TSO (or other non-law enforcement state actor) acting under similar circumstances as Defendant Powdrell was held to have violated the Fourth Amendment. *Garcia*, 2017 WL 443610, at *6 (10th Cir.); *see also Carbajal v. City of Cheyenne, Wyo.*, 847 F.3d 1203, 1211 (10th Cir. 2017) (affirming grant of summary judgment to officers where case law relied on by plaintiff was "too factually distinct to speak clearly" to defendant's situation). Plaintiff has failed to do so, thereby providing the Court another reason to grant qualified immunity to Defendant Powdrell as to the Section 1983 Fourth Amendment claims.

### e. Fourteenth Amendment False Arrest and/or False Imprisonment Violation

The Court notes that Plaintiff's Complaint describes the alleged false arrest and/or false imprisonment as in violation of his "Fourth Amendment *and/or* Fourteenth Amendment rights."

(Doc. 1-2) at ¶ 170 (emphasis added). The Tenth Circuit is particularly sensitive to pleading requirements in Section 1983 cases when government actor defendants are sued in their individual capacities. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008). In this case, Plaintiff did not provide any facts to support a Fourteenth Amendment due process claim in the Complaint and neither Plaintiff nor Defendants made any arguments related to a Fourteenth Amendment false arrest and/or false imprisonment claim in any of their briefing. A party cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *Am. Mech. Sol., L.L.C. v. Northland Process Piping, Inc.*, 184 F.Supp.3d 1030, 1054 (citing *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006)). Furthermore, to the extent that Plaintiff alleges a Fourteenth Amendment injury simply because the Fourth Amendment is applicable to the states through the Fourteenth Amendment, neither claim survives the assertion of qualified immunity. *See Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1202 (10th Cir. 2006).

Additionally, a plaintiff who has been unconstitutionally imprisoned has at least two potential constitutional claims. *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). "The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause." *Pierce v. Gilchrist*, 359 F.3d 1279, 1285-86 (10th Cir. 2004). Here, the facts do not give rise to any due process violation occurring post-arrest. Moreover, as in this case, when an adequate state remedy exists, such as a state tort claim (i.e. false arrest and/or false imprisonment under the NMTCA), the requirements of due process are satisfied. *See Myers v. Koopman*, 738 F.3d 1190, 1192 (10th Cir. 2013).

For the foregoing reasons, the Court concludes that the Fourteenth Amendment unlawful seizure claims brought against both Plaintiffs Fitzgerald and Powdrell do not survive Fed. R. Civ. P. 12(b)(6) scrutiny and will be dismissed without prejudice. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (affirming court's *sua sponte* dismissal of complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim where it was "patently obvious" that plaintiff could not prevail on facts alleged and allowing the opportunity to amend complaint would be futile).

V.    Conclusion

Viewing the factual record and making all reasonable inferences in favor of Plaintiff, a reasonable jury could not find that Defendants Fitzgerald and Powdrell fit the law enforcement waiver under the NMTCA. Accordingly, Defendants Fitzgerald and Powdrell's NMTCA immunity is not waived and Plaintiff's NMTCA claims against them fail as a matter of law. Moreover, since Plaintiff cannot demonstrate that Defendant Powdrell violated any of his Fourth Amendment constitutional rights to be free from excessive force and unreasonable seizure, Defendant Powdrell is entitled to the defense of qualified immunity on Plaintiff's Fourth Amendment Section 1983 claims. Finally, Plaintiff has failed to state cognizable Fourteenth Amendment false arrest and/or false imprisonment claims against both Defendants Fitzgerald and Powdrell.

Following entry of the Court's order as described below, the only remaining claims in this litigation will be Plaintiff's Section 1983 Fourth Amendment claims against Defendant Fitzgerald for excessive force (Count VII) and false arrest and/or false imprisonment (Count VIII).

IT IS ORDERED that

1.    Defendant Powdrell's Motion for Summary Judgment (Doc. 37) is granted;

2.      Summary judgment will be entered in favor of Defendants Fitzgerald and Powdrell on Counts III, IV, and V of the Complaint;

3.      Summary judgment will be entered in favor of Defendant Powdrell on the Fourth Amendment excessive force claim in Count VII of the Complaint;

4.      Summary judgment will be entered in favor of Defendant Powdrell on the Fourth Amendment false arrest and/or false imprisonment claim in Count VIII of the Complaint;

5.      Counts III, IV, and V will be dismissed with prejudice in their entirety;

6.      Counts VII will be dismissed as to Defendant Powdrell with prejudice;

7.      The Fourth Amendment claim in Count VIII will be dismissed as to Defendant Powdrell with prejudice;

8.      The Fourteenth Amendment claims in Count VIII will be dismissed as to both Defendants Fitzgerald and Powdrell without prejudice in their entirety; and

9.      Defendant Powdrell is dismissed entirely from this matter and his name will be stricken from the caption of this case.

_____
UNITED STATES DISTRICT JUDGE