IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALFONSO HERNANDEZ,

        Plaintiff,

vs.                                                                                  Civ. No. 14-0964 KG/SCY

ANDY FITZGERALD, *in his individual capacity*
*as a security officer employed by the*
*Albuquerque Transit Dept. Security Div.*,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Fitzgerald's Motion for Summary Judgment, filed February 5, 2018, in which Defendant Andy Fitzgerald moves for summary judgment on all remaining claims, and Plaintiff Alfonso Hernandez's Motion for Partial Summary Judgment Against Defendant Andy Fitzgerald on Count VII, filed February 5, 2018. (Docs. 149 and 153). Plaintiff Alfonso Hernandez filed his response to Defendant Fitzgerald's Motion on February 26, 2018, and his reply in support of his own Motion on March 12, 2018. (Docs. 170 and 175). Defendant Andy Fitzgerald filed a response to Plaintiff Hernandez's Motion on February 26, 2018, and a reply in support of his own Motion on March 12, 2018. (Docs. 171 and 176). After considering the submissions and arguments of the parties, the record, and the applicable law, the Court denies both motions.

I.     Procedural History

This litigation is the result of an altercation on August 30, 2012, involving Plaintiff and Albuquerque Transit Department security officers (TSOs) Andy Fitzgerald and Akeem

Powdrell.[1]  (Doc. 1-2).  Defendant Fitzgerald was detaining a homeless man (later identified as Manuel Bustamante) while TSO Powdrell left to summon the police.  (Doc. 124).  Plaintiff, who was in the immediate area, began recording the detention with an audio-recording device in his pocket and the video-recording function of his cell phone as he approached Defendant Fitzgerald and Mr. Bustamante.  (Doc. 1-2) at ¶¶ 26-27, 29.  Plaintiff claims that Defendant Fitzgerald became enraged because Plaintiff was filming him and attacked Plaintiff.  *Id.* at ¶¶ 40-41, 43-44, 63.  Plaintiff claims that both Defendant Fitzgerald and TSO Powdrell assaulted, battered, and falsely arrested him. (Doc. 1-2) at ¶¶ 50, 57-58.

On August 14, 2014, Plaintiff filed his Complaint for Violations of the Tort Claims Act and Deprivation of Civil Rights (Complaint).  (Doc. 1-2).  Only Count VII and the Count VIII Fourth Amendment claims against Defendant Fitzgerald remain.  *See* (Docs. 92, 118, 120, 121, 124, and 125) (notices and orders dismissing claims).  In Count VII, Plaintiff alleges a 42 U.S.C. § 1983 Fourth Amendment claim against Defendant Fitzgerald for excessive force.  (Doc. 1-2) at 20-21.  In Count VIII, Plaintiff alleges a Section 1983 Fourth Amendment claim against Defendant Fitzgerald for false arrest/imprisonment.  *Id.* at 22-23.

Defendant Fitzgerald now moves for summary judgment on the remaining claims, while Plaintiff moves for summary judgment only on Count VII.

II.  Standard of Review

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "When applying

---

[1] The Court previously granted TSO Powdrell's Motion for Summary Judgment and dismissed the claims against him with prejudice.  (Docs. 124 and 125).

this standard, [the Court] view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000) (internal quotation marks omitted). The movant bears the initial burden of showing the absence of a genuine issue of material fact, then the burden shifts to the non-movant to provide evidence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A fact is "material" if, under the governing law, it could influence the outcome of the lawsuit, and "genuine" if a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999); *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted). A party cannot avoid summary judgment simply by resting upon the mere allegations or denials of his pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

III. Material Facts and Reasonable Inferences Viewed in the Light Most Favorable to the Nonmovants[2]

Defendant Fitzgerald was, at all relevant times, a public employee acting within the course and scope of his duties as a TSO. *See* (Doc. 149) at 9 (asserting that qualified immunity applies to Defendant Fitzgerald); (Doc. 153) (moving for summary judgment in Plaintiff's favor on Section 1983 claim against Defendant Fitzgerald); *see also* (Doc. 124) at 4 (finding that TSO Powdrell was public employee acting in course and scope of his employment).

Defendant Fitzgerald and TSO Powdrell detained Mr. Bustamante at a bus stop on

---

[2] Unless otherwise noted, the summary of material facts is undisputed and reflects only the facts the Court viewed as material to the remaining claims against Defendant Fitzgerald. The Court has not included or discussed facts that are not pertinent to the claims before the Court.

