1              IN THE UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF NEW MEXICO

3

ALFONSO HERNANDEZ,

4              PLAINTIFF,

5         vs.                    NO:  CV-14-964 KG/SCY

6
ANDY FITZGERALD,

7              DEFENDANT.

8

9

10       TRANSCRIPT OF EXCERPT FROM THE TRIAL – VOLUME II

11        BEFORE THE HONORABLE KENNETH J. GONZALES

12          Wednesday, May 29, 2019; 8:27 A.M.

13              ALBUQUERQUE, NEW MEXICO

14

15

16

         Proceedings reported by machine shorthand and transcript
17  produced by Computer-Aided Transcription.

18

19

20

21

22

23  Reported By:  Danna Schutte Everett, CRR, RPR, RMR, CCR 139
                United States Court Reporter
24                100 N. Church Street, Las Cruces, NM  88001
                Phone:  (575) 528-1656  Fax: (575) 528-1645
25                dannadawn@comcast.net

```
 1   FOR THE PLAINTIFF:

 2         GORENCE & OLIVEROS, P.C.
           300 Central Avenue, Southwest
 3         Albuquerque, New Mexico  87102
           BY:  MS. LOUREN M. OLIVEROS
 4
     FOR THE DEFENDANT:
 5
           LAW FIRM OF JONLYN M. MARTINEZ
 6         Post Office Box 1805
           105 14th Street, Southwest
 7         Albuquerque, New Mexico  87103-1805
           BY:  MS. JONLYN M. MARTINEZ
 8
     ALSO PRESENT:  Mr. Brandon Cummings
 9                  Ms. Kaia Oliveros
                    Mr. Alfonso Hernandez
10                  Mr. Andy Fitzgerald

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1    * * * * * * * * * * * * * * * * * * * * * * * * * *
2              THE COURT:  Okay.  Good morning, everyone.  All
3    right.  Please be seated.
4              Okay.  We are back on the record, and I understand
5    the jury's just about ready to come back in, but is there
6    anything that counsel wants to bring up while we're here?
7              MS. MARTINEZ:  Yes, Your Honor.
8              THE COURT:  Okay.
9              MS. MARTINEZ:  Do you want to go first, Louren?  You
10   had something to raise with the Court.
11             MS. OLIVEROS:  You can go on.
12             MS. MARTINEZ:  All right, Your Honor.  So the main
13   issue that I wanted to address was the issue of counsel
14   questioning my client yesterday about whether or not the
15   judgment would be paid by the City of Albuquerque in front of
16   the jury, and I did have an opportunity yesterday, last night
17   to speak with my client and do a little bit of research, Your
18   Honor, and I did look at Rule 411, which I believe that conduct
19   violates, and Rule 411 states that evidence that a person was
20   or was not insured against liability is not admissible to prove
21   that the person acted negligently or otherwise wrongfully, but
22   the Court may admit this evidence for another purpose.
23             This Court questioned counsel about the reason that
24   she questioned my client on the issue, and she stated that, you
25   know, because he'd been reinstated in 2019 this was fertile
```

1  grounds for cross-examination, but the reasons set forth by

2  counsel don't satisfy what's required by Rule 411, and so my

3  client is unfairly prejudiced by the conduct.

4       Unfortunately, because the City is not a party in

5  these proceedings, when we conducted voir dire there was no

6  questions asked about the City of Albuquerque bias or prejudice

7  for the City of Albuquerque, for or against, and whether any of

8  the jurors had been employed by the City of Albuquerque or had

9  a family member or had any adverse feelings toward the City of

10  Albuquerque, and my understanding is that typically when the

11  City is a party there's a special jury questionnaire that is

12  requested because the City's in the news so often for a variety

13  of issues.  And obviously that wasn't done in this case.  And

14  so the defendant is unfairly prejudiced and his right to a fair

15  and impartial jury has been compromised.

16       I believe that this issue falls within this Court's

17  sound discretion and this Court has the ability to determine

18  the appropriate remedy.

19       I spent some time attempting to draft a limiting

20  instruction, Your Honor, but the problem with the limiting

21  instruction is that it really doesn't cure the prejudice,

22  because it just raises the issue with the jury once again that

23  they can't consider that in making their determination.  And I

24  don't understand how it's possible to unring that bell.

25       So, I believe that, you know, that this issue is left

1   to this Court's discretion to determine the appropriate

2   sanction, and I think the appropriate sanction based on not

3   just this issue, but plaintiff's behavior throughout this

4   litigation, and I think that that is very well-documented in

5   this Court's order, document number 110, and this Court's order

6   adopting that recommendation by the magistrate, document 111,

7   and then the conduct here at this jury trial, violations of

8   this Court's motions -- orders in limine and then this

9   violation of Rule 411.

10          So while we leave this issue to the Court's

11   discretion, we suggest to the Court that the dismissal of this

12   case at this time is appropriate, because a mistrial would just

13   force this defendant to come back from Chicago, incur

14   additional costs, take more time from work, and it would cause

15   the defendants to incur additional costs and fees.  But the

16   dismissal is appropriate based on all of the misconduct that's

17   taken place in this case thus far.

18          And alternatively, Your Honor, the defendant requests

19   that if this Court is unwilling to dismiss this matter, that

20   the Court consider as an appropriate remedy the dismissal of

21   plaintiff's claims for punitive damages, because that would

22   cure the prejudice because the plaintiff would not be entitled

23   to ring the bell against the City of Albuquerque with regard to

24   that statement, which was -- which can be the only basis that

25   that statement was made.

1          And so, Your Honor, we leave this issue to the

2    Court's discretion, but we do raise the fact that the defendant

3    has been unfairly prejudiced, he will not be able to obtain a

4    fair trial based on the comments of counsel, and so we ask for

5    the relief that the Court deems appropriate.

6          THE COURT:  Okay.  And just to be -- just to be

7    clear, the draft limiting instruction you have, you've

8    submitted, I have it in my hand, this relates -- and I'll just

9    read it.  So is it filed?

10          MS. MARTINEZ:  It is filed, yes, Your Honor.

11          THE COURT:  It is on the record?  I don't have a

12    document number.

13          MS. MARTINEZ:  I'm sorry.

14          THE COURT:  That's all right.

15          MS. MARTINEZ:  I thought the one I gave had a

16    document number.  It's document number 275, Your Honor.

17          THE COURT:  275?

18          MS. MARTINEZ:  Yes.

19          THE COURT:  Okay.  Okay, Theresa I see it.  Okay, so

20    275.

21          MS. MARTINEZ:  275 relates to the violation of the

22    order in limine, Your Honor.

23          THE COURT:  Yes.  Relating to the personnel file.

24    Now, the draft limiting instruction relating to any judgment

25    that would be paid.

1          MS. MARTINEZ:  I was unable to craft one, Your Honor,

2     because I worry that bringing it to the jury's attention again

3     just highlights the issue.

4          THE COURT:  Okay.

5          MS. MARTINEZ:  When the comment was made in the

6     courtroom when the question was asked, I objected but didn't

7     put any grounds on the record to try to not draw attention to

8     it.

9          THE COURT:  Sure.

10         MS. MARTINEZ:  And so I'm -- I'm weary of drawing

11    additional attention to this issue to the jury, and that's what

12    I struggled with last night.

13         THE COURT:  Okay.  Ms. Oliveros, do you want to

14    respond to anything that Ms. Martinez has proposed?

