**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**December 30, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

---

ALFONSO HERNANDEZ,

     Plaintiff - Appellant,

v.

ANDY FITZGERALD,

     Defendant - Appellee,

and

AKEEM POWDRELL; CITY OF
ALBUQUERQUE,

     Defendants.

No. 19-2102
(D.C. No. 1:14-CV-00964-KG-SCY)
(D.N.M.)

---

## ORDER AND JUDGMENT*

---

Before **LUCERO**, **EBEL**, and **MORITZ**, Circuit Judges.

---

Alfonso Hernandez appeals the district court's orders granting summary

judgment to Andy Fitzgerald on Hernandez's state-law tort claims, denying

Hernandez's motion for judgment as a matter of law on his 42 U.S.C. § 1983 claim

against Fitzgerald for unlawful seizure, implementing a sanction against Hernandez

for discovery violations, and excluding one of Hernandez's witnesses from trial. For

---

     * This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

the reasons explained below, we affirm the district court's trial rulings but reverse its summary-judgment order.

## Background

The following facts were developed at trial. One evening in August 2012, two transit security officers (TSOs)—Fitzgerald and Akeem Powdrell—approached an apparently homeless man, Manuel Bustamante, at a bus stop in Albuquerque, New Mexico. Powdrell testified that he saw Bustamante drinking and intoxicated at the bus stop, asked Fitzgerald to detain Bustamante, called the police to have them issue a criminal-trespass warning to Bustamante, and walked a short distance to a nearby transit center to obtain some paperwork. Hernandez witnessed this interaction, and while Powdrell walked to the transit center, Hernandez approached the bus stop, sat on the bench with Bustamante, and began video recording the interaction between Bustamante and Fitzgerald on his cell phone. Hernandez was also carrying an audio recording device in his pocket.

Fitzgerald testified that he became upset about Hernandez video recording him. He said that he asked Hernandez why he was "filming," and Hernandez responded by standing up and trying to punch him. App. vol. 4, 946. Fitzgerald said that he then went into "survival mode"—deflecting the punch—but he could not remember much about the rest of the interaction. *Id.* at 895. Hernandez, for his part, testified that when Fitzgerald saw him with the phone, he attacked Hernandez and tried to take the phone away. Fitzgerald confirmed that he took Hernandez's phone from him.

2

Powdrell returned during the altercation between Fitzgerald and Hernandez. At some point, Hernandez was handcuffed and placed on the ground. Hernandez testified that after he was handcuffed, Fitzgerald had both hands on his neck, choking or strangling him and causing Powdrell to repeatedly shout Fitzgerald's first name. The recording of the incident includes audio of a voice repeating Fitzgerald's first name. On direct examination, Powdrell said that was his voice, and he "was telling [Fitzgerald] to let go of [Hernandez]." App. vol. 4, 962. But on cross-examination, Powdrell admitted that in an earlier deposition, he testified that although he was trying to calm Fitzgerald, Fitzgerald was not touching Hernandez at the time. Fitzgerald also testified that he did not choke Hernandez.

After Hernandez was handcuffed, a police officer arrived and began investigating; Hernandez did not tell the officer that he had been assaulted. The officer issued Hernandez a criminal-trespass notice and released his handcuffs.

Hernandez then filed this action, bringing a variety of claims against Fitzgerald, Powdrell, two police officers, and the City of Albuquerque under both § 1983 and the New Mexico Tort Claims Act (NMTCA), N.M. Stat. Ann. §§ 41-4-1 to 41-4-30. Relevant here, the district court dismissed all Hernandez's NMTCA claims after concluding that Fitzgerald and Powdrell were not law-enforcement

officers under the provisions of that statute and were therefore immune from Hernandez's tort claims.[1]

Hernandez's § 1983 claims for excessive force and unlawful seizure against Fitzgerald proceeded to trial. The parties' theories of the case differed dramatically. According to Hernandez, this incident occurred because he had long worked with and advocated on behalf of homeless individuals, many of whom face harassment by TSOs. But according to Fitzgerald, Hernandez only filed this suit in an attempt to obtain damages from the city. In support, Fitzgerald established that Hernandez had previously filed similar lawsuits against police officers with claims of false arrest and excessive force.