3

August 30, 2012. (Doc. 149) at UMF 1; (Doc. 170) at ¶ 1. The TSOs detained Mr. Bustamante because they observed him drinking and making obscene gestures. (Doc. 124) at 4. Defendant Fitzgerald remained with Mr. Bustamante while TSO Powdrell departed the scene to use Transit Dispatch to summon the police to issue a citation. (Doc. 124) at 4.

Plaintiff observed this interaction, stopped his vehicle, began filming with his cell phone, and approached the bus stop. (Doc. 149) at UMFs 3-4; (Doc. 153) at ¶ 1. When Plaintiff arrived, Mr. Bustamante was seated on a bench and Defendant Fitzgerald was standing several feet away from the bench. (Doc. 161) at Exh. A at 0:09-0:26. Plaintiff asked Mr. Bustamante if he was being detained. *Id.* at 0:52-1:00. Mr. Bustamante said, "Yes." *Id.* at 1:04-1:06. Plaintiff then asked Mr. Bustamante why he was being detained, and Mr. Bustamante said, "I don't know, [inaudible] not talk to me about it." *Id.* at 1:07-1:13. Next, Plaintiff told Mr. Bustamante that Defendant Fitzgerald was a security guard, not a police officer. *Id.* at 1:09-1:18.

Defendant Fitzgerald approached Plaintiff and stated, "I'm not a security guard, sir." *Id.* at 1:19-1:21. While Plaintiff enquired as to Defendant Fitzgerald's position, Defendant Fitzgerald asked Plaintiff who he was and why he was filming. *Id.* at 1:21-1:25. Defendant Fitzgerald immediately reached for Plaintiff's cell phone, and a scuffle ensued. *Id.* at 1:26-2:12. During the scuffle, Plaintiff can be heard yelling, "I am a citizen," and "You are breaking the law." *Id.* Defendant Fitzgerald took Plaintiff to the ground during the encounter and told Plaintiff "Let [the phone] go" and, "Roll over." *Id.* at 2:12-2:28. TSO Powdrell returned to the scene and assisted Defendant Fitzgerald in handcuffing Plaintiff. *Id.* at 2:12-2:47; (Doc. 124) at 5. Plaintiff actively resisted being handcuffed. (Doc. 149) at UMF 8; (Doc. 170) at ¶ 8. As a

4

result of the encounter with Defendant Fitzgerald, Plaintiff sustained red marks to his neck. (Doc. 149) at UMF 8; (Doc. 170) at ¶7. Plaintiff claims that Defendant Fitzgerald choked him after he was handcuffed. (Doc. 153) at ¶ 8. Plaintiff's neck and throat showed visible red marks after the encounter. (Doc. 149-2).

IV. <u>Discussion</u>

    *1. Disputed Facts*

In response to the undisputed material facts contained in Defendant Fitzgerald's Motion for Summary Judgment (Doc. 149), Plaintiff stated that several supporting materials were inadmissible and cited to Fed. R. Civ. P. 56(c)(2). (*See, e.g.*, Doc. 170) at ¶ 8. "At the summary judgment stage, the parties need not submit evidence in a form admissible at trial; however, the content or the substance of the evidence must be admissible." *Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1122 (10th Cir. 2005). Throughout his Response, Plaintiff contends that certain portions of his own deposition are inadmissible under Fed. R. Evid. 401 as irrelevant to the inquiry at hand. (Doc. 170) at ¶¶ 8-13, 15-18. While many of the facts asserted in Defendant Fitzgerald's Motion have no bearing on resolving these matters, Plaintiff's base objection lacks support: his argument regarding the legal standards at issue go to the weight, not the admissibility, of Plaintiff's statements. The Court will consider all of the proffered evidence and simply disregard evidence which is substantively inadmissible. *See Bd. Of Trustees of Cal. Winery Workers' Pension Tr. Fund. v. Giumarra Vineyards,* 2018 WL 1155988 at *3 (E.D. Cal.) (holding that party opposing summary judgment "should argue the sufficiency of the evidence rather than make" objections based on relevancy, for example, because such objections are "duplicative of the summary judgment standard;" and that court should disregard

5

"evidence [that] is irrelevant, immaterial, speculative, or argumentative"); *Prudential Ins. Co. of Am. v. Textron Aviation, Inc.*, 2018 WL 1992423 *2 (D. Kan.) (holding that, instead of striking inadmissible evidence proffered in summary judgment context, court should "consider each [piece of proffered evidence] and, to the extent it may assert a fact which is not admissible evidence, simply exclude the requested fact from the court's ultimate findings").