15         MS. OLIVEROS:  Well, Your Honor, she -- there was a

16    lot packed in there, Your Honor.  One, if the motion is to

17    dismiss, I obviously strenuously object, and I think I need to

18    go to the alleged many violations of the motions in limine,

19    Your Honor.  One, with respect to the questions about the City,

20    the question that I did with Mr. Fitzgerald had to do with his

21    reporting and his dishonesty that he demonstrated with respect

22    to reporting incidents where he used force, and what he did

23    when he testified was that he said that he always reports

24    everything and that he's -- that he thinks -- I don't have

25    the -- I don't have the transcript, but I obviously I need to

1    get it, Your Honor, but that he has never omitted anything from

2    it -- from his required documentation, which were the daily

3    reports or the incident reports.  And because he was lying

4    about that, then he -- then I believed, as I mentioned

5    yesterday, that he opened the door, and I didn't see on the

6    order that I had to approach the bench, Your Honor, and I think

7    that that would have been best now that this has come up, but

8    he ordered -- he opened the door, and then I was asking

9    questions about actually times that he omitted things and he

10   agreed to them.  That questioning went on, Your Honor, and I

11   submit that I -- if there was an objection raised, which there

12   never was, it was only the Court that brought it forward, but

13   if there was an objection raised in the beginning, if the Court

14   or the defense counsel found that that line of questioning

15   exceeded the bounds of what was permissible, I needed the

16   opportunity and chance to cure, and then obviously I would have

17   stopped it right then, and because of the way the evidence

18   works in the courtrooms it's oftentimes that the door's opened

19   to things that weren't otherwise admissible before.

20          THE COURT:  But you would acknowledge that it is at

21   least best practice to flag it for the Court before you proceed

22   with that line of questioning?

23          MS. OLIVEROS:  Well, I would, Your Honor, and I think

24   that, you know, obviously, that's what I should have done, and

25   it's hard, because in hindsight, you know, you have told me

```
1    that I am to have a hearing on sanctions, but I think that's

2    the best practice.  It's my practice that if the -- if there

3    was an instruction by the Court that I should do that, that I

4    do that, and I take all of the orders very seriously, but also

5    when there's an opportunity for evidence to change, like

6    someone lying on the stand, my understanding on the Rules of

7    Evidence, Your Honor, is that opens the door so that the --

8    that, you know, when -- that then becomes a permissible ground

9    to question about someone.  They can't stand on a falsehood

10   even though the Court has preliminarily without the testimony

11   excluded the evidence for the reasons that are set forth in the

12   motion.

13            THE COURT:  The questions also included whether he

14   would hold any strong feelings about the defendant based on the

15   fact that Mr. Fitzgerald -- or the plaintiff based on

16   Mr. Fitzgerald being terminated by the City of Albuquerque.

17            MS. OLIVEROS:  Yes.  And, Your Honor, we filed a

18   motion, and I just want to make sure the way I understood the

19   state of the evidence was we tried to get in as an exhibit the

20   City of Albuquerque's admissions regarding the termination.

21            THE COURT:  I ruled -- I ruled on those admissions,

22   excluding those.

23            MS. OLIVEROS:  Yes, and I didn't mention them.  But

24   they were not -- they were not the only avenue for talking

25   about his termination.  I think his termination, just like
```

 1   Mr. Powdrell's termination, came to be relevant about his

 2   testimony, whether it's bias for the City -- or bias for

 3   allegations having to do with the City and his employment there

 4   or against the City, and it's the same thing with

 5   Mr. Fitzgerald.  If he has -- If he has a bias against my

 6   client, that influences the way he might testify.  And his

 7   deposition, the admissions of the City were one thing, but in

 8   his deposition he makes it clear that he holds my client

 9   responsible for everything in his life that went bad in that

10   time period, and that's something -- that's a bias that he has

11   against my client that influences how he testifies.

12          Now, his termination from the City, or -- which we've

13   only learned about from supplemental disclosures made by

14   Ms. Martinez after the first -- over the weekend, I believe it

15   was, that there was a -- there was a settlement or a decision

16   by the City or the union or whatever it was to switch him from

17   being terminated to resigning and then there was a $5,000

18   payment made, I think that goes -- that goes to -- that's why

19   that was discussed and she brought that up, because it is

20   relevant to his testimony about his time when he did work at

21   the City, and she brought it up --

22          THE COURT:  Well, I saw that as being necessary to do

23   having the bell been rung on your examination of Mr. Fitzgerald

24   and it being somewhat of a step to take to diffuse any notion

25   that he would have been terminated or had any bias based on his

1    termination.  That's the way I construed it.

2              Let me just say this.  I am troubled by what -- and I

3    have to be careful because we're on the record and I don't want

4    to say anything, well, at this time.  I issued -- I stated the

5    reasons for the order to show cause, and so I'm going to hear

6    you at the appropriate time on that order.  I'm going to

7    consider the motion to dismiss.  I am also considering whether

8    a limiting instruction would cure any prejudice on the part of

9    the defendant in what could still be construed as a violation

10   of a Court order; though, once again, I'll have a fair hearing

11   on that to determine if, in fact, there was, and also whether

12   counsel overstepped by references payment of a judgment by the

13   City of Albuquerque.  So that's also part of the order to show

14   cause.

15             The question is whether this case should be

16   dismissed.  So for the time being I'm going to take that under

17   advisement.  That's obviously a consequential step that the

18   Court would take, but before I get to that point, whether --

19   and I think it's fair that other steps be considered, including

20   a limiting instruction.  So that's the way I'm going to leave

21   it for now.  I'm taking it under advisement, including the

22   motion to dismiss any claim for punitive damages.  So I'm not

23   prepared right now to give you a ruling, so for now we'll just

24   proceed with evidence.

25             And the next witness, is that Mr. Hernandez who will

```
 1   take the stand?

 2              MS. OLIVEROS:  Yes.  Yes, it is, Your Honor.

 3              THE COURT:  Okay.

 4              MS. OLIVEROS:  And I understand your ruling, Your

 5   Honor, but it didn't -- I don't know if I finished my argument

 6   on the admissible grounds for bias with respect to

 7   Mr. Fitzgerald on the judgment and that there's not -- there's

 8   not insurance here, but that the question has to do with his

 9   bias for the City in his testimony, and that's a permissible

10   ground, Your Honor, to introduce even under 411 any evidence of

11   that, and there was no motion to exclude that evidence, Your

12   Honor.

13              THE COURT:  No, there is no motion to exclude it, but

14   I think counsel is well aware of the spirit of the rule, and

15   that is to not introduce any evidence to the jury as to any

16   judgment or who would pay on that judgment.  That would simply

17   be irrelevant, and that is at the very least one reason we have

18   the rule, is giving the jury an improper basis to render a

19   verdict.  And so no, there wasn't a motion to exclude, but the

20   rules are the rules, and that at least steps -- oversteps the

21   spirit of the rule, if not the letter.

22              MS. OLIVEROS:  Well, Your Honor, I do understand that

23   there are permissible grounds for this type of evidence, Your

24   Honor, and that is --

25              THE COURT:  Sure.
```

```
1            MS. OLIVEROS:  -- that is the grounds that I was
2   questioning Mr. Fitzgerald on, Your Honor.  I request that the
3   motion to dismiss or any sanctions in that regard be denied.  I
4   think a limiting instruction would cure any potential
5   prejudice.  The City has -- The defense has raised from the
6   beginning of trial that my client has a prejudice against the
7   City, and so the idea that the City's involvement in the case
8   and the City is not -- you know, the City has nothing to do
9   with anything has been brought up by the defense, that my
10  client has an axe to grind, that Mr. Powdrell has an axe to
11  grind against the City.  This is something that if someone
12  wanted to cover in voir dire they could have, Your Honor.
13            There's no surprises with the connection to the City.
14  I didn't mention the admissions because you excluded those, but
15  there is a whole host of other ways that Mr. Fitzgerald can and
16  is biased towards the City in his testimony.  And one of
17  those -- one of those has to do with getting a resignation
18  versus being terminated.  I think that's important to show his
19  bias, Your Honor.  But I would like the opportunity to fully
20  brief this.  And I don't have the benefit of the transcript.
21  Certainly I have the Court's orders at the forefront of my
22  mind, and there's -- there's nothing that I'm trying to do to
23  violate them.  As evidence comes in, I think that it's
24  important that I be able to advocate within the bounds of the
25  rulings, Your Honor, and that's what I'm trying to do.
```

1    THE COURT:  All right.  Anything else from counsel

2    before -- I'm going to take a recess just for a moment, but

3    anything else before we recess?

4    MS. OLIVEROS:  Yes, Your Honor.

5    THE COURT:  Okay.

6    MS. OLIVEROS:  I'm looking at the defendant's

7    supplemental trial exhibit list, and just because I think this

8    will come up in cross --

9    THE COURT:  Okay.

10   MS. OLIVEROS:  -- this is document 273, and I don't

11   think there's been another filing since this one.