During trial, the district court allowed defense counsel to cross-examine Hernandez about whether he had been sanctioned by the court for providing incomplete and untruthful answers to interrogatories. The district court also excluded one of Hernandez's witnesses. Ultimately, the jury found in favor of Fitzgerald, including specifically finding that Fitzgerald did not seize Hernandez. The district court later denied Hernandez's renewed motion for judgment as a matter of law.

Hernandez now appeals, raising four issues. We review each in turn.

---

[1] The district court also dismissed all Hernandez's claims against the City and the police officers, as well as the § 1983 claims against Powdrell. Those rulings are not before us on appeal.

## Analysis

### I.   Waiver of Immunity Under the NMTCA

Hernandez first argues that the district court erred in awarding summary judgment to Fitzgerald on the basis that Fitzgerald was not a law-enforcement officer as that term is defined in the NMTCA and was therefore immune from Hernandez's tort claims.[2] We review de novo both the district court's grant of summary judgment and its statutory interpretation. *Elephant Butte Irrigation Dist. of N.M. v. U.S. Dep't of Interior*, 538 F.3d 1299, 1301 (10th Cir. 2008). We will affirm the district court's grant of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

As a general matter, the NMTCA immunizes governmental employees and entities from tort liability. N.M. Stat. Ann. § 41-4-4. But the statute waives that immunity in specific instances. N.M. Stat. Ann. §§ 41-4-5 to 41-4-12. Relevant here, the statute waives immunity for certain torts "when caused by law[-]enforcement officers while acting within the scope of their duties." § 41-4-12. At the time of the bus-stop altercation and the ensuing trial, the statute defined a law-enforcement officer as "a full-time salaried public employee of a governmental entity . . . whose principal duties under law are to hold in custody any person accused of a criminal

---

[2] The district court's ruling also applied to Powdrell and affected the liability of the City. But because neither Powdrell nor the City are parties to this appeal, we discuss this issue solely as it relates to Fitzgerald.

offense, to maintain public order[,] or to make arrests for crimes."[3] N.M. Stat. Ann.

§ 41-4-3(D).

Here, the district court concluded that the law-enforcement waiver did not

apply. In so doing, it placed great weight on whether a TSO's principal duties include

"the arrest and detention of accused persons." App. vol. 2, 394 (quoting *Limacher v.

Spivey*, 198 P.3d 370, 374 (N.M. Ct. App. 2008)). And because no one disputed that

Fitzgerald lacked authority to arrest or detain accused individuals, the district court

held that he was not a law-enforcement officer under the NMTCA. It also cursorily

rejected Hernandez's argument that TSOs are law-enforcement officers because they

maintain the public order.

On appeal, Hernandez argues that the district court erred in concluding that

Fitzgerald was not a law-enforcement officer under the NMTCA.[4] In particular,

---

[3] In 2020, New Mexico amended this definition to, among other things, omit the phrase "principal duties." *See* Senate Bill 5, sec. 14, 2020 N.M. Laws Ch. 5. Hernandez argues that this amendment bolsters his argument that TSOs are law-enforcement officers, and he further argues that the amendment applies retroactively. But the NMTCA "is a remedial act which applies only prospectively, in the absence of expressed legislative intent to make it retroactive." *Methola v. Eddy Cnty.*, 622 P.2d 234, 237 (N.M. 1980). And Hernandez fails to point to any evidence showing that the legislature intended the amendment to be retroactive. We therefore reject his invitation to apply this amended language.

[4] Fitzgerald contends that Hernandez "conced[ed]" this issue by failing to file a response to the City's motion for summary judgment, which initially raised the issue of the law-enforcement waiver. Aplee. Br. 42. But the record belies Fitzgerald's contention that Hernandez conceded this issue: Hernandez argued (albeit in other pleadings) that the law-enforcement waiver should apply, and the district court considered and rejected his arguments.

Relatedly, Fitzgerald suggests that Hernandez failed to preserve these arguments because Hernandez did not renew his opposition to summary judgment in his posttrial motion for judgment as a matter of law. But this renewal procedure is

Hernandez contends that the district court misinterpreted the statutory definition by requiring an NMTCA law-enforcement officer to have authority either to arrest someone or to hold someone in custody.