> 2. *Section 1983 Fourth Amendment Claims Against Defendant Fitzgerald (Counts VII and VIII): Excessive Force and False Arrest/Imprisonment*

Defendant Fitzgerald moves for summary judgment on the Section 1983 Fourth Amendment excessive force and false arrest/imprisonment claims. (Doc. 149). Defendant Fitzgerald argues that (1) he used reasonable force on Plaintiff; (2) Plaintiff cannot establish that he handcuffed Plaintiff; and (3) he had probable cause to arrest Plaintiff. *Id.* In the alternative, Defendant Fitzgerald argues that he is entitled to qualified immunity. *Id.* Plaintiff asserts that (1) Defendant Fitzgerald used objectively unreasonable force on him;[3] (2) Defendant Fitzgerald had no probable cause to arrest Plaintiff; and (3) Defendant Fitzgerald is not entitled to qualified immunity. (Docs. 153, 170). The Court will analyze the motions for summary judgment under the qualified immunity framework.

> a. *Qualified Immunity Standard*

"Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability[.]" *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004) (citation omitted). Qualified

---

[3] Plaintiff does not appear to claim that the use of handcuffs alone constituted excessive force, but rather that a combination of events throughout the entire encounter resulted in excessive force. (Doc. 153) at 5-6.

6

immunity shields government officials from liability when they reasonably perform their duties. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004). Qualified immunity is intended to provide "protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

When a defendant raises qualified immunity as a defense, "a plaintiff must properly allege a deprivation of a constitutional right and must further show that the constitutional right was clearly established at the time of the violation." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). Unlike other defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "This is a heavy burden." *Carabajal v. City of Cheyenne, Wyoming*, 847 F.3d 1203, 1208 (10th Cir. 2017).

The Court is required to grant qualified immunity at the summary judgment stage "unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Estate of Booker*, 745 F.3d at 411. The Court has discretion to decide which of the two prongs of the qualified immunity analysis to address first. *Id.* at 412. When determining whether a plaintiff has met his burden, the Court construes the facts in the light most favorable to the plaintiff as the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

A "right" is clearly established only if there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Scull*, 236 F.3d at 595 (internal quotation marks omitted).

To defeat Defendant Fitzgerald's assertion of qualified immunity, Plaintiff must demonstrate that Defendant Fitzgerald's actions violated a constitutional right that was clearly established at the time of the alleged misconduct, in this case, Plaintiff's Fourth Amendment right to be free from excessive force and his Fourth Amendment right to be free from unreasonable seizure, *i.e.*, unlawful or false arrest. *Pearson*, 555 U.S. at 232.

      b. *Prong One of the Qualified Immunity Analysis: Fourth Amendment Excessive Force Violation*

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Claims that state actors used excessive force in the course of a seizure are analyzed under the Fourth Amendment's reasonableness standard. *Id.* A court must judge the reasonableness of a particular use of force from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . includ[ing] an examination of the information possessed by the [officers]." *Weigel v. Broad*, 544 F.3d 1143, 1152 (10th Cir. 2008) (citations and internal quotation marks omitted). The United States Supreme Court maintains that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. When evaluating a claim of excessive force, courts must keep in mind that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." *Id.* at 396; *see also Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (noting "even if an

8

officer reasonably, but mistakenly, believed that a suspect was likely to fight back . . . officer would be justified in using more force than in fact was needed").

The United States Supreme Court considers the following factors when evaluating reasonableness in an excessive force claim: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. In this case, the Court views the events from Defendant Fitzgerald's perspective and the information available to him at the time of the incident. *Weigel*, 544 F.3d at 1152. To evaluate the reasonableness of Defendant Fitzgerald's use of force, based on the *Graham* factors, the Court first considers the severity of the crime at issue. *Graham*, 490 U.S. at 396.