12   MS. MARTINEZ:  There's the one I did earlier, on the

13   first day of trial.

14   MS. OLIVEROS:  5/28?  On 5/28?

15   THE COURT:  Okay.  I have 273, defendant's

16   supplemental trial exhibit list.  Is that --

17   MS. MARTINEZ:  That's the last one, yes, Your Honor.

18   THE COURT:  Okay.

19   MS. OLIVEROS:  Okay.  And, Your Honor, on this

20   exhibit list, there are -- there are sort of some broad

21   categories of exhibits, and I believe these -- at least a fair

22   portion of the responses, for example, in Defendant's B,

23   plaintiff's discovery responses and supplemental responses, the

24   Court in the pretrial conference and in your order 250- -- I

25   want to say it's 252, there was a lot of discussion about

1    certain discovery responses that may contain 404(b) and other

2    arrests that the Court in 110, 111, and I want to say 252 said

3    that they would not come in as a part of the sanction and that

4    the Court did an analysis on 404(b) and 403 and excluded

5    specifically, for example, the substance of the responses to

6    Interrogatory Number 16, and so I don't know what exactly the

7    defendant wants to introduce, but I believe that -- and I

8    thought that at the pretrial conference they said that they

9    were going to withdraw a fair portion of these references which

10   would in B.

11          The prior lawsuits against the City of Albuquerque, I

12   understand that those -- there can be questions about them, but

13   it would be cumulative for them to come in as substantively.

14   And E, all -- we don't have objection to A or D, Your Honor,

15   but Exhibit E, all documents listed as exhibits in document 95,

16   I think we've gone over this kind of at length in these orders,

17   and I'm looking at 252, and I thought that the defense was

18   going to pull most of those exhibits, which include incident

19   reports and arrest records, MDC records, and arrest records

20   with specific incidents.  Those are all hearsay, and I believe

21   those are excluded, and the Court ordered that Mr. Hernandez

22   could be questioned about his response to number 20, but that

23   these -- this extrinsic evidence wouldn't come in.

24          And then Exhibit H, Mr. Herrick's deposition,

25   Mr. Herrick isn't available within the meaning of the rule for

1    depositions, Your Honor, and his deposition is going to be

2    either played or read, I understand from the defense.  And it's

3    not proper to have it as an exhibit for the jury to look at.

4    It's -- It is in lieu of live testimony and it's -- and it,

5    just like everybody else, the way that works I think it should

6    be just played and then that's it.

7            THE COURT:  I think that's a worthy point.

8            Ms. Martinez.

9            MS. MARTINEZ:  Your Honor, I'm aware of all the

10   Court's rulings.  I didn't withdraw my exhibits.  The Court's

11   already ruled, and I'm going to comply with the Court's orders

12   in this regard.  And I think --

13           And just to alert the Court, the Court doesn't want

14   the interrogatories in as substantive exhibits, but what I plan

15   to do is just go over the plaintiff's failures to respond to

16   the discovery appropriately and the sanctions that were issued

17   and not get into the substance of the responses even with

18   regard to 20, because I think it just gets sort of confusing.

19           THE COURT:  Okay.

20           MS. MARTINEZ:  But I will -- I'm aware of the Court's

21   orders, and I'm going to abide by the Court's orders with

22   regard to all those exhibits, Your Honor.

23           THE COURT:  Okay.  So, now, Mr. Herrick's deposition,

24   is that video that you'll play or is it going to be read?  How

25   are you --

1            MS. MARTINEZ:  It's video that I'll play, Your Honor,

2    and I already have the clips of the defendant's designated

3    portions of the two, so they're ready to go.

4            THE COURT:  Okay.

5            MS. MARTINEZ:  And then the last thing, Your Honor,

6    is last night you ordered us to go back and scour our records

7    to determine whether there had been any supplementation of the

8    plaintiff's discovery responses.  I did that.  I also checked

9    to determine whether the plaintiff provided the defendants with

10   any initial disclosures or supplemental disclosures.  I

11   couldn't find any.

12           THE COURT:  This is relating to Ms. Aguilera and

13   Mr. Padilla?

14           MS. MARTINEZ:  Correct.  Yes.  And so I have for the

15   Court copies of the relevant interrogatories.  And so it was

16   Interrogatory Number 2 that asked for any relevant witnesses.

17   That interrogatory was never supplement and those two witnesses

18   are not listed.

19           Then I did ask Mr. Hernandez with whom he

20   communicated about the litigation.  Those two individuals did

21   come up in response to that interrogatory, but he -- in

22   response, that was Interrogatory Number 11 -- or 9, and he also

23   provided a supplemental answer, but he never provided contact

24   information or the substance of their communications.

25           And then I did question him about it at his

1   deposition, and we only discussed it looks like Mr. Padilla,

2   and I asked him what information Mr. Padilla would have, and

3   his testimony was "We've just been friends through a mutual

4   friend."  "What did you tell him about this litigation?"  "I

5   don't remember our exact communication, but most likely

6   basically what happened."  And then he indicated they hadn't

7   spoken in years.

8          So his -- the substance of his purported testimony

9   was never disclosed, his contact information was never

10  disclosed, and it's the same for the other witness, Your Honor.

11  And I do have those documents if the Court would like them for

12  the record.

13          THE COURT:  Okay.  So, sure, I'll take those up.

14          Let me just, since it's been brought up, my prior

15  ruling on document 222, this was the plaintiff's motion

16  in limine, and that was an order -- an oral order that I

17  entered at the pretrial conference that was on May 9th, 2019,

18  so the excluded information and topics are plaintiff's alleged

19  delinquent child support payments.  This is all within that

20  original motion in limine, document 222, plaintiff's alleged

21  delinquent child support payments and his status as what would

22  have been characterized allegedly as a bad father; plaintiff's

23  criminal history, including arrests and convictions other than

24  those that I've already described and will describe again just

25  in a moment, and the nature and substance of Interrogatory

1   Number 16 relating to Judge Yarbrough's sanctions that he

2   imposed.

3           Now, what I am allowing is that the defendant may

4   question plaintiff regarding his failure to answer multiple

5   interrogatories more than once, even when plaintiff was ordered

6   by this Court to provide true and complete answers,

7   Interrogatory Number 20; meaning that defendant may ask

8   plaintiff about what specially or specifically Interrogatory

9   Number 20 asked, plaintiff's multiple answers to Interrogatory

10  Number 20, and the substance of plaintiff's specific contacts

11  with law enforcement officers, including arrests that resulted

12  in the prior lawsuits.  And it's my understanding there's one

13  prior to this one that resulted in a settlement.  And any other

14  complaints against the Albuquerque Police Department or the

15  City of Albuquerque as well as any claims plaintiff has made

16  prior to his lawsuit or in his prior lawsuit, including any

17  claimed injuries, and the fact that the prior lawsuit was

18  settled.  So I am allowing questioning on those -- on those

19  matters.

20          Any questions about the scope?

21          MS. MARTINEZ:  I have a couple -- Well, I planned on

22  raising the fact that the plaintiff doesn't pay -- hasn't paid

23  income taxes or filed tax returns, Your Honor.  There's no

24  order on that issue.  So I just wanted to alert the Court of my

25  intent in that regard.  And then the plaintiff testified that

 1  he's also been in multiple other altercations with homeless

 2  individuals that he's either been the victim of or that he's

 3  initiated, and I also plan on cross-examining him on those

 4  issues as well.  So I just don't want to run afoul of any of

 5  the Court's orders, and I wanted to alert the Court of my

 6  intention in that regard.

 7          THE COURT:  Okay.  Did those other altercations

 8  result in a lawsuit against the City?

 9          MS. MARTINEZ:  They did not result in lawsuits

10  against the City, Your Honor.  It goes to demonstrate the

11  plaintiff's understanding of battery, of false imprisonment.

12  And his testimony with regard to those incidents is that he

13  took these people down to the ground but allowed them to fall

14  on top of him.  So it also goes to his claim of alleged

15  injuries, Your Honor.  So it goes to both his credibility and

16  damages.

17          THE COURT:  Okay.  Ms. Oliveros, as to any of that

18  proposed line of questioning?