To assess this argument, we begin with the statutory language. *Hasan v. Chase Bank USA N.A.*, 880 F.3d 1217, 1218–19 (10th Cir. 2018). The statute provides that an individual is a law-enforcement officer if his or her "principal duties under law are [1] to hold in custody any person accused of a criminal offense, [2] to maintain public order[,] *or* [3] to make arrests for crimes." § 41-4-3(D) (emphasis added). And consistent with the ordinary meaning of the word "or," New Mexico courts have specifically held "this statutory language to be disjunctive." *Limacher*, 198 P.3d at 372; *see also Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018) (noting that "'or' is 'almost always disjunctive'" (quoting *United States v. Woods*, 571 U.S. 31, 45 (2013))). In other words, the law-enforcement waiver applies so long as the individual's principal duties include at least one of the three statutorily enumerated duties. *Limacher*, 198 P.3d at 372. Further, New Mexico courts define "principal duties" as "those duties to which [officers] devote a majority of their time." *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 916 P.2d 1313, 1317 (N.M. 1996).

---

required to preserve a factual, sufficiency-of-the-evidence challenge to the denial of summary judgment. *See Ortiz v. Jordan*, 562 U.S. 180, 189–90 (2011). Here, Hernandez appeals an order *granting* summary judgment. Moreover, he presents a legal argument—that the district court erred in concluding, as a matter of law, that Fitzgerald is not a law-enforcement officer under the NMTCA. Thus, we reject Fitzgerald's preservation arguments and reach the merits of this issue.

To determine whether Fitzgerald's principal TSO duties satisfy the NMTCA's definition of law-enforcement officer, the district court properly turned to the TSO job description. *See Rayos v. N.M. Dep't of Corr.*, 336 P.3d 428, 431 (N.M. Ct. App. 2014) (stating that courts may consider departmental job descriptions, affidavits, statutes, or regulations in determining principal duties of public employees because "not all duties of public employees are enumerated in a statute or regulation"). But in reviewing that job description, the district court did not assess whether the duties described constituted maintaining public order. Instead, the district court reached its conclusion in two sentences that focused primarily on arrest and custody:

> TSOs do not carry guns[;] they have no authority to arrest or provide medical attention[;] and they are not licensed by the State of New Mexico as security officers. They are not involved with the pre[]indictment and post[]judgment phases of the criminal process[,] and they do not handle the custody of criminal subjects, arrestees[,] or convicted criminals.

App. vol. 2, 395–96.

Because the district court's brief discussion omitted any public-order analysis, we undertake our own de novo analysis by comparing the statutory phrase "maintain public order" with the TSO job description. § 41-4-3(D); *see also Rayos*, 336 P.3d at 431.[5] The statute does not specifically define the phrase "maintain public order." But

---

[5] In comparing the statutory phrase to the job description, we follow the lead of the New Mexico courts, which routinely do the same, without regard for whether a job description labels any duties as "principal." *See Baptiste v. City of Las Cruces*, 848 P.2d 1105, 1107–08 (N.M. Ct. App. 1993) (looking at duties listed under "[j]ob [d]escription"); *Vigil v. Martinez*, 832 P.2d 405, 410–12 (N.M. Ct. App. 1992) (same).

relevant caselaw provides that "for an employee to fall within the exception for maintaining public order, that person's duties must be traditional law[-]enforcement duties that directly impact public order." *Limacher*, 198 P.3d at 374. The traditional duties of law enforcement officers are "admittedly amorphous," so the inquiry is fact-specific and "informed by a practical, functional approach as to what law enforcement entails today." *Coyazo v. State*, 897 P.2d 234, 237–39 (N.M. Ct. App. 1995). Traditional law-enforcement duties that directly impact public order include "preserving the public peace, preventing and quelling public disturbances, and enforcing state laws, *including but not limited to* the power to make arrests for violation of state laws." *Limacher*, 198 P.3d at 376 (emphasis added); *see also Baptiste*, 848 P.2d at 1107 ("Maintaining public order can be accomplished without the power to arrest.").

As for the TSO job description, the position summary states that TSOs will "[p]rovide [24-]hour security services for assigned [c]ity facilities and property, including vehicles and equipment; protect facilities from unlawful intrusion and criminal acts[;] and ensure public safety." App. vol. 1, 196. Providing security services to protect against criminal acts and to ensure public safety constitutes a traditional law-enforcement duty that directly impacts the public order.