Plaintiff maintains that he did not commit any crime by filming and speaking to Defendant Fitzgerald. Defendant Fitzgerald maintains that Plaintiff "commit[ted] the crime of resisting, evading or obstructing an officer," allegedly in violation of NMSA 1978, § 30-22-1 (2004 Repl. Pamp.), by interfering with the detention of Mr. Bustamante. (Doc. 149) at 8. If Defendant Fitzgerald is correct, this offense constitutes a misdemeanor. NMSA 1978, § 30-22-1.

Even so, the undisputed evidence suggests that a reasonable jury could find that the ensuing scuffle between Plaintiff and Defendant Fitzgerald posed an immediate threat to the safety of Defendant Fitzgerald and constituted resistance to arrest by Defendant Fitzgerald. However, once Plaintiff was handcuffed and no longer a safety threat and no longer resisting arrest, Plaintiff contends that Defendant Fitzgerald choked him. (Doc. 153) at ¶ 8; *id.* at 5.

Courts have found that a chokehold can constitute excessive force. *See Estate of Booker*, 745 F.3d at 425 (citing *United States v. Livoti*, 196 F.3d 322, 327 (2d Cir. 1999)

9

(upholding excessive force verdict where officer put victim in choke hold for one minute to render victim unconscious, and where department prohibited such holds); *Valencia v. Wiggins*, 981 F.2d 1440, 1447 (5th Cir. 1993) (upholding district court's determination that defendants' use of "choke hold and other force . . . to subdue a non-resisting [detainee] and render him temporarily unconscious" constituted excessive force under Due Process Clause); *Papp v. Snyder*, 81 F. Supp. 2d 852, 857 (N.D. Ohio 2000) (denying qualified immunity where jury could conclude that officer used choke hold and carotid hold when victim was restrained by others and handcuffed); *McQurter v. City of Atlanta, Ga.*, 572 F. Supp. 1401, 1414 (N.D. Ga. 1983) (use of chokehold was "excessive and malicious" when used after victim was "manacled" and "effectively restrained"), *abrogated on other grounds by Estate of Booker v. Gomez*, 745 F.3d 405 (10th Cir. 2014).

These cases are instructive. While both parties move for summary judgment on the excessive force claim, there remains a genuine dispute of material fact as to whether—and if so, when—Defendant Fitzgerald choked Plaintiff. Plaintiff's contention that Defendant Fitzgerald choked him is not without support in the record. In a photograph taken after the encounter, Plaintiff displays visible red marks on his neck and throat. (Doc. 149-2). An answer to this factual question is necessary to determine whether the first prong of the qualified immunity analysis is met, *i.e.*, whether Defendant Fitzgerald violated Plaintiff's Fourth Amendment right to be free from excessive force. Consequently, Defendant Fitzgerald's qualified immunity defense as to the excessive force claim cannot succeed at this time. This outstanding issue of material fact, also, precludes Plaintiff from prevailing on his motion for summary judgment. Hence, the Court must deny both motions for summary judgment on Count VII, the Fourth

Amendment Section 1983 excessive force claim.

> c. *Prong One of the Qualified Immunity Analysis: Fourth Amendment False Arrest and/or False Imprisonment Violation*

It is well-established that an individual has a constitutionally protected right to be free from unreasonable seizures. To wit, the Fourth Amendment prohibits unreasonable seizures. *See Koch v. City of Del City*, 660 F.3d 1228, 1238-39 (10th Cir. 2011). "Generally, a warrantless arrest is constitutionally valid when an officer has probable cause to believe that the arrestee committed a crime." *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010) (internal citation omitted) ("[L]aw enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity."). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "The existence of probable cause is gauged based on the facts known to [the officer] when he made the arrest." *Simpson v. Kansas*, 593 Fed. Appx. 790, 793-94 (10th Cir. 2014). To evaluate whether a defendant violated clearly established law in the context of a qualified immunity defense on an unlawful arrest claim, the court asks "whether there was 'arguable probable cause'" for the challenged conduct. *Kaufman*, 697 F.3d at 1300. Arguable probable cause is another way of saying that the officer's decision rests on an objectively reasonable, even if mistaken, belief that probable cause to arrest or detain the plaintiff exists. *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007).

In the context of a Section 1983 claim, "a plaintiff states a claim for false imprisonment . . . by specifically alleging facts that show a government official acted with deliberate or reckless

11

intent to falsely imprison the plaintiff." *Romero v. Fay*, 45 F.3d 1472, 1480 (10th Cir. 1995). "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Major v. Benton*, 647 F.2d 110, 113 (10th Cir. 1981). "A defendant possessed of a good faith and reasonable belief in the lawfulness of the action is not liable for false imprisonment or false arrest." *Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006).