19          MS. OLIVEROS:  Yes.  Well, Your Honor, with respect

20  to the income taxes, that's not relevant to any claim or any

21  defense, Your Honor.  He doesn't have an economic damages

22  claim, and that's simply, I believe, meant to assail his

23  character and would be impermissible and irrelevant and more

24  prejudicial than probative under Rule 403 of balancing, Your

25  Honor.

1           With respect to multiple altercations, I don't know

2    exactly what she is referring to, Your Honor, but that didn't

3    result in a false -- a battery.  That's 404(b) character

4    evidence, I believe, to show that he was acting in a certain

5    way and would have been acting in a similar fashion on this

6    occasion, and I think it's impermissible on those grounds.  I

7    don't understand how this would go to his credibility in this

8    case.  I don't believe that's an appropriate ground for --

9           THE COURT:  So if I excluded it under 404(b),

10   agreeing with you that it wouldn't be a proper purpose under

11   that rule, though the door is a little bit wider in what the

12   Court would allow for impeachment purposes even if it's not

13   under Rule 404(b), so including motive, which goes to

14   credibility, and if Mr. Hernandez is on the stand, the idea is

15   that credibility is always an issue when the witness is on the

16   stand, what would you say about that?

17          MS. OLIVEROS:  Well, I'm not clear on exactly what

18   the defense is going to bring out and what -- and, you know,

19   how that can be relevant to his credibility at this point, but

20   I agree with the Court, that credibility is always an issue,

21   and someone's motive to testify a certain way or any biases

22   that they have is something that can be explored to the extent

23   that it doesn't infringe upon the factors that we have to

24   consider under 403, Your Honor.

25          So I'm not -- Like I said, by the statement of the

1   defense, I'm not sure how the other incidents weigh on his

2   credibility, and that's not clear to me.

3            THE COURT:  Okay.  Would you clarify that,

4   Ms. Martinez.

5            MS. MARTINEZ:  Yes, Your Honor.  So with regard to

6   the taxes, on the audio recording that we've heard,

7   Mr. Hernandez's cell phone video, he repeatedly, he says,

8   "You're violating the law.  You're violating the law.  This is

9   an illegal arrest," and yet, you know, he doesn't pay his own

10  taxes, which he acknowledges if he owed them would be a

11  violation of the law.

12           So his understanding of the law -- And it also goes

13  to his credibility, Your Honor.  It's every person's obligation

14  to pay their taxes.  And he's owned his own business, his

15  testimony is, since he got out of high school, and all these

16  years, it's been since the '80s since he's paid taxes, and that

17  goes to his credibility, Your Honor.

18           THE COURT:  Let me just -- I'll just rule on that.

19  And I understand what the purpose would be in the line of

20  questioning regarding income taxes or failure to pay income

21  taxes, that where it could relate to credibility or

22  law-abidedness, to put it that way, and in that way relevant

23  under 401, I will find that under 403 that the danger of unfair

24  prejudice would outweigh the probative value of the evidence

25  relating to nonpayment of income taxes.  Okay.  So that's my

1    ruling as to income taxes.

2            Though, as to the other altercations.

3            MS. MARTINEZ:  Okay.  As to the altercations, Your

4    Honor, it's plaintiff's claim that he was -- excessive force

5    was used against him, that he was assaulted and battered by the

6    defendants -- or by my client, and that he was falsely

7    imprisoned.  Yet he engaged in the very same conduct with

8    regard to homeless individuals.  And it's conduct that he finds

9    just appropriate.  His testimony was these people were out of

10   control, he was just trying to subdue them, he just held on to

11   them until they were able to control themselves and then he let

12   them go.  And so, you know, it's a double standard for

13   Mr. Hernandez.  When he does it, it's fine.  When other people

14   do it, it's a civil rights lawsuit.

15           In addition, there was another individual that

16   punched him in the face that he caught selling drugs in a

17   bathroom.  This individual punched him in the face.  And I

18   asked Mr. Hernandez whether he brought a lawsuit against this

19   individual for punching him in the face, and his testimony was

20   no, he didn't.

21           THE COURT:  Okay.  So as to that particular line of

22   questioning, and I would construe it was being consistent with

23   what I've already ruled on and the substance of plaintiff's

24   specific contacts with law enforcement, I will allow that line

25   of questioning for any impeachment type of purposes.  Once

```
 1   again, credibility being of central importance in any witness's
 2   testimony.  And this would go, as I'm construing it, as,
 3   arguably -- I'm not finding it, Mr. Hernandez, but what could
 4   be argued to be a motive to fabricate or as to any bias that
 5   Mr. Hernandez may have against the City.  Once again, I'm not
 6   making that finding, Mr. Hernandez, but in fairness both to you
 7   and to the defendant I'm allowing that line of questioning.
 8   Okay.  So that's my ruling as to that.
 9           Once again, I'm just seeing that as being consistent
10   with what I've already ordered to be allowed, and that would
11   have been issues that were raised in the motion in limine
12   document 222.
13           Okay.  So that's my ruling as to those motions.  I
14   guess in that way they were renewed motions.
15           Okay.  I'm going to take a very brief recess, though,
16   give the jury a chance to line up, though, Ms. Oliveros are you
17   going to stand?
18           MS. OLIVEROS:  Yes, Your Honor.  I want to just -- We
19   argue -- We argued, I believe, before against the admission of
20   these incidents.  I think they are mini trials.  I think that
21   it's very different what the standards that apply to law
22   enforcement or transit officers or folks imbued with the power
23   of the Government and the power to arrest and detain and use
24   force against other -- against folks, it's very different with
25   respect to an average citizen.  I think that that is irrelevant
```

1  and that it's 404(b) and also violates 403, Your Honor, and I

2  believe we preserved that, but just for the record I want to

3  make sure that I'm preserving that as well.

4          THE COURT:  Okay.  Just to clarify, I'm not allowing

5  it under 404(b), so I'm agreeing with you in that regard.  This

6  being an area for potential impeachment.  Nothing's been

7  established, but in an attempt to impeach, that's a wider

8  margin, and so in that way I'll allow it.

9          Okay.  So we'll be in recess.  We'll give the jury a

10  chance to line up.

11     (Court stood in recess at 9:01 a.m. and resumed at

12     9:06 a.m.)

13  * * * * * * * * * * * * * * * * * * * * * * * * * * * *

14          MS. OLIVEROS:  I don't know if you are or you're not,

15  Your Honor.  I know that the defense has proffered an

16  instruction based on, I believe, the supplemental instruction

17  based on the issue of the disciplinary actions.

18          THE COURT:  Yes.

19          MS. OLIVEROS:  And so if that's the case, then that's

20  going to come in, then we would need this instruction, Your

21  Honor.

22          THE COURT:  Okay.  So let's just put our thumb on

23  Number 14 for the time being.  Let's go back and deal with that

24  one.

25          So I have tendered in document 275, this was

1  defendant's proposed limiting instruction concerning

2  plaintiff's reference to documents in personnel file.  So the

3  language that Ms. Martinez proposes is, as a limiting

4  instruction, "Evidence and testimony concerning any discipline

5  or the termination of Andy Fitzgerald and/or any allegations

6  that he used excessive force or detained other individuals

7  during his employment with the City of Albuquerque cannot be

8  considered in establishing the plaintiff's claims against him."

9       So, all right.  Your position as to that limiting

10 instruction, Ms. Oliveros?  Do you have a copy, by the way?

11      MS. OLIVEROS:  I do, Your Honor.  I had misplaced it

12 for a second.

13      THE COURT:  Okay.

14      MS. OLIVEROS:  No, Your Honor, I don't -- I don't

15 have an objection to this instruction.

16      THE COURT:  Okay.  So what I'm considering, is this

17 kind of goes to that instruction on excessive force, so what I

18 would do is include this as Instruction -- that's Number 7,

19 excessive force, so this particular limiting instruction would

20 be Instruction 7A, kind of logically follows.  So there's no

21 objection.  It will be utilized.  It will be inserted as 7A.

22      MS. MARTINEZ:  Your Honor, I think it actually goes

23 to 7 and 8, because it's also regarding detention, so could I

24 request it be 8A as opposed to 7?  Or, actually, Your Honor,

25 7A's fine.  I withdraw that.  Never mind.