Further, the description of a TSO's essential functions includes providing security services, conducting periodic patrols, regulating the flow of city employees and the public to ensure safety, providing crowd and traffic control as needed, responding to calls for service and reports of crimes in progress, calling for

emergency medical or police services as needed, assisting law-enforcement agencies as needed, conducting preliminary investigations to determine if a crime has been committed, documenting incidents and preparing reports, providing general assistance to the public, and preparing a variety of reports regarding security enforcement activities. And preferred skills and ability for TSOs include providing security services; investigating crimes; enforcing city codes, ordinances, rules, and regulations; and effectively using an expandable baton, handcuffs, and chemical agents. Aside from the absence of a gun and the authority to arrest, a TSO's job seems nearly identical to "the normal, commonplace activities of . . . a police officer on patrol." *Coyazo*, 897 P.2d at 237–38.

Nevertheless, the TSO job description also includes other duties that might not constitute traditional police duties, such as conducting fire- and safety-hazard inspections and receiving and documenting lost and found articles. And on this record, we do not know which duties are the TSO's *principal* duties. *See Weinstein*, 916 P.2d at 1317. And without that information, we cannot conclude, as a matter of law, whether TSOs are—or are not—law enforcement officers. *See Baptiste*, 48 P.2d at 180–81 (reversing dismissal of NMTCA claims against animal-control officers because job description did not demonstrate "whether duties with respect to the maintenance of public order constitute[d] the principal duties"). Further, Fitzgerald, as the party moving for summary judgment, carries the burden of showing the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(a). Here, that burden includes establishing as a matter of law that TSOs are not law-enforcement officers.

And because genuine issues of material fact remain as to whether a TSO's principal duties constitute maintaining public order, Fitzgerald has failed to meet his burden. We therefore reverse the district court's order awarding summary judgment to Fitzgerald on Hernandez's tort claims and remand for further proceedings on those claims.

## II.   Unlawful Seizure

Next, Hernandez contends that the district court erred in denying his motion for judgment as a matter of law on his unlawful-seizure claim against Fitzgerald. We review this challenge de novo. *Mountain Dudes v. Split Rock Holdings, Inc.*, 946 F.3d 1122, 1129 (10th Cir. 2019). In doing so, we draw "[a]ll reasonable inferences . . . in favor of the nonmoving party," avoid "credibility determinations," and do not "weigh the evidence." *Id.* at 1130 (quoting *Liberty Mut. Fire Ins. Co. v. Woolman*, 913 F.3d 977, 983 (10th Cir. 2019)). "Judgment as a matter of law . . . 'is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position.'" *Id.* (quoting *In re Cox Enters., Inc.*, 871 F.3d 1093, 1096 (10th Cir. 2017)); *see also* Fed. R. Civ. P. 50.

An individual "is seized" when a law-enforcement officer, "'by means of physical force or show of authority,' terminates or restrains [the individual's] freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). For instance, handcuffing generally constitutes seizure. *See United States v. Salas-Garcia*, 698 F.3d 1242 (10th Cir. 2012) ("Under certain circumstances, the use of handcuffs can amount to an

unreasonable seizure."); *Lundstrom v. Romero*, 616 F.3d 1108, 1122 (10th Cir. 2010) (analyzing reasonableness of using handcuffs to seize individual; describing handcuffing as "greater than a de minimus intrusion") (quoting *United States v. Albert*, 579 F.3d 1188, 1193 (10th Cir. 2009))).

Here, the jury specifically found that Fitzgerald did not seize Hernandez. But Hernandez argues that because the evidence unquestionably shows that he was handcuffed, this finding is "wholly unreasonable and should be reversed." Aplt. Br. 23. Yet in so doing, Hernandez fails to acknowledge a critical point: the evidence regarding *who placed the handcuffs on him* was contradictory. Hernandez testified that he did not know who placed him in handcuffs because he was facedown at the time. Fitzgerald, for his part, testified variously (1) that he did not remember much of the incident, (2) that he did not place the handcuffs on Hernandez, (3) that Powdrell placed the handcuffs on Hernandez, and (4) that he helped Powdrell place the handcuffs on Hernandez. Powdrell's testimony was equally unclear. On direct examination, he said that Fitzgerald was already handcuffing Hernandez when he returned from the transit center and that he "went to assist" Fitzgerald. App. vol. 4, 964. But on cross-examination, defense counsel impeached Powdrell with his incident report, where Powdrell wrote that he—not Fitzgerald—placed Hernandez in handcuffs. Still on cross-examination, Powdrell then stated that he did not recall whether he placed Hernandez in handcuffs, only to further admit that, according to his earlier deposition testimony, he was the one who handcuffed Hernandez. Finally, on redirect examination, Powdrell said that they both handcuffed Hernandez.