Importantly, at the outset, Defendant Fitzgerald does not contend that the right to be free from unreasonable seizures was not clearly established. Defendant Fitzgerald also does not contend that Plaintiff was not seized. Rather, Defendant Fitzgerald argues that Plaintiff cannot establish who handcuffed him, and that even if Defendant Fitzgerald handcuffed Plaintiff, it was a valid seizure.

Defendant Fitzgerald admits that he was not a law enforcement officer and, therefore, did not have official authority to make an arrest. (Doc. 149) at 8. He contends that he maintained the ability to make a citizen's arrest, just like any private citizen. *Id.* The cases cited by Defendant Fitzgerald all echo the same theme: a private citizen may make a citizen's arrest if someone committed a felony in their presence. *See id.* (citing cases from Arizona and California).

Neither Plaintiff nor Defendant Fitzgerald addressed the definition or standard for a citizen's arrest in New Mexico. In New Mexico, "[a]ny person . . . may arrest another upon good-faith, reasonable grounds that a felony had been or was being committed, or a breach of the peace was being committed in the person's presence." *State v. Arroyos,* 2005-NMCA-086, ¶ 5, 137 N.M. 769 (citing *State v. Johnson*, 1996-NMSC-075, ¶ 18, 122 N.M. 696), *overruled on*

*other grounds by State v. Slayton,* 2009-NMSC-054, 147 N.M. 340. A breach of the peace is considered "a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community." *State v. Florstedt*, 1966-NMSC-208, ¶ 7, 77 N.M. 47.

Defendant Fitzgerald contends that Plaintiff "interfere[d] with the detention of Mr. Bustamante," thus "committing the crime of resisting, evading or obstructing an officer," allegedly in violation of NMSA 1978, § 30-22-1. (Doc. 149) at 8. Obstructing an officer constitutes a misdemeanor. Defendant Fitzgerald at no time contends that Plaintiff committed a felony, or that he believed Plaintiff had committed a felony.

The question then becomes whether Defendant Fitzgerald reasonably believed that Plaintiff breached the peace. The parties agree that Plaintiff did not engage in any act of violence prior to the scuffle with Defendant Fitzgerald. Therefore, for Plaintiff to have breached the peace, Defendant Fitzgerald would have to reasonably believe that Plaintiff's actions were "likely to produce violence." *Florstedt*, 1966-NMSC-208, ¶ 7. Defendant Fitzgerald does not assert that he believed Plaintiff's actions were likely to produce violence prior to engaging Plaintiff in a physical altercation. Also, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Plaintiff's filming and speaking to Defendant Fitzgerald did not cause "consternation and alarm" so as to disturb the peace. Defendant Fitzgerald cited no authority or other evidence to suggest that a public employee, not a law enforcement officer, remains entitled to the benefit of the doubt after he initiates an altercation that was debatably unlawful. The above situation constitutes a genuine issue of material fact relevant to probable cause to arrest and to a good faith reasonable belief best

reserved to the jury, and precludes summary judgment on the basis of qualified immunity.

Additionally, "personal participation is an essential allegation to a Section 1983 claim." *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (citation omitted). Neither party puts facts or evidence in the record sufficient to determine who handcuffed Plaintiff, *i.e.*, who initially seized Plaintiff. As such, the question of who handcuffed Plaintiff is a genuine issue of material fact reserved to the jury unless stipulated by the parties.

For the foregoing reasons, Defendant Fitzgerald's Motion for Summary Judgment as to Count VIII, the Fourth Amendment Section 1983 claim for unlawful seizure/false arrest, is denied.

V.  Conclusion

Viewing the factual record and making all reasonable inferences in favor of the nonmovants, there remain outstanding genuine issues of material fact that preclude summary judgment on either of the remaining Fourth Amendment claims against Defendant Fitzgerald.

IT IS ORDERED that

1. Defendant Fitzgerald's Motion for Summary Judgment (Doc. 149) is denied; and

2. Plaintiff's Motion for Partial Summary Judgment Against Defendant Andy Fitzgerald on Count VII (Doc. 153) is denied.

_____
UNITED STATES DISTRICT JUDGE