1          THE COURT:  Okay.

2          MS. OLIVEROS:   Your Honor, I think -- I apologize.

3   I think -- I think this instruction has to say -- it has to say

4   "other than any allegation that he used excessive force

5   excluding the present allegations in this case."  And I -- I

6   didn't catch that before.

7          THE COURT:  Okay.  What are you proposing, then?  Let

8   me just --

9          I know I'm keeping folks late in the courthouse

10  because I'm still in session, so I appreciate the time.  So,

11  anyway, I just wanted to mention that.

12         MS. OLIVEROS:  So I think it should say "and/or" on

13  the second line, "and/or any allegations that he used excessive

14  force or detained other individuals during his employment with

15  the City of Albuquerque not" -- Let's see.

16         MS. MARTINEZ:  Your Honor, what if it says "and/or

17  any previous allegations" on the second line?  And I think that

18  would cure counsel's concerns about . . .

19         MS. OLIVEROS:  Or, because it was -- the timing was

20  different when we mentioned some timing was after, in December

21  of 2012, although I don't know that that would cure it.

22         THE COURT:  That would be previous allegations.

23         MS. OLIVEROS:  I think that would be post, Your

24  Honor, December after the August incident.

25         THE COURT:  Oh, of 2000- -- sure.

1          MS. MARTINEZ:  How about "any other allegations"?

2    Does that work?

3          MS. OLIVEROS:  I would say "any allegations other

4    than the allegations in this case."

5          MS. MARTINEZ:  I think that's confusing.

6          THE COURT:  I tend to agree.  I would accept the

7    "any" -- I think it's a legitimate point, Ms. Oliveros, to

8    bring up to qualify this somehow, so I think to do that we'll

9    insert the language "and/or" -- Well, excuse me.  We'll insert

10   the word "other" after "and/or any" to be clear that we're not

11   talking about what is alleged in this particular case.

12         MS. OLIVEROS:  "And/or any."  So just the word

13   "other" after "any," Your Honor?

14         THE COURT:  Correct.  All right.  So that would be --

15   Let's go back to Number 14, then.  So again, there was what I

16   thought was a stipulated instruction, which is Number 14.  Any

17   objection now as to 14?

18         MS. MARTINEZ:  No, Your Honor.

19         MS. OLIVEROS:  No, Your Honor.

20         THE COURT:  I'm going back probably to Number 8.

21         Okay.  Can I draw your attention back to Number 8?

22   All right.  There's no objection to what you currently have.

23   So the instruction refers to arrest, and so what I'm

24   considering is instead of using the word "arrest," adding the

25   word "seizure" or utilizing the word "seizure" or redacting out

1  the word "arrest" where it's currently being used.

2         So let me give you a moment to look that over.

3         And as you're doing that, let me also tell you what

4  I'm considering doing, which is striking what is currently the

5  second paragraph that addresses a warrantless arrest, such as

6  the one involved in this case, so that entire paragraph would

7  be struck.

8         MS. OLIVEROS:  The entire paragraph, Your Honor?

9         THE COURT:  Yeah.  So we're not -- I guess the

10 thinking here is we're really not -- there was no evidence

11 about warrantless seizures.  I understand what the claim is,

12 but to the extent that what we're talking about is the absence

13 of a warrant or whether a warrant was necessary, there was no

14 evidence to that effect in this particular case.

15        So the seizure here, I guess that -- whether there

16 was a seizure would be up to the jury to decide.  Whether they

17 have to go all the way to find that there was an arrest, I'm

18 not so sure that was necessary given what the claim is, and

19 that's why I'm considering just redacting out that particular

20 paragraph.

21        So that would be a substantial change to what we

22 currently have in Number 8.

23        MS. OLIVEROS:  Your Honor, my -- and I might need to

24 relook at that, if I may.  It does talk about probable cause

25 down at the final paragraph, and so I agree that a seizure -- I

1   agree that the focus should be on the seizure, and I just want

2   to make sure that we have the law related to seizures that will

3   help the jury decide on this issue.

4           THE COURT:  A specific instruction relating to

5   seizure?

6           MS. OLIVEROS:  Yes, because we have --

7           THE COURT:  Okay.  So then what I would propose, in

8   addition to striking the language that would be in the

9   paragraph beginning "a warrantless arrest," would be to explain

10  and instruct the jury that a seizure -- words to the effect "a

11  seizure occurs when a reasonable person would believe based on

12  a transit officer's use of physical force or show of official

13  authority that he or she is not free to leave, terminate the

14  encounter, go about his or her business, or otherwise ignore

15  the transit officer's presence," and would add the language at

16  the --

17          Let's go ahead and prepare a draft.  Do you have it?

18  Okay.  It may be easier for the attorneys to look at what we

19  actually have.

20          MS. OLIVEROS:  And, Your Honor, plaintiff filed a

21  Supplemental Request Number 1, document 174, also along these

22  lines.  Let's see.

23          MS. MARTINEZ:  Your Honor, I would just like -- so

24  the final -- the fourth paragraph there -- that's there, I

25  would just like to do a little bit more research on the seizure

 1    issue, because -- and, you know, submit a version for the

 2    defendants with this material change, because -- I agree with

 3    the Court's language.

 4            THE COURT:  You mean the bolded language?

 5            MS. MARTINEZ:  Actually, I do agree with the Court's

 6    language now that I review the bolded language again, so I'm --

 7    I withdraw.  I agree to the Court's language in Jury

 8    Instruction No. 8.

 9            THE COURT:  So it does define to some extent

10    seizure --

11            MS. OLIVEROS:  And, Your Honor, I agree with the

12    definition of seizure here, but I think that -- I think we

13    should also have what -- the language with some modification

14    that Plaintiff's Supplemental Jury -- Requested Jury

15    Instruction No. 1 adds document 274, but we would -- I would

16    suggest that instead of saying "arrest" we would just say

17    "seized" and take out the -- and take out "arrest."  Take

18    out -- I don't know if you have it there in front of you, Your

19    Honor.

20            THE COURT:  I have document 274, but just sticking

21    with Number 8 for the moment as it's modified, and I think you

22    have a copy of the modification which includes added language

23    and also is what is indicated there as a redacted language,

24    would you have any objection to that modification?

25            MS. OLIVEROS:  I don't, Your Honor.  I think it's

1  incomplete, but I don't have an objection to the language that

2  is the proposed modification.

3          THE COURT:  Okay.  All right.  So Number 8 as

4  modified would be used.

5          I sort of jumped back from Number 14.  And I'll get

6  to Number 274 -- Document 274, but first let's get through the

7  remainder of the instructions that I have here.

8          Okay, there was no objection to 14.

9          As to 15?  I also have that as stipulated.

10          MS. MARTINEZ:  That's correct, Your Honor, no

11  objection.

12          THE COURT:  Okay.

13          MS. OLIVEROS:  I'm sorry, Your Honor, I just lost my

14  place.

15          THE COURT:  Sure.

16          MS. OLIVEROS:  No objection, Your Honor.

17          THE COURT:  All right.  16, I also have that as

18  stipulated.

19          MS. MARTINEZ:  No objection, Your Honor.

20          MS. OLIVEROS:  No objection, Your Honor.

21          THE COURT:  Number 17?

22          MS. MARTINEZ:  No objection, Your Honor.

23          MS. OLIVEROS:  No objection, Your Honor.

24          THE COURT:  Number 18?

25          MS. MARTINEZ:  No objection, Your Honor.

```
1              MS. OLIVEROS:  No objection.

2              THE COURT:  All right.  19?

3              MS. MARTINEZ:  No objection, Your Honor.

4              MS. OLIVEROS:  No objection, Your Honor.

5              THE COURT:  Number 20?

6              MS. MARTINEZ:  No objection, Your Honor.

7              MS. OLIVEROS:  No objection, Your Honor.

8              THE COURT:  All right.  21, I also have that as

9    stipulated.

10             MS. MARTINEZ:  No objection, Your Honor.

11             MS. OLIVEROS:  It's stipulated.

12             THE COURT:  Yes.  Okay.  Number 22?

13             MS. MARTINEZ:  There's no evidence on Number 2, Your

14   Honor.  There's no evidence on Number 5.

15             THE COURT:  Okay.  Taking Number 5 first, let me just

16   read that.  So the language is "The reasonable" -- these are

17   the elements.

18             MS. OLIVEROS:  Your Honor, there is no -- there's no

19   testimony on Number 5.

20             THE COURT:  So you'd agree that would be redacted

21   out?

22             MS. OLIVEROS:  Yes.

23             THE COURT:  Okay.  So the language "The reasonable

24   expense of necessary medical care, treatment and services

25   received, and the present cash value of the reasonable expenses
```

1   of medical care, treatment, and services reasonably certain to

2   be received in the future" is struck.  There's no evidence as

3   to that.