12

Thus, although Hernandez was seized, the evidence does not definitively establish who seized him. Because the handcuffing evidence does not "point[] but one way," Hernandez is not entitled to judgment as a matter of law on this basis. *See Mountain Dudes*, 946 F.3d at 1129.

Hernandez alternatively argues that the evidence unquestionably shows that Fitzgerald seized him by continuing to apply physical force to him after he was handcuffed. Yet it is not clear whether continued application of physical force—notwithstanding the handcuffing—is a different seizure. The case that Hernandez cites for this proposition does not involve physical force; it assesses the reasonableness of a traffic stop. *See United States v. Jacquez*, 284 F. App'x 544, 546 (10th Cir. 2008) (unpublished). Nevertheless, assuming for the purposes of argument that the continued application of force could constitute a separate seizure, Hernandez's argument fails on the facts.

Hernandez points to his own testimony to support his claim that Fitzgerald continued to use force against him. Specifically, he relies on his testimony that Fitzgerald had both hands on his neck, choking or strangling him—which he asserts is undisputed because Fitzgerald has no memory to the contrary. True, Fitzgerald did testify that he did not remember using physical force on Hernandez after he was handcuffed. But Fitzgerald also testified that he did not use force against Hernandez after Hernandez was handcuffed. And Powdrell's testimony on this point was likewise inconsistent. Powdrell testified both that Fitzgerald had his hands on Hernandez, near Hernandez's neck, and that Fitzgerald never touched Hernandez.

13

Viewing this evidence in a light most favorable to Fitzgerald, the jury could have reasonably concluded that Fitzgerald did not continue to use force against Hernandez while he was handcuffed and therefore did not seize Hernandez. *See Mountain Dudes*, 946 F.3d at 1130. Accordingly, Hernandez is not entitled to judgment as a matter of law on this basis.

In sum, because a reasonable jury could conclude that Fitzgerald did not seize Hernandez, we affirm the district court's denial of Hernandez's motion for judgment as a matter of law.[6]

## III.   Sanction for Discovery Violations

Next, Hernandez argues that the district court abused its discretion by allowing defense counsel to question him at trial about the pretrial finding that he was untruthful in his discovery responses. During discovery, Fitzgerald asked Hernandez in an interrogatory about his prior arrests, criminal charges, convictions, or citations (the arrest interrogatory). He also asked Hernandez to list all his contacts with law enforcement over the past seven years (the contact interrogatory). Because

---

[6] In denying Hernandez's motion, the district court did not address the jury's no-seizure finding. Instead, the district court assumed that a seizure occurred and found a "legally sufficient basis for the jury to conclude that any seizure of [Hernandez] was lawful" based on Fitzgerald's "probable cause" to believe Hernandez committed battery after Fitzgerald testified that Hernandez "took a swing" at him. App. vol. 3, 803. We express no opinion on the district court's rationale and instead affirm the district court's result for the reasons explained in the text. *See United States v. Margheim*, 770 F.3d 1312, 1325 (10th Cir. 2014) (affirming district court's result for different reason); *Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999) ("This court can affirm the district court's decision . . . for any reason supported by the record.").

Hernandez's vague answers did not fully respond to the information sought,

Fitzgerald filed a motion to compel. The court ordered Hernandez to supplement his

answers to both interrogatories. In response, Hernandez chose not to supplement his

answer to the arrest interrogatory, stating that his answer was complete "to the best of

[his] recollection." App. vol. 2, 367 (alteration in original) (quoting *id.* at 303). For

the contact interrogatory, he supplemented his answer to include several interactions

with officers. But Fitzgerald obtained records from various law-enforcement agencies

showing that Hernandez had additional arrests and law-enforcement contacts that

Hernandez failed to disclose in the original or supplemented answers. Fitzgerald then

moved for sanctions against Hernandez for the discovery violations.