4          Okay.  Ms. Martinez, you mentioned Number 2 also.

5          MS. MARTINEZ:  Based on the plaintiff's testimony of

6   not having proof of any injuries, the nature, extent, and

7   duration, there was very scant evidence that he had a hard time

8   swallowing for a month and a half.  That was the testimony,

9   with no medical evidence at all.

10          THE COURT:  All right.  Ms. Oliveros?

11          MS. OLIVEROS:  Your Honor, the testimony that I have

12   in my mind about what Mr. Hernandez testified about is that

13   there was certainly testimony to establish this element and

14   that the jury should decide it.  He talked about when -- He

15   talked about the fact that he didn't have proof.  He did

16   qualify that, and he was talking about his shoulder injury, and

17   then I believe he talked about the nature, extent, and duration

18   of his throat injury, and we don't have to have medical

19   testimony.  The testimony that he gave had a temporal proximity

20   to the harm and was within that time frame, and he testified

21   about it, and he showed some photographs that corroborate his

22   testimony, and the mechanism of injury also corroborates his

23   testimony, Your Honor.  He talked about his shoulders and his

24   elbows having been injured at the bus stop by Fitz- -- And I

25   want to be clear on this.  He put both officers behind him for

```
 1   his shoulders, including Fitzgerald, and he specifically

 2   identified Fitzgerald coming at him with his throat and choking

 3   him, which left marks and gave him pain and also emotional

 4   injuries and anxiety.  And so there is testimony on all of.  On

 5   Number 2, we have sufficient testimony for --

 6           THE COURT:  Well, I understand it's disputed what it

 7   all -- how the jury would accept it.  I think it would be up to

 8   them.  The testimony also included Mr. Hernandez explaining the

 9   effect that the injury had on his tendons, his ligaments.

10   There is no medical testimony, but there is that testimony,

11   including difficulty carrying suitcases, I think he said, when

12   he was on vacation.  That was some period after the event.

13           So I'll find that there is at least the minimal

14   amount of evidence that's in the record to support the giving

15   of the Jury Instruction No. 22 and the second element as to the

16   nature, extent, and duration of the injury.

17           Okay.  As to the remaining portion of that

18   instruction?

19           MS. MARTINEZ:  No objection, Your Honor.

20           THE COURT:  Okay.  For plaintiff?

21           MS. OLIVEROS:  No objection, Your Honor.

22           THE COURT:  Okay.  Number 23?

23           MS. MARTINEZ:  No objection, Your Honor.

24           MS. OLIVEROS:  No objection, Your Honor.

25           THE COURT:  Okay.  Number 24?
```

1              MS. MARTINEZ:  No objection.

2              MS. OLIVEROS:  No objection.

3              THE COURT:  25?

4              MS. MARTINEZ:  No objection, Your Honor.

5              THE COURT:  I have a note here that it's stipulated,

6     but for the plaintiff?

7              MS. OLIVEROS:  Well, Your Honor, there wasn't any --

8     I don't believe there was any testimony that plaintiff

9     didn't -- that plaintiff did -- I think that it was stipulated

10    to in error, but the testimony that we heard is that he

11    didn't -- he didn't claim that his injuries extended for a

12    period -- an extended period of time, and so I don't think a

13    mitigation instruction is appropriate under his testimony.

14             THE COURT:  All right.  With the mitigation, how

15    would this instruction apply here?

16             MS. MARTINEZ:  Well, to the extent that he is going

17    to claim that he has continuing issues.  He never sought

18    treatment for them, so . . .

19             THE COURT:  Okay.  I think that's fine.  So I

20    understand the objection.  So Number 25 will be given as

21    currently drafted.

22             Okay.  Number 26?

23             MS. MARTINEZ:  So this is the instruction that was

24    part of my motion earlier today, Your Honor, so I renew that

25    motion.

1          THE COURT:  Requesting the Court dismiss the claim

2   relating to punitive damages as a sanction for a violation of

3   the Court order?

4          MS. MARTINEZ:  For both a violation of the Court

5   order and the Federal Rules of Evidence, yes.

6          THE COURT:  All right.  Ms. Oliveros?

7          MS. OLIVEROS:  Your Honor, I think that it's -- One,

8   I haven't had the full opportunity, although I have obviously

9   responded to the Court's -- you know, the Court's concerns and

10  findings of the violation of your orders, Your Honor.  I, one,

11  I would like a full opportunity to explain exactly what

12  transpired and why I don't believe there has been a violation

13  of the Federal Rules of -- I don't know if it's Civil Procedure

14  that she's referring to.  If there is a sanction against me,

15  Your Honor, for the way that I -- the way that I interpreted

16  the order and the way that I proceeded with evidence, I believe

17  that that can be cured, and I also believe that my client

18  should not be sanctioned personally with respect to evidence in

19  this case.

20          We have evidence of punitive damages.  We have

21  evidence that Mr. Hernandez was choked by Mr. Fitzgerald while

22  he was in handcuffs, and that he was -- forcibly had his phone

23  taken from him, and that he was thrown down by Mr. Fitzgerald

24  and Mr. Powdrell without any -- without any lawful reason to

25  take his phone.

1          And those facts are -- Those facts are -- should have

2     no bearing on the sanction that the Court is contemplating for

3     my client.  That would be -- That -- I don't believe that's an

4     appropriate sanction, Your Honor.  And there hasn't been a

5     pattern of conduct on behalf of the plaintiff for him to be

6     sanctioned in his case and evidence that has come before the

7     Court, Your Honor.

8          If the Court wants to sanction me, and that's what I

9     understood that the Court might do, I would like, again, full

10     opportunity to explain my conduct and that I should be the one

11     that would be sanctioned.  I don't believe that there is the

12     case law -- And I haven't had a chance to fully research this,

13     but dismissals and sanctions with the lawsuit are extremely

14     rare and considered to be highly -- I believe that they're only

15     granted under extraordinary circumstances, Your Honor, and,

16     like I said, I haven't had a chance to put everything on the

17     record that I would like to, and I think there are some things

18     that the Court may not be aware of in terms of discovery that

19     was provided, like I said, over the weekend with respect to

20     Mr. Fitzgerald and other testimony that we had in his

21     deposition that had -- came into play.

22          THE COURT:  Well, let me just explain.  And I

23     understand all of that.  There is an outstanding order to show

24     cause.  Part of what the Court was considering was the motion,

25     at least in part, for sanction to dismiss the claim for

1    punitive damages.  I'm going to deny that motion.  I am taking

2    under advisement, though, whether or to what extent counsel is

3    or should be sanctioned.  But that's a question that I'm not

4    going to rule on at this time except insofar as denying the

5    motion to dismiss the punitive damages case.

6         I would agree, there is evidence in the record the

7    jury would consider and there at least is enough, minimally

8    enough to warrant an instruction for punitive damages.  So just

9    noting what Ms. Oliveros has explained about the conduct -- the

10   alleged conduct of the transit officers, what is depicted on

11   the video.  So in that respect I'm denying that part of the

12   motion.  The sanction -- Or, excuse me.  The punitive damages

13   instruction will remain.

14        All right.  So that's Number 26.

15        All right.  As to Number 27?

16        MS. MARTINEZ:  No objection, Your Honor.

17        MS. OLIVEROS:  No objection, Your Honor.

18        THE COURT:  Okay.  Number 28?

19        MS. MARTINEZ:  No objection.

20        MS. OLIVEROS:  No objection, Your Honor.

21        THE COURT:  29?

22        MS. MARTINEZ:  No objection, Your Honor.

23        MS. OLIVEROS:  No objection, Your Honor.

24        THE COURT:  And 30?

25        MS. MARTINEZ:  No objection.

1           MS. OLIVEROS:  No objection, Your Honor.

2           THE COURT:  All right.  So getting back to what is

3    filed, document 274, Ms. Martinez, do you have a copy of this?