　　　　The district court noted that it was "difficult to accept" that Hernandez "simply

forgot" this information, given the nature of the request and the "lack of diligence

[Hernandez] ha[d] displayed throughout the course of litigation." *Id.* at 374. It then

determined that Hernandez's "incomplete responses" to the interrogatories prejudiced

the defendants and warranted sanctions. Specifically, the court required Hernandez to

pay the costs of Fitzgerald's motion and permitted defense counsel to cross-examine

Hernandez at trial about his failure to provide complete responses to these

interrogatories. *Id.* at 376.

　　　　In response, Hernandez filed a motion in limine seeking to exclude some of the

information that was subject to the interrogatories and to clarify the scope of the

sanction. The district court largely denied Hernandez's motion, ruling that although

defense counsel could not question Hernandez about the substance of the arrest

15

interrogatory, defense counsel could nevertheless ask about the contact interrogatory and about Hernandez's "failure to answer multiple interrogatories, more than once, even when [Hernandez] was ordered . . . to provide true and complete answers." App. vol. 3, 761.

At trial, defense counsel cross-examined Hernandez about the interrogatories, asking him if he "provide[d] . . . complete and truthful information." App. vol. 5, 1234. Hernandez initially responded that he "did to the best of [his] knowledge." *Id.* Defense counsel then asked if seeing the sanctions order would "refresh [Hernandez's] recollection about whether sanctions were issued against [him] for failing to give . . . truthful information." *Id.* At this point, Hernandez's counsel objected and attempted to distinguish the completeness of the interrogatory answers from the truthfulness of those answers. The district court allowed the question, ruling that the sanctions order related to both completeness and truthfulness. When cross-examination resumed, Hernandez acknowledged that he was "sanctioned for failure to give . . . complete and truthful discovery responses." *Id.* at 1237. Defense counsel also referenced the sanction in closing argument, noting that Hernandez did not give "truthful responses in this litigation" until ordered by the court. *Id.* at 1385.

On appeal, Hernandez does not challenge the decision to impose the sanction. Instead, he appeals the scope of the sanction, arguing that allowing the jury to hear the district court's finding that his interrogatory responses were untruthful—as opposed to merely incomplete—was improper and prejudicial. Our review is for abuse of discretion. *See Okla. Federated Gold & Numismatics, Inc. v. Blodgett*, 24

F.3d 136, 139–40 (10th Cir. 1994) (explaining that district court has discretion to

impose discovery sanctions that are just and proportionate to violation); *Rasmussen*

*Drilling, Inc. v. Kerr-McGee Nuclear Corp.*, 571 F.2d 1144, 1154 (10th Cir. 1978)

("A trial court is vested with wide discretion to state the facts and to comment on the

evidence in charging the jury."). "A district court abuses its discretion where it

commits a legal error or relies on clearly erroneous factual findings, or where there is

no rational basis in the evidence for its ruling." *Breakthrough Mgmt. Grp., Inc. v.*

*Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 (10th Cir. 2010) (quoting

*Trentadue v. FBI*, 572 F.3d 794, 806 (10th Cir. 2009)).

Hernandez first argues that permitting questions about his untruthful answers

to the interrogatories went beyond the scope of the sanctions order and the order on

the motion in limine. As a result, he argues, he lacked notice "that the jury would be

informed that the [district c]ourt found [him] untruthful," and therefore he could not

properly prepare for trial and was "irreparably prejudiced." Rep. Br. 8. But the

sanctions order made clear that the district court disbelieved Hernandez's contention

that he forgot about the omitted information. Thus, in context, the sanctions order

permitting Fitzgerald to cross-examine Hernandez "regarding his failure to provide

complete responses" was sufficiently broad to include Hernandez's untruthfulness.

App. vol. 2, 382. Moreover, the order denying Hernandez's limine motion reiterated

that Fitzgerald could ask Hernandez about "his failure to answer multiple

interrogatories" even after being ordered "to provide true and complete answers."

17

App. vol. 3, 761. Accordingly, the district court did not abuse its discretion by permitting questions that were within the scope of the sanctions and limine orders.