4           MS. MARTINEZ:  I do, Your Honor.

5           THE COURT:  Okay.  All right.  So, Ms. Oliveros, I'll

6    hear you on this.  This is your supplemental requested jury

7    instruction.

8           MS. OLIVEROS:  Yes, Your Honor.  After the testimony

9    that -- May I -- Shall I sit, Your Honor, or --

10          THE COURT:  You can remain sitting.  That's fine.

11          MS. OLIVEROS:  Okay.  After the testimony yesterday,

12   like I said, the concern was that -- of the confusion with

13   transit officer's authority and arrest, and I believe we needed

14   an instruction on seizure, and so we -- the Supplemental

15   Instruction No. 1 I believe -- And also Mr. Fitzgerald talked

16   about probable cause, and I don't know -- I thought -- I think

17   that that's kind of -- He did -- He did seize -- I mean, we're

18   alleging he did seize my client without probable cause.  I

19   think that this instruction could be helpful, but after

20   considering the arguments today, I would suggest that we modify

21   it so that it would say "The defendant unlawfully seized him

22   without probable cause that he had committed a crime" and then

23   change this to seizures without probable cause violate a

24   person's clearly established Fourth Amendment rights, and

25   change the "arrest" to "seizures."

1          I think this is important to have, because they don't

2    have the framework to understand the -- you know, the nuances

3    of what -- you know, what an officer can do to seize someone

4    and also to handcuff them and detain them, and so I think that

5    we do need the additional law on probable cause as well,

6    because otherwise there's no explanation of what would be --

7    what would be the right to seize someone.

8          THE COURT:  Okay.  Although we did have the language

9    in what is now Number 8 that defines a seizure, which occurs

10   when a reasonable person would believe based on the transit

11   officer's use of physical force or show of official authority

12   that he or she is not free to leave, terminate the encounter,

13   go about his or her business, or otherwise ignore the transit

14   officer's presence.  I'm just noting now what is in the

15   instructions.

16         Ms. Martinez.

17         MS. OLIVEROS:  And if I -- May I -- Your Honor, that

18   is the part once you're seized, and so I think we need the part

19   about the authority to seize, and that is the distinction that

20   I'm drawing, once you are seized, to explain that -- really

21   explain the consent issue, and those are the differences in the

22   two prospectives, Your Honor, and I think they both have to be

23   covered.

24         THE COURT:  Okay, Ms. Martinez.

25         MS. MARTINEZ:   Your Honor, I think that the Court's

 1   Number 8 correctly removed the language from probable cause.

 2   The testimony throughout has been that the officers don't have

 3   legal authority to arrest.  That's what's required by APD, so

 4   the Court's correct in terms of the facts.  And the Court's 8

 5   incorporates the language in counsel's Instruction No. 3 in

 6   document 274.  But I think the Court's Instruction 8 does

 7   what's required based on the facts of this case and the

 8   applicable law.

 9         THE COURT:  Okay.  So as to the motion, what I'm

10   construing as a motion to include what is currently Proposed

11   Plaintiff's Supplemental Requested Jury Instruction No. 1, this

12   is in document 274, so I'm denying that motion given what we

13   currently have in Number 8.  So the seizure, the standard for

14   seizure and the standard for an arrest are two wholly different

15   standards.  I don't see that we have evidence as to an arrest.

16   Certainly there has been evidence relating to a seizure.

17   Probable cause being required for an arrest.  The evidence in

18   the case does not include an arrest in this case.  So that

19   motion is denied.

20         Now, as to Proposed or Requested Supplemental

21   Instruction No. 2, that's, I would say, the same ruling, but

22   any other thoughts on this, Ms. Martinez?

23         MS. MARTINEZ:  No, Your Honor.  For the same reasons

24   as I articulated in writing.

25         THE COURT:  Sure.  And as to Number 3, same position?

```
 1              MS. MARTINEZ:  Same position, and I believe your
 2    Number 8 incorporates that language, Your Honor.
 3              THE COURT:  Okay.  I see that.  All right.
 4              Ms. Oliveros, so I'm denying the motion to include
 5    those supplemental instructions.  I'm noting your objection, of
 6    course, that you would want those included.
 7              All right.  Anything else, any other instructions to
 8    discuss?
 9              MS. MARTINEZ:  Just with regard to the Special
10    Verdict Form, Your Honor.
11              THE COURT:  Okay.
12              MS. MARTINEZ:  It looks like there's a typo in Number
13    4, Andy Fitzgerald's conduct caused plaintiff's actual injury.
14    So it's just missing a "D."
15              THE COURT:  Sure.
16              MS. MARTINEZ:  Number 6, unlawful seizure.  It says
17    "Do you find Andy Fitzgerald's seizure of Alfonso Hernandez was
18    reasonable under the circumstances?"  That presumes that he was
19    seized by my client, and I think there's a factual dispute
20    about whether he was seized by Powdrell and taken into custody
21    by Powdrell or taken into custody and assisted by my client.
22    So I think that that's a fact that the Court —— that the jury
23    needs to determine.  So I just ask that 6 be, "Did Andy
24    Fitzgerald seize plaintiff Alfonso Hernandez?" and then make
25    the 6 Number 7.  "Was it reasonable under the circumstances?"
```

```
 1              And then I renew my objection to the punitive

 2   damages.

 3              THE COURT:  Yes, ma'am.  Okay.

 4              MS. MARTINEZ:  And that's it.

 5              THE COURT:  All right.  I also note what you might

 6   have as Number 10, and there's just another typo there.  You

 7   have now completed the special verdict.  So that would

 8   obviously be corrected.

 9              All right.  And your position on this verdict form

10   for plaintiff?

11              MS. OLIVEROS:  I'm sorry, Your Honor.  I think I was

12   looking at the -- Well, Your Honor, with respect to the

13   argument of Ms. Martinez, there's just -- there's -- the

14   testimony is that Andy Fitzgerald did seize plaintiff and that

15   the only -- the only issue -- the only dispute on that is just

16   that sometimes also Officer Powdrell was there with him.  So

17   there was -- I don't think that this is improper in any way.

18              THE COURT:  Well, as to the seizure, I understand

19   there may be a question as to when the seizure occurred.

20              Is there -- Ms. Martinez, is there a dispute that he

21   was seized?

22              MS. MARTINEZ:  I don't think there's -- So under

23   1983, my client's only responsible for the conduct that he did,

24   that he engaged in, and so if he's not the one that -- that

25   they're not his cuffs, he didn't place them on, and so he's not
```

1    the one that seized him, he can't be responsible or held liable

2    for the conduct of Mr. Powdrell, and so that's my concern with

3    the way it's written.  It invades the province of the jury and

4    assumes that they would find that Fitzgerald did, in fact,

5    seize Mr. Hernandez.  I don't dispute that he was seized, but

6    there's a question as to who seized him.

7            THE COURT:  Okay.  Would it fair, then, if there is a

8    stipulation that he was seized?  I understand the dispute as to

9    who seized him or even maybe at what kind of point he was

10   seized, but it seems the evidence has been established that he

11   was, in fact, seized.

12           MS. MARTINEZ:  Correct, Your Honor, but the jury has

13   to determine who seized him, and I think the way it's written

14   it invades -- So, you know, my request would simply be, was he

15   seized by Mr. Fitzgerald?  If the answer's yes, then proceed

16   on.

17           THE COURT:  Okay.  As to that modification,

18   Ms. Oliveros?

19           MS. OLIVEROS:  I object, Your Honor.  I think that

20   there's -- there's no evidence that he wasn't seized by

21   plaintiff -- by Andy Fitzgerald.  It's -- Andy Fitzgerald even

22   testified that he seized plaintiff and he assisted in the

23   handcuffing, and there's no question of that.  So I think it

24   would be improper for it to be worded any other way.