Next, Hernandez argues that the district court abused its discretion because permitting the questioning was "tantamount to a comment by the court" regarding his character for truthfulness. Aplt. Br. 39. But Hernandez lacks any affirmative authority to support his argument. Instead, he attempts to distinguish two cases where we found that the district court did not abuse its discretion by commenting about the respective litigants in front of the jury. In *Rasmussen Drilling*, the district court noted, in the jury's presence, that a witness's answers about certain photographs were misleading. 571 F.2d at 1154. And in rejecting the plaintiff's later motion for a mistrial, the district court explained that its "remarks, if disparaging, went to the [witness's] *specific testimony*," not the witness's character. *Id.* (emphasis added). On appeal, we found no abuse of discretion in the district court's remarks. *Id.* And in *Oklahoma Federated Gold*, the district court sanctioned a litigant for his discovery violations by preventing him from testifying at trial and told the jury as much. 24 F.3d at 140–41. We held that the district court's comments did "not rise to the level of an abuse of discretion." *Id.* at 141.

Here, Hernandez argues that he suffered more prejudice in front of the jury than the plaintiffs in *Rasmussen* or *Oklahoma Federated* because the question at issue was about his character for truthfulness in a case that turned on his credibility. But on the contrary, *Rasmussen* is precisely on point: it explained that even explicit comments from the court pertaining only to particular pieces of evidence are

18

appropriate so long as they do not go to the witness's character as a whole. *See Rasmussen*, 571 F.2d at 1154. Similarly, the district court's decision here to allow defense counsel's question about whether Hernandez provided truthful answers to interrogatories did not bear on Hernandez's character for truthfulness writ large. Moreover, in *Oklahoma Federated*, this court found no abuse of discretion even though the district court's comments on the litigant's discovery failures were lengthier and more detailed than the brief question at issue here. *See* 24 F.3d at 141 (describing district court's comments as "not being ideal in terms of brevity and characterization"). As such, it does not "affirmatively appear[] from the record" that the district court abused its discretion by permitting defense counsel to question Hernandez about his untruthful answers to the interrogatories. *Rasmussen*, 571 F.2d at 1149.

## IV.   Exclusion of Witness

Finally, Hernandez argues that the district court erred in excluding one of his proffered witnesses, Raquel Aguilera. Our review is for abuse of discretion. *Breakthrough Mgmt.*, 629 F.3d at 1189.

At trial, Hernandez sought to establish that his motive to record the interaction between Fitzgerald and Bustamante stemmed from his volunteer work on behalf of homeless individuals, seeking to rebut Fitzgerald's "assertion that he has a different motive, that he's litigious, and that he hates cops, and he hates the [C]ity." App. vol. 4, 1058. As such, Hernandez attempted to call Aguilera as a witness to corroborate his motive by testifying that she saw Hernandez feeding homeless individuals.

Fitzgerald objected, arguing that Aguilera would provide improper character evidence. He further argued that Hernandez failed to provide timely notice of Aguilera's testimony because Hernandez did not identify her as a potential witness until nearly midnight on "the last day of discovery." App. vol. 5, 1279. Ruling on this dispute, the district court barred Aguilera from testifying for two independent reasons: her testimony would be impermissible character evidence under Federal Rule of Evidence 608, and Hernandez failed to provide sufficient notice of Aguilera as a witness.

On appeal, Hernandez contests only the district court's notice determination. As a result, he waived any challenge to the improper-character-evidence determination. *See San Juan Citizens All. v. Stiles*, 654 F.3d 1038, 1056 (10th Cir. 2011) (finding argument waived because appellant "raised the issue insufficiently in its opening brief"). Because the district court's character-evidence ruling is an independent basis for excluding Aguilera's testimony, we need not address Hernandez's separate argument challenging the court's alternative ruling based on inadequate notice. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004) (stating that court "need not address" argument where district court's ruling "would still stand on the alternative ground which was not appealed"). We therefore affirm the district court's ruling excluding Aguilera's testimony.

## Conclusion

In sum, we affirm the district court's orders denying Hernandez's posttrial motion for judgment as a matter of law, allowing defense counsel to question

Hernandez about being sanctioned for providing untruthful interrogatory answers, and excluding Aguilera's testimony. But because the district court erred in concluding that Fitzgerald was not a law-enforcement officer under § 41-4-3(D) and § 41-4-12 of the NMTCA, we vacate the district court's order awarding summary judgment to Fitzgerald on Hernandez's tort claims and remand for further proceedings.

Entered for the Court

Nancy L. Moritz
Circuit Judge