25           THE COURT:  Well, okay.  So I'm agreeing it's a

1    factual issue for the jury as to whether he was seized.  I
2    understand the question as to who seized Mr. Hernandez.  I
3    can't tell any party to stipulate, so there being no
4    stipulation, then the question will go to the jury as to
5    whether Mr. Hernandez was seized, and so the language would be
6    something to the effect of "Was Mr. Hernandez seized?"  And
7    that would be question Number 6.  And then the remainder of the
8    verdict form will be renumbered.
9            MS. MARTINEZ:  All right, Your Honor, I just want to
10   renew my objection that under 1983 my client cannot be held
11   liable for the conduct of someone else, so that's why I asked
12   "seized by Mr. Fitzgerald."
13           THE COURT:  Okay.  Well, I'm kind of inclined to go
14   with that, but let me just get . . .
15           Yeah, okay.  So the one proposal or way to do this is
16   that Number 6 would basically read:  "Did Mr. Fitzgerald seize
17   plaintiff Hernandez?"  Yes or no.  And if yes, of course they
18   continue on.  If no, then they can stop right there.
19           As to that modification?
20           MS. MARTINEZ:  No objection, Your Honor.
21           THE COURT:  Okay.
22           MS. OLIVEROS:  I'd like to preserve my objection,
23   Your Honor.
24           THE COURT:  Okay.  All right.  So that's how the
25   verdict form will be drafted.

1          Okay.  So I think that covers everything, unless

2    there's anything else.

3          MS. OLIVEROS:  Well, Your Honor, in looking at the --

4    Okay.  In looking at the color-of-law issue, and I need to

5    really pull these up, but there's -- can I give the Court some

6    case law that an officer -- a police officer -- and this -- and

7    I think we could say a transit officer acts under color of law

8    if he violates state or local law provided he acted with the

9    apparent scope of his authority and office?  And that's at

10   Monroe v. Pape, 365 U.S. 167, a 1961 case, Your Honor.

11         Okay.  And then there's another similar case that

12   stands for the proposition that a public officer also acts

13   under color of state law when not compelled by law -- I'm not

14   quoting this, Your Honor -- when not compelled by law, he acts

15   with the range of legally authorized discretion in enforcing

16   state and local law.  And that's Hague v. CIO, 307 U.S. 496,

17   and that's a 1939 case, Your Honor.

18         I think it's very important that we include in the

19   color of law that local law is included.  I believe under the

20   case law that I've seen that it is included, and I've never had

21   a defendant not stipulate to color of law yet in my career, but

22   I think that -- I think because of the transit authority and

23   the questions that we have and that he's a City employee, that

24   we need to make sure that the jury understands that -- they

25   have testimony for color of law, but they need to have the law

 1   saying that it applies to a local municipality to be fair.

 2          THE COURT:  Okay.  Anything more on that,

 3   Ms. Martinez?

 4          MS. MARTINEZ:  I don't have anything further.

 5          THE COURT:  Okay.  Let me just -- Did we get the

 6   citations?  So we'll look at that.  I should be able to give

 7   you a ruling in the morning.  We'll try to do that as soon as

 8   possible.  And that's as to inserting language relating to

 9   color of law beyond what we have there as to the state of

10   New Mexico.

11          Okay.  There being nothing else -- Let me just make

12   sure, is there anything else?  Nope?  Okay.

13          MS. OLIVEROS:  Well, Your Honor, we did -- we did

14   file another -- a second Supplemental Jury Instruction 276.

15          THE COURT:  All right.

16          MS. OLIVEROS:  Document 276.  And this was in

17   response to the Court's concern --

18          THE COURT:  Oh, yes, right.

19          MS. OLIVEROS:  -- with the -- with the testimony --

20   or the question that was asked about the City being a judgment,

21   Your Honor, in reference to 411.  So we are -- we have -- In

22   light of the Court's concern and in light of the evidence,

23   we've submitted this supplemental jury instruction, Your Honor.

24          THE COURT:  Yeah, I appreciate the proposed

25   instruction.  We talked about this having -- We're having some

1  difficulty coming up with something that captures the concern

2  that I had when the question was asked about Mr. Fitzgerald

3  having any, I think, arguable bias because he was terminated by

4  the City.  So that came out in examination.  The answer -- The

5  question was not answered, but the question I think was

6  certainly out there.

7          MS. MARTINEZ:  Yeah, the City would satisfy any

8  judgment against you.  And I think, Your Honor, this jury

9  instruction doesn't -- is not in line with the facts of the

10  case because it refers to insurance, and so it just creates a

11  ton of confusion about whether there's insurance and who has

12  insurance, so I think it creates more problems than it solves.

13  And again, I -- I've gone through this to try to figure out

14  what an appropriate limiting instruction would be, and it's

15  really difficult to come up with anything.  But I do object to

16  this instruction, Your Honor.

17          THE COURT:  So the answer was not given to the

18  question.  In other words, Ms. Oliveros asked the question,

19  Mr. Fitzgerald did not answer.  I do have already in the

20  instructions that statements, questions, arguments by counsel

21  are not evidence and that the jury must base their verdict only

22  on the evidence and the law.

23          I do have, as I said yesterday, some concerns about

24  what was uttered in the question, and even though it's not

25  technically within the restrictions of Rule 411, it does give

1   the jury at least some inappropriate, improper basis to render

2   a verdict.  So that was the -- that's the spirit.  That's what

3   I'm referring to as the spirit of 411.

4          And so -- But, nevertheless, as to already -- the

5   jury instructions already have what is clearly that the jury

6   should base their instructions only on the facts in evidence

7   and the law that I give them, then we may not need an

8   additional instruction.  So I guess all of that by saying I

9   appreciate the proposed instruction, Ms. Oliveros, but in

10  thinking about it a little bit more, I think the final

11  instructions as currently drafted and that will be given to the

12  jury may address the concern.  The jurors are presumed to

13  follow the instructions, and so in that way we may not need

14  that additional instruction.  My concern remains the same, but

15  I think given what we have already it may be remedied.

16         Okay.  So that's where I'm inclined to go,

17  Ms. Martinez.

18         MS. MARTINEZ:  I don't have anything further.  Thank

19  you, Your Honor.

20         THE COURT:  Okay.  All right.  So that's what we

21  have.  Then we'll be in recess until tomorrow morning.

22         Let me ask the question.  As to closing arguments,

23  how much time do you need for entire closing, rebuttal?

24         MS. OLIVEROS:  I'd like 45 minutes, Your Honor.

25         THE COURT:  Okay.  Do you want to reserve 15 minutes

1   of that for rebuttal?

2          MS. OLIVEROS:  Yes.

3          THE COURT:  Okay.  So 30 and 15.

4          Ms. Martinez, you'll have equal time.

5          MS. MARTINEZ:  Sure.  Thank you.

6          THE COURT:  Feel free to use it all.  You're not

7   required to do it, but you'll have at least that opportunity.

8          MS. MARTINEZ:  Thank you, Your Honor.

9          THE COURT:  Okay.  We'll be in recess.  I'm just

10  going to tidy up here, but you may just carry on.  See you

11  tomorrow.  Have a good night.

12      (Court stood in recess at 6:20 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2   UNITED STATES OF AMERICA

 3   DISTRICT OF NEW MEXICO

 4

 5        I, Danna Schutte Everett, RPR, CCR, CRR, Official

 6   Court Reporter for the State of New Mexico, do hereby

 7   certify that the foregoing pages constitute a true

 8   transcript of proceedings had before the said Court held

 9   in the city of Albuquerque Las Cruces, New Mexico, in the

10   matter therein stated.

11        In testimony whereof, I have hereunto set my hand on

12   this 5th day of June, 2019.

13

14                    _____

15                    DANNA SCHUTTE EVERETT
                      Registered Professional Reporter
16                    Registered Merit Reporter
                      Certified Realtime Reporter
17                    NM Certified Court Reporter #139
                      100 Church Street
18                    Las Cruces, New Mexico  88001
                      Phone:  (575) 528-1656
19                    Fax:  (575) 528-1645
                      dannadawn@comcast.net
20

21

22   May 29, 2019, Hernandez vs. Fitzgerald

23

24

25
```